UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| **NORWEGIAN CRUISE LINE HOLDINGS LTD.,** a Bermuda Company; **NCL (BAHAMAS) LTD.,** d/b/a NORWEGIAN CRUISE LINE**,** a Bermuda Company; **SEVEN SEAS CRUISES S. DE R.L.,** d/b/a REGENT SEVEN SEAS CRUISES, a Panama Limited Liability Company; **OCEANIA CRUISES S. DE R.L.,** d/b/a OCEANIA CRUISES, a Panama Limited Liability Company; <br><br> Plaintiffs, <br><br> v. <br><br> **SCOTT A. RIVKEES, M.D.,** State Surgeon General and Head of the Florida Department of Health, in his official capacity; <br><br> Defendant. | Case No. 1:21-cv-22492-KMW |

## PLAINTIFFS' REPLY IN SUPPORT OF THEIR EXPEDITED MOTION FOR A PRELIMINARY INJUNCTION

John F. O'Sullivan
Olga Vieira
Quinn Emanuel Urquhart & Sullivan, LLP
2601 South Bayshore Drive, 15th Floor
Miami, FL 33133
(305) 439-5008
johnosullivan@quinnemanuel.com
olgavieira@quinnemanuel.com

Derek L. Shaffer*
William A. Burck*
Jonathan G. Cooper*
Quinn Emanuel Urquhart & Sullivan, LLP
1300 I Street NW, 9th Floor
Washington, DC 20005
(202) 538-8000
derekshaffer@quinnemanuel.com
williamburck@quinnemanuel.com
jonathancooper@quinnemanuel.com

*Appearing *pro hac vice*

*Attorneys for Plaintiffs Norwegian Cruise Line Holdings Ltd., NCL (Bahamas) Ltd., Seven Seas Cruises S. de R.L., and Oceania Cruises S. de R.L.*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES.................................................................................................iii

ARGUMENT......................................................................................................................1

I.      NCLH IS LIKELY TO PREVAIL ON THE MERITS..........................................1

        A.      Florida's Ban Is Preempted...........................................................................4

        B.      Florida's Ban Violates The First Amendment.............................................6

        C.      Florida's Ban Violates The Dormant Commerce Clause. ........................8

II.     ABSENT AN INJUNCTION, NCLH WILL SUFFER IRREPARABLE HARM .............9

III.    THE BALANCE OF EQUITIES AND PUBLIC INTEREST WEIGH HEAVILY IN
        FAVOR OF ENJOINING FLORIDA'S BAN...................................................10

CONCLUSION.................................................................................................................10

# TABLE OF AUTHORITIES

**Cases**

*Barr v. American Association of Political Consultants, Inc.*,
    140 S. Ct. 2335 (2020) ............................................................................................. 8

*Bibb v. Navajo Freight Lines*,
    359 U.S. 520 (1959) ................................................................................................. 9

*C & A Carbone v. Town of Clarkstown*,
    511 U.S. 383 (1994) ................................................................................................. 9

*Cloverland-Green Spring Dairies, Inc. v. Pennsylvania Milk Marketing Board*,
    298 F.3d 201 (3d Cir. 2002) ................................................................................... 9

*Elizabeth Blackwell Health Center for Women v. Knoll*,
    61 F.3d 170 (3d Cir. 1995) ..................................................................................... 5

*Expressions Hair Design v. Schneiderman*,
    137 S. Ct. 1144 (2017) ............................................................................................ 7

*F.C.C. v. Fox Television Stations, Inc.*,
    556 U.S. 502 (2009) ................................................................................................. 5

*Feikema v. Texaco, Inc.*,
    16 F.3d 1408 (4th Cir. 1994) .................................................................................. 5

*Florida Transportation Services, Inc. v. Miami-Dade County*,
    703 F.3d 1230 (11th Cir. 2012) .............................................................................. 9

*General Motors Corp. v. Abrams*,
    897 F.2d 34 (2d Cir. 1990) ..................................................................................... 5

*Greater Philadelphia Chamber of Commerce v. City of Philadelphia*,
    949 F.3d 116 (3d Cir. 2020) ................................................................................... 7

*International Outdoor v. City of Troy*,
    974 F.3d 690 (6th Cir. 2020) .................................................................................. 8

*Investment Company Institute v. Commodity Futures Trading Commission*,
    720 F.3d 370 (D.C. Cir. 2013) ............................................................................... 5

*Island Silver & Spice, Inc. v. Islamorada*,
    475 F. Supp. 2d 1281 (S.D. Fla. 2007), *aff'd*, 542 F.3d 844 (11th Cir. 2008) ................... 9

*JB Weld Co. v. Gorilla Glue Co.*,
    978 F.3d 778 (11th Cir. 2020) ............................................................................... 4

*King v. Governor of New Jersey*,
    767 F.3d 216 (3d Cir. 2014) ........................................................................................ 6

*Lamont v. Postmaster General*,
    381 U.S. 301 (1965) .................................................................................................... 7

*Masterpiece Cakeshop, Ltd. v. Colorado Civil Rights Commission*,
    138 S. Ct. 1719 (2018) ............................................................................................... 8

*Matal v. Tam*,
    137 S. Ct. 1744 (2017) ............................................................................................... 8

*Otto v. City of Boca Raton*,
    981 F.3d 854 (11th Cir. 2020) ................................................................................... 8

*Pike v. Bruce Church*,
    397 U.S. 137 (1970) .................................................................................................... 9

*Raymond Motor Transportation, Inc. v. Rice*,
    434 U.S. 429 (1978) .................................................................................................... 9

*Reed v. Town of Gilbert*,
    576 U.S. 155 (2015) .................................................................................................... 8

*Sorrell v. IMS Health, Inc.*,
    564 U.S. 552 (2011) ........................................................................................... 2, 7, 8

*Southern Pacific Co. v. Arizona ex rel. Sullivan*,
    325 U.S. 761 (1945) .................................................................................................... 9

*Texas v. Johnson*,
    491 U.S. 397 (1989) .................................................................................................... 8

*University of Texas v. Camenisch*,
    451 U.S. 390 (1981) .................................................................................................... 4

*Virginia State Board of Pharmacy v. Virginia Citizens Consumer Council, Inc.*,
    425 U.S. 748 (1976) .................................................................................................... 8

*Wollschlaeger v. Governor of Florida*,
    848 F.3d 1293 (11th Cir. 2017) ......................................................................... 3, 6, 7

*Yamaha Motor Corp. v. Jim's Motorcycle, Inc.*,
    401 F.3d 560 (4th Cir. 2005) ..................................................................................... 9

**Federal Statutes**

42 U.S.C. § 264(e) ............................................................................................................ 4

**State Statutes**

Florida Statute § 381.00316 ............................................................................ 1, 2

**Rules**

85 Fed. Reg. 44085-01 (July 21, 2020) ........................................................ 5

85 Fed. Reg. 62732-01 (Oct. 5, 2020) .......................................................... 5

85 Fed. Reg. 70153-01 (Nov. 4 2020) ........................................................ 4, 5

**Treatises**

House Session, Florida House of Representatives (April 28, 2021) ................................................. 3

Immunization Guidelines, Florida Department of Health (Mar. 2013) ........................................ 2

James M. McGoldrick, Jr., *The Dormant Commerce Clause: The Endgame-from Southern Pacific to Tennessee Wine & Spirits-1945 to 2019*, 40 Pace L. Rev. 44 (2020) ................. 9

Martin H. Redish, *Commercial Speech and the Values of Free Expression*, Cato Institute (2017) ......................................................................... 8

Senate Session, Florida Senate (April 29, 2021) ........................................... 3

Plaintiffs Norwegian Cruise Line Holdings Ltd., NCL (Bahamas) Ltd., Seven Seas Cruises S. de R.L., and Oceania Cruises S. de R.L. (together, "NCLH") respectfully reply in support of a preliminary injunction.   Defendant's Opposition as filed July 27, Dkt. 32 ("Opp."), is devoid of substance in crucial respects.   Indeed, while attaching declarations from (i) an associate representing Defendant, who catalogues various documents, and (ii) a subordinate of Defendant, who limits himself to reporting certain administrative filings, the Opposition includes ***nothing from Defendant himself***.   That omission speaks volumes:   Per his official website, "Dr. Scott A. Rivkees, Florida's Surgeon General, is focused on protecting, promoting and improving the health of everyone who calls Florida home," much as NCLH is.   Defendant is also on record advocating vaccination as, *e.g.*, "our ray of hope," and "our path forward out of the pandemic." Second Decl. of Olga Vieira ("2d Vieira Decl.") Ex. 1.   NCLH applauds Defendant's position on these points, while struggling to comprehend how he can be opposing NCLH here.

Notably, neither Defendant nor his attorneys offer a scintilla of evidence refuting undisputed testimony from NCLH's distinguished declarants—its CEO, a public-health expert, and a professor of business development and branding—establishing exactly why vaccine documentation is essential for NCLH to ensure that all of its passengers are in fact vaccinated, and why 100% vaccination is in turn essential to enable NCLH to resume sailing safely and soundly as it is scheduled to do starting August 15.   Dkt. 3-1 ("Del Rio Decl.") ¶¶ 25–35; Dkt. 3-3 ("Laitamaki Decl.") ¶¶ 8, 12–17; Dkt. 3-4 ("Ostroff Decl.") ¶¶ 16–20; Second Decl. of Dr. Stephen Ostroff ("2d Ostroff Decl.") ¶ 4.   This Defendant lacks any factual basis or even a coherent argument for why NCLH should be ***prohibited*** under § 381.00316 (the "Ban") from following its own best lights and the uncontroverted consensus of leading experts on how best to protect public health and safety on its vessels, in Florida and beyond, as cruise operations resume.   The stakes here are stark and the case for a preliminary injunction is one-sided.   Once this Court finds that NCLH is likely to succeed on one or more grounds, it follows inexorably that the Court should grant as-applied relief enabling NCLH to sail from Miami as planned, safely and conscientiously.

## ARGUMENT

## I.     NCLH IS LIKELY TO PREVAIL ON THE MERITS

An overarching question cuts across NCLH's lines of constitutional challenge:   Do the justifications for § 381.00316 counterbalance its incursions on truthful expression and the free flow of commerce as federally regulated?   Florida's effort to advance an affirmative answer to

that question is woeful.   Whatever resonance Florida's claimed justifications may have with select audiences, its justifications cannot withstand scrutiny in any court of law, let alone one applying heightened constitutional scrutiny.   Because Florida's chosen means lack any fair relation to its claimed ends, the Ban flunks any applicable standard of judicial review.

While skimpy on specifics, the Opposition defends § 381.00316 as "protecting … medical privacy" and "avoiding discrimination."   Opp. at 17; *see id.* at 4 & n.3.   But those proffered justifications do not withstand a moment's scrutiny.   Throwing around terms "privacy" and "discrimination" does not translate to creditable justifications.   By Florida's warped reasoning, a person ***actually diagnosed with COVID*** might invoke the same "privacy" and "anti-discrimination" concerns.   Florida does not dispute that (a) unvaccinated persons pose greater COVID risks; (b) documentation is the only reliable means of verification; and (c) the cruise setting poses unique challenges that place this documentation at a premium.   Ostroff Decl. ¶¶ 18–20; Del Rio Decl ¶¶ 13–20, 28–29.   Such information is no more private and no less pertinent than one's date of birth is when purchasing alcohol or one's home address is when purchasing a firearm.   Confirming as much, the Eleventh Circuit just ordered:   "Individuals may be requested to provide proof of their vaccination status."   Chief Judge William H. Pryor, *General Order No. 50* (11th Cir. July 28, 2021).   And it is risible for Florida to claim it is protecting "families with children" from discrimination, Opp. at 4, when it ***permits*** cruise lines to ***exclude children altogether***, as some cruise lines do.   2d Vieira Decl. Ex. 2.

Indeed, Florida cannot seriously believe its own purported justifications.   Its Ban does nothing to protect passengers against disclosing their COVID-19 vaccination status; NCLH and other cruise lines are free to demand that information and otherwise to deny entry, short of demanding telltale documentation.   Government cannot artificially cramp communication in this fashion about subject matter that is concededly fair game for discussion.   *See Sorrell v. IMS Health, Inc.*, 564 U.S. 552, 573 (2011).   Even as to documentation, cruise lines can *still* demand *sundry* medical documentation including *vaccine* documentation; the only thing off limits is documentation of ***COVID-19*** vaccinations.   Tellingly, ***Florida itself*** demands ***other*** kinds of vaccine documentation, particularly for schools.[1]   Even as to ***COVID-19 vaccine documentation***,

---

[1]      *See* Immunization Guidelines, Fla. Dep't of Health, at 3 (Mar. 2013), http://www.floridahealth.gov/programs-and-services/immunization/children-and-adolescents/_documents/school-guide.pdf; *see also* House Session, Fla. House of Rep., at 2:17:03–2:17:53

Florida does **not** prohibit NCLH or anyone else from demanding that **all employees** supply it. There is no explanation whatsoever for this *under*-inclusiveness. Nor does Florida begin to explain the gross *over*-inclusiveness of the Ban: No reason is discernible as to why any concern about unvaccinated persons being denied access "to the grocery store," Opp. at 4 n.3, extends to week-long luxury cruises, or why such a sweeping Ban should follow absent any finding that any customer, in any industry, has ever lacked adequate options. *See Wollschlaeger v. Governor of Fla.*, 848 F.3d 1293, 1315 (11th Cir. 2017) (en banc).

Further discrediting itself, Florida condones the approaches of "other major cruise lines," Opp. at 20, 6, 10, that are very much "discriminating" (to use Florida's terminology) against unvaccinated passengers in ways and degrees that are far more problematic than anything NCLH proposes. Florida finds no fault with major cruise lines' ongoing "two class system" whereby passengers who are unvaccinated or refuse to disclose their status are "segregated" and subjected to disfavored treatment, for which they must pay more, 2d Vieira Decl. Ex. 3, and are treated as "second-class citizens," *id.* Ex. 4.[2] Absent the requested relief, that is the only alternative Norwegian has short of abandoning its Florida operations altogether. Del Rio Decl. ¶ 31. Defendant offers no reasoned argument as to why that dismal result would better serve Florida's purported interests or the passengers it purportedly wants to protect.

At the end of the day, what this Ban really does is score political points favoring one side of a polemic, at the expense of public health and free and honest conveyance of vital information. Its misshapen gerrymandering otherwise defies explanation. If this Ban ultimately protects anyone, it is the passenger who will be asked about vaccination status and hopes to **lie** about it— that passenger, and only that passenger, will benefit from this Ban against requiring the documentation that shines unique, truthful light on the life-or-death question of vaccination status. But there is no legitimate interest in providing statutory license for those who oppose vaccination to **lie** about their vaccination status—and there certainly is no interest substantial enough to justify

---

(April 28, 2021), https://www.myfloridahouse.gov/VideoPlayer.aspx?eventID=7285 (Rep. Grieco) (objecting because, *e.g.*, "we have vaccine passports in Florida right now. It's called: that's how your kid gets to go to school."); Senate Session, Fla. Senate, at 6:19:56–6:20:20 (April 29, 2021), https://www.flsenate.gov/media/VideoPlayer?EventID=1_3wpkrnbb-202104291000&Redirect=true. (Sen. Polsky) (similar).

[2] Some cruise lines require unvaccinated guests to wear masks and maintain social distance when dining or recreating, *id.* Ex. 5, while others require unvaccinated guests to pay for additional testing and purchase travel insurance—proof of which is required to board, *id.* Ex. 6.

conflict with federal regulation; intrusion upon open, truthful communication; or profound burdens upon the flow of interstate and international commerce from port to port.   Each of the ensuing counts therefore provides ample reason why NCLH is likely to prevail here.

A.   **Florida's Ban Is Preempted.**

To overcome a straightforward preemption problem, Defendant leans on the Middle District of Florida, arguing the CSO "cannot preempt Florida's law because the CDC is enjoined from enforcing it in the State."   Opp. at 7.   But Defendant does not deny that the preliminary injunction reflects only a "*preliminary* assessment of *likelihood* of success [that] is not precedent" and does not "take[] Congress's statute or CDC's regulations off the books."   Dkt. 3 ("Mot.") at 10 (citing *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981); *JB Weld Co. v. Gorilla Glue Co.*, 978 F.3d 778, 794 (11th Cir. 2020)).   Nor does Defendant deny that "NCLH vessels are scheduled to travel to U.S. territories, such as Puerto Rico and the U.S. Virgin Islands … where they would be subject to the Conditional Sailing Order … and beyond the scope of Judge Merryday's injunction," which is confined to Florida.   *Id.* at 16.   Thus, even if the preliminary injunction were to be finally upheld (which it hasn't been), NCLH *still* faces the same conflict between Florida's Ban and legal compliance in jurisdictions where federal law remains operative.

Most of Defendant's remaining arguments are predicated on invalidating CDC's framework, which, with all due respect for Judge Merryday, should not be taken as likely, for reasons CDC has submitted to the Middle District and the Eleventh Circuit and need not be belabored here.   *See* Defs.' Mot. for a Stay Pending Appeal, *Florida v. Becerra*, No. 21-12243, at 5 (11th Cir. July 7, 2021) ("CDC Stay Motion"); Defs.' Opp'n to Mot. for Prelim. Inj., Dkt. 31, *Florida v. Becerra*, No. 8:21-cv-839-SDM-AAS, at 10, 30 (M.D. Fla. May 5, 2021).[3]

To the extent that CDC's larger framework is valid, Defendant's preemption arguments crumble.   Although Defendant claims that "neither the Technical Instructions nor the Operations Manual preempt Florida law," Opp. at 7, he whistles past the statutory and regulatory provisions that preempt conflicting state law.   *See* 42 U.S.C. § 264(e); 85 Fed. Reg. 70153-01, 70158 (Nov. 4, 2020).   Nor does Defendant's other nit-picking disable CDC's on-point, operative guidance.

---

[3]   As for the Eleventh Circuit's withholding of a stay, it rests merely on CDC's "fail[ure] to demonstrate an entitlement to a stay pending appeal," which should not be mistaken for a determination that Florida is likely to prevail on the ultimate merits, especially given that (i) CDC's regulations remain unaffected outside of Florida and (ii) all cruise lines have indicated they will be continuing to comply voluntarily with CDC's "recommendations" even in Florida.

Defendant argues otherwise, but CDC has authority under the CSO to permit highly vaccinated voyages in lieu of simulated voyages:   The CSO authorizes CDC to "issue additional requirements . . . *relating to* a cruise ship operator's processes and procedures for conducting and evaluating a simulated voyage," and affording operators an option for achieving the objectives of simulated voyages without resorting to same plainly "relat[es]" thereto.   85 Fed. Reg. at 70160 (emphasis added).   Nor is the absence of notice-and-comment rulemaking, publication in the Federal Register, or mathematical precision problematic here.   Exigencies and developments surrounding COVID-19 (including the advent of vaccines) have been fast-evolving; only by reacting quickly could CDC keep pace while taking due account, consistent with its wide, expert discretion.   *F.C.C. v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009); *Inv. Co. Inst. v. Commodity Futures Trading Comm'n*, 720 F.3d 370, 381 (D.C. Cir. 2013).   Moreover, agencies need not use notice-and-comment rulemaking or publish in the Federal Register to preempt state law.   *See, e.g.*, *Elizabeth Blackwell Health Ctr. for Women v. Knoll*, 61 F.3d 170, 182–83 (3d Cir. 1995) (HHS interpretive rule); *Feikema v. Texaco, Inc.*, 16 F.3d 1408, 1418 (4th Cir. 1994) (EPA consent order); *Gen. Motors Corp. v. Abrams*, 897 F.2d 34, 39 (2d Cir. 1990) (FTC consent order).

Most fundamentally, Defendant cannot gainsay the conflict between the Ban and CDC regulations specifically as applied to NCLH.   He claims there is "no indication" that highly-vaccinated voyages are crucial to CDC's "full purposes" or "that it is even important to the CDC that cruise lines have this option."   Opp. at 9.   To the contrary, however, the only other option, simulated voyages, is one that Florida describes as "a prohibition in practice" that "set[s] the business up for certain failure."   Fla.'s Resp., No. 21-12243, at 9 (11th Cir. July 12, 2021). Moreover, CDC was expressly preoccupied with the lack of a vaccine in extending the No Sail Order as well as in the CSO itself.   85 Fed. Reg. 44085-01, 44085–86 (July 21, 2020); 85 Fed. Reg. 62732-01, 62732 (Oct. 5, 2020); 85 Fed. Reg. at 70154.   When vaccines arrived, CDC relaxed numerous restrictions for highly-vaccinated voyages, confirming that these other measures were in the nature of interim stopgaps.   *See* Decl. of Olga Vieira Ex. 2 at 9, Ex. 3 at 5, 9.   Unlike in *Williamson v. Mazda Motor of Am., Inc.*, 562 U.S. 323, 332–35 (2011), therefore, CDC has indicated that the vaccination option is important, and, if anything, preferred.   Certainly there is no dispute that CDC afforded the highly-vaccinated option that NCLH has elected, nor is there dispute that vaccine documentation is the only reliable mode of pursuing that option, and the mode on which NCLH has predicated its federal certification.   Del Rio Decl. ¶¶ 20, 28–29; Ostroff

Decl. ¶¶ 17–18.   That suffices to trigger preemption under settled law—even as Defendant "reserve[s] the right to contest its validity before the Supreme Court."   Opp. at 9 n.8.

Last, far from "disclaim[ing]" preemption on NCLH's facts, *id*. at 10, CDC in the wake of this suit agreed that Florida "has undermined the cruise industry's ability to take advantage of the flexibility that the CDC provides for vaccinated passengers and highly vaccinated cruises." Reply, *Florida v. Becerra*, No. 21-12243, at 4–5 (11th Cir. July 13, 2021); *see* CDC Stay Motion at 14 ("Florida has actively impeded the cruise industry's ability to conduct safe operations ….").

**B.      Florida's Ban Violates The First Amendment.**

Because Florida is specially restricting the exchange of truthful information about a matter of public concern (indeed, life-or-death concern), there should be no way around First Amendment scrutiny.   Defendant nonetheless tries to dodge such scrutiny by arguing that Florida's Ban "regulates conduct, not speech," on the theory that it "simply prohibits businesses from *conditioning service*" on the provision of documentation containing the verboten content.   Opp. at 15–16.   But "[s]aying that restrictions on writing and speaking are merely incidental to speech is like saying that limitations on walking and running are merely incidental to ambulation," and the Eleventh Circuit has agreed "with the Third Circuit's assessment that the 'enterprise of labeling certain verbal or written communications "speech" and others "conduct" is unprincipled and susceptible to manipulation.'"   *Wollschlaeger*, 848 F.3d at 1308 (quoting *King v. Governor of N.J.*, 767 F.3d 216, 228 (3d Cir. 2014)).

By Defendant's account, government would have carte blanche to tell private entities what information they may agree to exchange as part of their terms of demonstrations, associations and transactions.   Government could just as easily outlaw a requirement that attendees provide proof of their membership in the X, Y, or Z party; that babysitters provide references before being hired; that college applicants supply their high-school transcripts; or that produce suppliers certify specified quality control.   Indeed, Defendant would afford the government open season to ban sale of ***books*** with disfavored content—by couching such a ban as regulating simply "conditioning" payment upon exchange of the offending documentation.   Whatever justification government might offer for curbing such open and truthful exchanges, there should be no doubting that government in such cases at least answers to the First Amendment.   That recognition is itself fatal to the defense, given Florida's inability to withstand any form of First Amendment scrutiny.

Florida's ban intrudes upon NCLH's right to communicate truthfully with its customers. *See Sorrell*, 564 U.S. at 564; *Wollschlaeger*, 848 F.3d at 1313.   Beyond *Sorrell* and *Wollschlaeger*, the Supreme Court's decision in *Expressions Hair Design v. Schneiderman*, 137 S. Ct. 1144 (2017), is instructive.   That statute banned sellers from charging a "surcharge" for using a credit card instead of cash, even as sellers could offer customers a cash "discount."   *Id.* at 1147.   Although the statute addressed pricing, it triggered First Amendment scrutiny because it regulated "how sellers may communicate their prices"—*i.e.*, how merchants could communicate a lawful requirement (the price) for obtaining a service (there, a haircut).   *Id.* at 1151.

What was true in *Expressions Hair Design* is true here.   Because Florida's ban does *not* prohibit NCLH from conditioning service on vaccination, cases addressing antidiscrimination laws are inapposite.   *See* Opp. at 15–16.   This Ban is triggered by how NCLH *communicates* with its customers and *verifies* their compliance with its lawful vaccination requirement; oral exchange remains fine while written documentation is forbidden.   Indeed, Defendant stresses that NCLH is free to "*discuss*" COVID-19 vaccination status with its customers and "*request*" vaccination documentation.   *Id.* at 16.   That brings to a sharp point the First Amendment problem:   What the government is doing here—quite astonishingly—is outlawing agreed terms for exchanging truthful information on a subject of legitimate inquiry.   This law impinges on how NCLH formulates and conveys its vaccination requirement.   *See also Greater Phila. Chamber of Commerce v. City of Phila.*, 949 F.3d 116, 136 (3d Cir. 2020) (ordinance banning employers from inquiring into wage history "clearly regulates speech because it prevents employers from asking potential applicants specific questions").   It also impinges on how NCLH receives and verifies answers to its inquiry.   *See also Lamont v. Postmaster General*, 381 U.S. 301, 302, 305–07 (1965) (federal law restricting delivery of "communist political propaganda" from abroad, absent recipient's express approval, was "at war with the uninhibited, robust, and wide-open debate and discussion that are contemplated by the First Amendment").

Once the First Amendment is triggered, strict scrutiny applies because Florida's ban is content-based, Mot. at 12–14, thereby warranting scrutiny more searching than that applicable to traditional regulation of commercial speech.   Opp. at 16–17.   The regulated exchange here is about health and safety.   And the way it is being regulated betrays that government is targeting expression of a disfavored political stance—of like-minded people who stand behind vaccination for all in the context of a raging pandemic and debate about how to handle it.   That Florida takes

a *sui generis* approach to proof of COVID-19 vaccination—different from all other vaccination information, and all other medical information—telegraphs politically-driven, viewpoint-based discrimination.   Mot. at 13–14 n.2; *Sorrell*, 564 U.S. at 565.   Especially in light of the Supreme Court's recent decisions in *Barr v. American Association of Political Consultants, Inc.*, 140 S. Ct. 2335 (2020), and *Reed v. Town of Gilbert*, 576 U.S. 155 (2015), strict scrutiny should be inescapable and fatal.   *See also Otto v. City of Boca Raton*, 981 F.3d 854, 861 (11th Cir. 2020); *Int'l Outdoor v. City of Troy*, 974 F.3d 690, 703 (6th Cir. 2020).

Even assuming that this is traditional regulation of commercial speech, however, Florida cannot come close to justifying its interruption of "the free flow of commercial information."   *Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.*, 425 U.S. 748, 764 (1976).   "Over the last 40 years, the Supreme Court has extended an ever-increasing level of First Amendment protection to commercial speech.   Indeed, it is difficult to find a Supreme Court decision upholding governmental suppression of truthful commercial speech in the last 25 years."   Martin H. Redish, *Commercial Speech and the Values of Free Expression*, Cato Institute, at 2 (2017). Under intermediate scrutiny, the Ban neither "serve[s] a substantial interest," nor is "narrowly drawn."   *Matal v. Tam*, 137 S. Ct. 1744, 1764 (2017) (quotations omitted).   *See supra* at 1-4.

Even if Florida's Ban could be thought to regulate only conduct, the relevant conduct is expressive so as to warrant First Amendment scrutiny.   "[A] wide array of conduct … can qualify as expressive," so long as the conduct was "'intended to be communicative' and, 'in context, would reasonably be understood by the viewer to be communicative.'"   *Masterpiece Cakeshop, Ltd. v. Colorado Civil Rights Comm'n*, 138 S. Ct. 1719, 1741–42 (2018) (Thomas, J., concurring in part and concurring in the judgment) (quotations omitted); *see Texas v. Johnson*, 491 U.S. 397, 406 (1989).   In this case, NCLH is concerned not only with protecting the health and safety of its employees and clientele, but also with the *message* that a vaccination verification requirement conveys to customers considering whether to buy cruise tickets:   This cruise is safe and everyone on board is doing their part to ensure that.   By targeting COVID-19 vaccination documentation, Florida has targeted that message for disfavored treatment and has taken sides in a political dispute over vaccination requirements, thereby perpetrating the First Amendment violation already noted.

   **C.**   **Florida's Ban Violates The Dormant Commerce Clause.**

Defendant provides virtually no defense of the Ban under the settled law of the Dormant Commerce Clause, requiring a court to weigh a law's burden on interstate commerce against its

benefits. While imposing massive, demonstrated burdens on interstate and international commerce, the Ban serves no appreciable purpose that might withstand the requisite balancing.

Cruises inherently move through interstate and international commerce, as Defendant concedes. Florida's Ban imposes daunting burdens on such commerce. Unrebutted evidence shows that inability to verify passengers' vaccination status will force cruises and passengers either to re-route around Florida or else go through tortured, costly, time-consuming, damaging contortions in order to go to or from Florida relative to other ports, none of which have any such Ban and many of which require proof of vaccinations. Mot. at 16; Del Rio Decl. ¶¶ 14–19. Such burdens weigh in the analysis. *E.g.*, *Raymond Motor Transp., Inc. v. Rice*, 434 U.S. 429, 438 (1978); *Bibb v. Navajo Freight Lines*, 359 U.S. 520, 528 (1959); *Pike v. Bruce Church*, 397 U.S. 137, 144 (1970); *C & A Carbone v. Town of Clarkstown*, 511 U.S. 383, 389 (1994). What is more, conflict between the Ban and the law of other jurisdictions, including those still bound by the CSO, is especially offensive to the Dormant Commerce Clause. Mot. at 16; Del Rio Decl. ¶ 18; *see C & A Carbone*, 511 U.S. at 407 (O'Connor, J., concurring in the judgment) (citing *S. Pac. Co. v. Ariz.*, 325 U.S. 761, 772 (1945); *Bibb*, 359 U.S. at 528). Last, the governing federal statute in this area, preemptive or not, further commends invalidation. James M. McGoldrick, Jr., *The Dormant Commerce Clause: The Endgame-from Southern Pacific to Tennessee Wine & Spirits-1945 to 2019*, 40 Pace L. Rev. 44, 79 (2020) (citing *S. Pac. Co.*, 325 U.S. at 769).

The question then becomes whether the established burden "clearly exceeds the local benefits" of the Ban, *Fla. Transp. Servs., Inc. v. Miami-Dade Cty.*, 703 F.3d 1230, 1257 (11th Cir. 2012), and is properly tailored. *See Yamaha Motor Corp. v. Jim's Motorcycle, Inc.*, 401 F.3d 560, 569 (4th Cir. 2005); *cf. Cloverland-Green Spring Dairies, Inc. v. Pa. Milk Mktg. Bd.*, 298 F.3d 201, 216 (3d Cir. 2002). Again, any such benefits are illusory while the Ban's sweep and intrusions are breathtaking. The Ban is therefore unconstitutional as applied to NCLH. *See Raymond*, 434 U.S. at 445; *Pike*, 397 U.S. at 142, 146; *Island Silver & Spice, Inc. v. Islamorada*, 475 F. Supp. 2d 1281, 1292–93 (S.D. Fla. 2007), *aff'd*, 542 F.3d 844 (11th Cir. 2008).

## II. ABSENT AN INJUNCTION, NCLH WILL SUFFER IRREPARABLE HARM

Defendant lacks any substantive argument against irreparable harm, which we have substantiated through uncontroverted declarations. He concedes that any First Amendment injury is by definition irreparable. He dismisses NCLH's impending injury as "[s]elf-inflicted,"

Opp. at 18, but distorts the term beyond recognition.[4]   NCLH is doing its level best to resume safe and lawful operations for the benefit of all it serves, but Florida (and only Florida) has made that impossible.   If a preliminary injunction were unavailable here, it is unclear how one would ever be available to protect business operations—all of which are volitional and directed by the business its "self"—against injurious governmental intrusion.   Suffice it to note that Defendant denies neither that NCLH's brand and passenger base call for its instant approach to verifying vaccination status, nor that any deviation caused by the Ban would irreparably damage NCLH's goodwill, reputation and overall business.   Del Rio Decl. ¶¶ 25–35; Laitamaki Decl. ¶¶ 8, 12–17. Last and not least, Defendant does not deny that in our current circumstances—where vaccinations are readily available while new and deadly COVID threats are emerging in Florida and around the world—yielding to the Ban would pose gratuitous threats to human health and life, which can never thereafter be repaired.   Ostroff Decl. ¶¶ 18–20; 2d Ostroff Decl. ¶¶ 4–5.

## III.   THE BALANCE OF EQUITIES AND PUBLIC INTEREST WEIGH HEAVILY IN FAVOR OF ENJOINING FLORIDA'S BAN

Defendant is equally unpersuasive in suggesting that the equities and public interest somehow favor him here.   They don't.   Again, Defendant himself is on record promoting the public importance of *vaccination*—the *opposite* of enforcing a prohibition that undercuts NCLH's efforts to ensure vaccination.   Likewise, Florida is on record advocating (successfully) the importance of cruise lines including NCLH resuming safe, productive operations—so as to overcome the claimed sovereign interests of the United States, no less.   And Defendant offers nothing to deny the dilemma NCLH now demonstrably confronts:   Either NCLH cannot sail from Florida, which hurts Florida, its citizenry, and its economy (as Florida has elsewhere acknowledged and NCLH has here proved), or else NCLH would sail in ways that are worse for its passengers and crew, dangerous for other jurisdictions, and anathema to public health.   Those are the only possible outcomes unless this Court grants an injunction, and the interests of countless stakeholders as well as the general public align mightily against them.   This Court would protect everyone and harm no one by granting a preliminary injunction that simply enables these four Plaintiffs to resume sailing in a way that they have determined to be safest and best for all aboard.

## CONCLUSION

For the foregoing reasons, NCLH respectfully requests a preliminary injunction.

---

[4]      If anything is "self-inflicted," it is Florida's ever-worsening COVID crisis, during which Florida continues to outlaw (not promote) proper safeguards.   2d Ostroff Decl. ¶¶ 4–5.

DATED:   July 30, 2021                Respectfully submitted,

QUINN EMANUEL URQUHART & SULLIVAN LLP

By    */s/ John F. O'Sullivan*
    John F. O'Sullivan
    Olga Vieira
    2601 South Bayshore Drive, 15th Floor
    Miami, FL 33133
    (305) 439-5008
    johnosullivan@quinnemanuel.com
    olgavieira@quinnemanuel.com

    Derek L. Shaffer*
    William A. Burck*
    Jonathan G. Cooper*
    1300 I Street NW, 9th Floor
    Washington, DC 20005
    (202) 538-8000
    derekshaffer@quinnemanuel.com
    williamburck@quinnemanuel.com
    jonathancooper@quinnemanuel.com

    *Appearing *pro hac vice*

    *Attorneys for Plaintiffs Norwegian Cruise Line Holdings Ltd., NCL (Bahamas) Ltd., Seven Seas Cruises S. de R.L., and Oceania Cruises S. de R.L.*

**<u>CERTIFICATE OF SERVICE</u>**

      I HEREBY CERTIFY that on this 30th day of July 2021, the foregoing document was electronically filed with the Clerk of Court using CM/ECF.   I also certify that the foregoing document is being served this day on the party identified below, either via transmission of Notice of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronic Notices of Electronic Filing.

                 By: *<u>/s/ John F. O'Sullivan</u>*
                 John F. O'Sullivan
                 Fla. Bar No. 143154
                 johnosullivan@quinnemanuel.com