## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| **NORWEGIAN CRUISE LINE HOLDINGS LTD.,** a Bermuda Company; **NCL (BAHAMAS) LTD.,** d/b/a NORWEGIAN CRUISE LINE**,** a Bermuda Company; **SEVEN SEAS CRUISES S. DE R.L.,** d/b/a REGENT SEVEN SEAS CRUISES, a Panama Limited Liability Company; **OCEANIA CRUISES S. DE R.L.,** d/b/a OCEANIA CRUISES, a Panama Limited Liability Company; <br><br> Plaintiffs, <br><br> v. <br><br> **SCOTT A. RIVKEES, M.D.,** State Surgeon General and Head of the Florida Department of Health, in his official capacity; <br><br> Defendant. | Case No. 1:21-cv-22492-KMW |

## PLAINTIFFS' OPPOSITION TO EXPEDITED MOTION FOR TRANSFER

John F. O'Sullivan
Olga Vieira
Quinn Emanuel Urquhart & Sullivan, LLP
2601 South Bayshore Drive, 15th Floor
Miami, FL 33133
(305) 439-5008
johnosullivan@quinnemanuel.com
olgavieira@quinnemanuel.com

Derek L. Shaffer*
William A. Burck*
Jonathan G. Cooper*
Quinn Emanuel Urquhart & Sullivan, LLP
1300 I Street NW, 9th Floor
Washington, DC 20005
(202) 538-8000
derekshaffer@quinnemanuel.com
williamburck@quinnemanuel.com
jonathancooper@quinnemanuel.com

*Appearing *pro hac vice*

*Attorneys for Plaintiffs Norwegian Cruise Line Holdings Ltd., NCL (Bahamas) Ltd., Seven Seas Cruises S. de R.L., and Oceania Cruises S. de R.L.*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES............................................................................................iii

BACKGROUND ...........................................................................................................1

     A.     Florida's Ban Imperils NCLH Operations In Miami ...............................1

     B.     Florida's Suit Against CDC Proceeds In Parallel With NCLH's Instant Suit.........3

     C.     Florida Differentiates This Litigation From Its Litigation Against CDC ...............5

ARGUMENT ................................................................................................................7

I.     TRANSFER IS UNWARRANTED UNDER THE FIRST-TO-FILE RULE....................8

II.     TRANSFER IS UNWARRANTED UNDER 28 U.S.C. § 1404 .....................................15

CONCLUSION............................................................................................................20

# TABLE OF AUTHORITIES

## Cases

*All Insurance Restoration Services v. Nautilus Insurance Co.*,
   2021 U.S. Dist. LEXIS 31314 (S.D. Fla. Feb. 18, 2021)................................... 8

*Attix v. Carrington Mortgage Services*,
   2020 WL 9849821 (S.D. Fla. Oct. 13, 2020) .................................................11

*Burns v. MLK Express Services, LLC*,
   2020 WL 1891175 (M.D. Fla. Apr. 16, 2020) ................................................. 9

*CertainTeed Corp. v. Nichiha USA, Inc.*,
   2009 WL 3540796 (E.D. Pa. Oct. 29, 2009) .................................................. 12

*Collegiate Licensing Co. v. American Casualty Co. of Reading*,
   713 F.3d 71 (11th Cir. 2013) ................................................9, 11, 13, 14

*Combs v. Florida Department of Corrections*,
   461 F. Supp. 3d 1203 (N.D. Fla. 2020)........................................................ 17

*Dean v. Dometic Corp.*,
   2020 WL 3547746 (M.D. Fla. June 15, 2020) ...............................................11

*Elliott v. Williams*,
   2021 WL 1998411 (S.D. Fla. Mar. 18, 2021) ............................................ 8, 13

*Epler v. Air Methods Corp.*,
   2021 WL 2806207 (M.D. Fla. June 4, 2021) ................................................ 10

*Evans v. Georgia Regional Hospital*,
   850 F.3d 1248 (11th Cir. 2017) ............................................................. 4, 12

*Florida Transportation Services, Inc. v. Miami-Dade County*,
    703 F.3d 1230 (11th Cir. 2012) ........................................................ 15, 18

*Florida v. Becerra*,
   No. 21-12243 (11th Cir. 2021) .............................................................. 4, 12

*Florida v. Becerra*,
   No. 8:21-cv-00839-SDM-AAS (M.D. Fla. 2021)........................................ 2, 3

*Grider v. Keystone Health Plan Central, Inc.*,
   500 F.3d 322 (3d Cir. 2007) ..................................................................... 12

*Hernandez v. Cracker Barrel Old Country Store, Inc.*,
   2014 WL 5175715 (M.D. Fla. Oct. 14, 2014)............................................ 7, 15

*In re Chiquita Brands International Alien Tort Statute & Shareholder Derivative Litigation*,
    2018 WL 11251120 (S.D. Fla. May 8, 2018) ................................................................ 8, 14

*Lewis v. American Tower*,
    2021 WL 2255487 (11th Cir. June 3, 2021) .................................................................... 4

*Lott v. Advantage Sales & Marketing LLC*,
    2011 WL 13229682 (N.D. Ala. Jan. 26, 2011) .............................................................. 12

*Mason v. Smithkline Beecham Clinical Laboratories*,
    146 F. Supp. 2d 1355 (S.D. Fla. 2001) ..................................................................... 16, 17

*Mister Sparky Franchising, LLC v. On Time Electricians, Inc.*,
    2015 WL 1811082 (M.D. Fla. Apr. 21, 2015) ............................................................... 10

*National Union Fire Insurance Co. v. Beta Construction LLC*,
    2010 WL 3789042 (M.D. Fla. Sept. 24, 2010) .............................................................. 10

*Nken v. Holder*,
    556 U.S. 418 (2009) ......................................................................................................... 4

*Osgood v. Discount Auto Parts, LLC*,
    981 F. Supp. 2d 1259 (S.D. Fla. 2013) .......................................................................... 16

*Robinson v. Giarmarco & Bill, P.C.*,
    74 F.3d 253 (11th Cir. 1996) ..................................................................................... 16, 17

*Rodriguez v. Molina Healthcare of Florida, Inc.*,
    2017 WL 10841484 (N.D. Fla. May 24, 2017) .............................................................. 10

*Savage v. Seterus, Inc.*,
    2020 WL 2219194 (M.D. Fla. May 7, 2020) ................................................................. 10

*SME Racks, Inc. v. Sistemas Mecanicos Para Electronica, S.A.*,
    382 F.3d 1097 (11th Cir. 2004) ..................................................................................... 16

*Steifel Laboratories, Inc. v. Galderma Laboratories, Inc.*,
    588 F. Supp. 2d 1336 (S.D. Fla. 2008) ..................................................................... 16, 18

*Sterling v. Provident Life & Accident Insurance Co.*,
    519 F. Supp. 2d 1195 (M.D. Fla. 2006) ........................................................................ 16

*Tempur-Pedic North America v. Mattress Firm*,
    2018 U.S. Dist. LEXIS 239632 (M.D. Fla. Sept. 20, 2018) ........................................ 9, 14

*TracFone Wireless, Inc. v. Clear Choice Connections, Inc.*,
    2014 U.S. Dist. LEXIS 193047, (S.D. Fla. July 14, 2014) ............................................ 17

*Vital Pharmaceuticals, Inc. v. PhD Marketing, Inc.*,
    2020 U.S. Dist. LEXIS 198931 (S.D. Fla. July 28, 2020) ................................................. 8

*Williams v. Bluestem Brands, Inc.*,
    2018 WL 2426644 (M.D. Fla. May 30, 2018) .................................................... 9

*Zampa v. JUUL Labs, Inc.*,
    2019 WL 1777730 (S.D. Fla. Apr. 23, 2019) ................................................. 15

**Federal Statutes**

28 U.S.C. § 1404 ................................................................................................................ 15, 16

**State Statutes**

Fla. Stat. § 381.00316 (2021) ............................................................................................. 2, 13

**Rules**

85 Fed. Reg. 70153-01 (Nov. 4, 2020) ................................................................................. 4

**Other Authorities**

Norwegian Cruise Line, Caribbean:
    Harvest Caye, Cozumel & Roatan from Miami, Florida ................................................... 2

Norwegian Cruise Line, Miami Port of Call ......................................................................... 2, 18

Norwegian Cruise Line, Tampa Port of Call ......................................................................... 2, 18

Plaintiffs Norwegian Cruise Line Holdings Ltd., NCL (Bahamas) Ltd., Seven Seas Cruises S. de R.L., and Oceania Cruises S. de R.L. (together, "NCLH") respectfully oppose Defendant's Expedited Motion For Transfer.   *See* Dkt. 28 ("Transfer Mot.").    It is obvious that **<u>Miami</u>** (*i.e.*, the Southern District of Florida) is the appropriate forum to adjudicate the legal violations and injuries this Defendant is perpetrating upon NCLH's vessels and operations based in **<u>Miami</u>**. Indeed, even if this case had been filed elsewhere, the grounds for transferring ***<u>to</u>* <u>Miami</u>** would be unanswerable.   Considering that the case was in fact filed here, is receiving expedited treatment here, and has been shaped by Defendant's own scheduling submissions here, this Court has a bevy of ironclad bases for denying the instant motion and thus keeping the case on track here.

## BACKGROUND

### A.   <u>Florida's Ban Imperils NCLH Operations In Miami</u>

Norwegian Cruise Line Holdings Ltd., NCL (Bahamas) Ltd., Seven Seas Cruises S. de R.L., and Oceania Cruises S. de R.L. are all cruise ship companies that are headquartered in Miami, Florida, where NCLH's 28-ship fleet is based.   Compl., Dkt. 1, ¶¶ 11–14, 61.   After enduring and overcoming many public health and regulatory obstacles, NCLH has at last received CDC's approval to return to sailing out of Miami, but only after NCLH attested, under penalty of perjury, that at least 95% of its passengers and crew "will be confirmed as fully vaccinated" as slated to leave from Miami.   Decl. of Frank Del Rio ("Del Rio Decl."), Dkt. 3-1, ¶ 20 & Ex. 2; Decl. of Olga Vieira, Dkt. 3-2, ¶ 6 & Ex. 4.

Just as NCLH was rebuilding customer confidence and successfully reaching the end of a regulatory gauntlet, Florida played the role of spoiler.   On May 3, 2021, Florida enacted § 381.00316, prohibiting "business entit[ies]" operating in Florida from "requir[ing] patrons or customers to provide any documentation certifying COVID-19 vaccination or post-infection

1

recovery to gain access to, entry upon, or service from the business."   Fla. Stat. § 381.00316(1) (2021) (the "Ban").   This Ban imperils NCLH's entire operation by shackling NCLH's base and surrounding infrastructure in Miami.   NCLH's next passenger cruise from Florida is set to disembark specifically from PortMiami on August 15, 2021.   Del Rio Decl. ¶¶ 23, 32.   NCLH employs well more than 100 people who work on turn-around days at PortMiami, "one of the cruise industry's largest and most essential international ports."   *Id.* ¶¶ 4, 35.   Although Defendant now invokes NCLH's fractional operations in Tampa, Transfer Mot. at 9 n.2, NCLH's voyages from that port are far off (none is scheduled to embark from there until December 8, 2021) and dwarfed by NCLH's operations in Miami, from its PortMiami terminal, as constructed (at the cost of more than $200 million) specifically to serve NCLH's Miami operations.[1]

As Florida itself has observed in recent court submissions, "Port*Miami* is an important economic force in the community, contributing $41.4 billion of total economic activity and supporting 324,352 jobs in the state of Florida" and "represents 4.4 percent of the $933.8 billion state of Florida GDP in 2016."   The Local & Regional Economic Impacts of Port*Miami*, Dkt. 9-21, *Florida v. Becerra*, No. 8:21-cv-00839-SDM-AAS, at 28 (M.D. Fla. Apr. 22, 2021) ("Port*Miami* Impacts").   By contrast, Florida estimates that Port Tampa Bay accounts for around $17.2 billion in economic activity.   The Local & Regional Economic Impacts of Port Tampa Bay,

---

[1]   *Compare* Norwegian Cruise Line, Miami Port of Call ("NCL Miami Routes"), https://www.ncl.com/vacations?port-of-call=mia (54 different routes call in Miami in 2021–22), *with* Norwegian Cruise Line, Tampa Port of Call ("NCL Tampa Routes"), https://www.ncl.com/vacations?port-of-call=tpa (10 different routes call in Tampa in 2021–22). While three NCLH voyages are scheduled to depart from Miami in August 2021, *see* Norwegian Cruise Line, Caribbean: Harvest Caye, Cozumel & Roatan from Miami, Florida ("NCL August & September Miami Cruises"), https://www.ncl.com/cruises/7-day-caribbean-round-trip-miami-harvest-caye-cozumel-and-roatan-GEM7MIARTBBPICMACZMMIA?sailMonths=4294940507 &numberOfGuests=4294953449&sortBy=featured&autoPopulate=f&from=resultpage&itinerary Code=GEM7MIARTBBPICMACZMMIA, no cruises will depart from Tampa until December, *see* NCL Tampa Routes.

Dkt. 9-23, *Florida v. Becerra*, No. 8:21-cv-00839-SDM-AAS, at 7 (M.D. Fla. Apr. 22, 2021).
Florida has also recognized that "Port*Miami* serves as global headquarters" specifically for the
Plaintiffs here.   Port*Miami* Impacts at 1.   In other words, Florida's instant attempt to discount
Miami's relative import is belied by Florida's consistent submissions to other courts hitherto.

### B.   Florida's Suit Against CDC Proceeds In Parallel With NCLH's Instant Suit

On April 8, 2021, Florida sued CDC in the U.S. District Court for the Middle District of
Florida to challenge CDC's Conditional Sailing Order on various legal grounds.   Compl., Dkt. 1,
*Florida v. Becerra*, No. 8:21-cv-00839-SDM-AAS, ¶¶ 48–72 (M.D. Fla. Apr. 8, 2021).   The only
constitutional claim Florida presses there is that CDC allegedly relied on an unconstitutional
delegation of regulatory authority.   *See id.* ¶¶ 70–72.

Florida sought a preliminary injunction against CDC on grounds different from those at
issue here.   Fla.'s Mot. for Prelim. Inj., Dkt. 9, *Florida v. Becerra*, No. 8:21-cv-00839-SDM-
AAS, at 7–20 (M.D. Fla. Apr. 22, 2021).   Believing that Florida was likely to prevail in its
challenge, Judge Merryday preliminarily enjoined CDC "from enforcing against a cruise ship
arriving in, within, or departing from a port in Florida the conditional sailing order and the later
measures (technical guidelines, manuals, and the like)."   Order, *Florida v. Becerra*, Dkt. 91, No.
8:21-cv-00839-SDM-AAS, at 123 (M.D. Fla. June 18, 2021) ("PI Order").   But the court stayed
its injunction until July 18, 2021, "at which time the conditional sailing order and the measures
promulgated under the conditional sailing order will persist as only a non-binding 'consideration,'
'recommendation,' or 'guideline,'" unless CDC proposed, and the district court approved, a
narrower injunction consistent with the court's order.   *Id.*   Notably, even as operative, the
court's injunction does not prohibit CDC from enforcing the conditional sailing order ***outside*** of

Florida, including in the U.S. Virgin Islands and Puerto Rico—both U.S. territories where NCLH cruises are scheduled to make calls.[2]   *See id.*; Del Rio Decl. ¶ 23.

Judge Merryday's preliminary injunction was initially stayed by a panel of the Eleventh Circuit at CDC's request, by order dated Saturday, July 17.   Order, *Florida v. Becerra*, No. 21-12243 (11th Cir. July 17, 2021).   Prior to that initial stay order, NCLH sought leave from the Eleventh Circuit to file as an *amicus* supporting CDC's stay request.   *See* Mot. of NCLH for Leave to File an *Amici Curiae* Br. in Support of Appellants' Mot. for Stay, *Florida v. Becerra*, No. 21-12243 (11th Cir. July 13, 2021).   But such leave was opposed by Florida, *see* Transfer Mot. at 5 n.1, and never granted.   At no time did NCLH have any prospect of being an actual party before the Eleventh Circuit, nor has NCLH ever participated (even to seek leave to file as an *amicus*) in the Middle District of Florida.   *Evans v. Ga. Regional Hosp.*, 850 F.3d 1248, 1257 (11th Cir. 2017) ("We do not consider an *amicus curiae* to be a party in the case where it appears."), *abrogation on other grounds recognized by Lewis v. Am. Tower*, 2021 WL 2255487 (11th Cir. June 3, 2021).   By order dated Friday, July 23, the Eleventh Circuit sua sponte vacated its stay order "because appellants failed to demonstrate an entitlement to a stay pending appeal."   Order, *Florida v. Becerra*, No. 21-12243 (11th Cir. July 23, 2021) (citing *Nken v. Holder*, 556 U.S. 418, 434 (2009)).   Then, on Monday, July 26, the Eleventh Circuit issued an order treating as "moot" the motion for leave filed by "Not Part[y] NCLH."   Order, *Florida v. Becerra*, No. 21-12243 (11th Cir. July 26, 2021).

Less than two weeks after Florida's Ban became effective and after extensive settlement efforts failed, NCLH initiated this action against the Surgeon General of Florida challenging the

---

[2]      *See* Framework for Conditional Sailing & Initial Phase COVID-19 Testing Requirements for Protection of Crew, 85 Fed. Reg. 70153-01, 70154 (Nov. 4, 2020) (defining "U.S. waters" as "any international, interstate, or intrastate waterways that are subject to the jurisdiction of the United States").

Ban on four grounds:    (1) The Ban is preempted by the Conditional Sailing Order and related CDC regulations *as applied to NCLH*; (2) the Ban violates the First Amendment *as applied to NCLH*; (3) the Ban violates the Dormant Commerce Clause *as applied to NCLH*; and (4) the Ban violates the Due Process Clause of the Fourteenth Amendment *as applied to NCLH*.    Pls.' Mot. for Prelim. Inj., Dkt. 3, at 8 & n.1.

NCLH moved for a preliminary injunction against the Ban the same day it filed suit.    *Id.* NCLH's Expedited Motion for a Preliminary Injunction requested that the Court grant relief by or before August 6, 2021, so that NCLH can sail from Miami as planned on August 15.    *Id.* at 20.

**C.**    **Florida Differentiates This Litigation From Its Litigation Against CDC**

Even before NCLH initiated this action, its counsel reached out to Florida's counsel of record in the Middle District of Florida action in an effort to provide a heads-up and open up lines of communication.    E-mail from D. Shaffer to J. Hilborn & J. Percival (July 13, 2021, 8:38 AM), Dkt. 11-1, at 6–7.    Because NCLH's counsel had no way of ascertaining who exactly would defend this suit and wanted to be maximally helpful, counsel encouraged the State's lawyers "to forward our email to any relevant colleagues."    *Id.* at 7.    Counsel also offered to discuss an appropriate briefing schedule and proposed to streamline service.    *Id.*    But Florida's lawyers— counsel of record for Florida in the action pending in the Middle District of Florida, to which the Surgeon General now seeks a transfer—steadfastly distanced themselves, reporting, *e.g.*, that they do not represent the Surgeon General and would not accept service on his behalf.    *See* E-mail from J. Percival to D. Shaffer (July 13, 2021, 10:53 AM), Dkt. 11-1, at 5.    After this suit was on file, Florida's lawyers still indicated their case had nothing to do with this one, emailing NCLH's counsel to "suggest reaching out to the Governor GC's office."    E-mail from J. Percival to D. Shaffer (July 13, 2021, 11:46 AM), Dkt. 11-1, at 4.    NCLH's counsel did as told, but the next day

were again rebuffed by the Governor's General Counsel, who declined to discuss scheduling until the following week.   E-mail from J. Uthmeier to D. Shaffer (July 14, 2021, 8:52 AM), Dkt. 11-1, at 2–3.   The State's lawyers then indicated that the Florida Department of Health would separately handle defense.   E-mail from L. St. Laurent to D. Shaffer (July 14, 2021, 9:14 AM), Dkt. 11-1, at 1.   Only on Friday, July 16, did specially-retained lawyers enter the scene for Defendant, with these lawyers now trying to loop this case together with that in the Middle District—even after Florida's lawyers who are responsible for defense there took pains, for days, to distance their defense in the Middle District from this one here.

In the meantime, the expedited schedule in this case crystallized, as largely shaped by Defendant.   On Thursday, July 15, the Court entered an order setting the briefing schedule for NCLH's Expedited Motion.   Order, Dkt. 12, at 1–2.   Later that day, the Florida Department of Health's General Counsel conferred with NCLH's counsel and then moved for relief pushing the schedule back by seven days.   Def.'s Expedited Mot. for Extension of Time, Dkt. 16, at 6.   The Court granted the motion in large part (albeit not entirely), affording Defendant four additional days to respond to NCLH's Expedited Motion.   Order, Dkt. 24, at 1.   Defendant to that point omitted any hint of any potential transfer motion that might intrude upon the schedule.

After the close of business on Friday, July 16, the Surgeon General's newly-retained outside counsel first raised the prospect of the instant transfer motion and sought NCLH's position on it.   NCLH's counsel immediately advised that NCLH would oppose any attempt to transfer this action, and Defendant later that night filed his Expedited Motion for Transfer.   *See* Transfer Mot.   This Court then entered the operative briefing schedule on Sunday, July 18, matching the time it afforded Defendant to oppose the preliminary injunction and ensuring the instant briefing will conclude in advance of the hearing scheduled for August 6.

**ARGUMENT**

Before addressing specifics of Defendant's claimed grounds, it bears emphasizing that the two doctrines he invokes are both discretionary; even the first-filed "rule" is actually a *presumption*.  *See, e.g.*, *Hernandez v. Cracker Barrel Old Country Store, Inc*., 2014 WL 5175715, at *1–2 (M.D. Fla. Oct. 14, 2014).   At best, therefore, Defendant is appealing to this Court's discretion.   Yet Defendant has no plausible account for why this Court *should*, on balance, exercise any discretion to order transfer under the present circumstances.

Any observer can see that Miami is the center of gravity—the place where all of NCLH's operations are based and where Defendant is directing the enforcement threats at issue.   By comparison, it is questionable (to say the least) why Florida would have sued CDC purportedly on behalf of the cruise industry in the Middle District, other than as a result of naked forum shopping.   But no matter what rationale Florida may contrive for electing to sue CDC in the Middle District (where neither Florida's government, nor the cruise industry, nor CDC is based), that does not come close to justifying the instant motion to *transfer to* the Middle District.   It especially cannot justify transfer at this stage of highly-expedited litigation that calls urgently for prompt resolution.

In any event, these Plaintiffs have chosen the Southern District as the most natural and appropriate forum for this particular case—the one where almost all potential witnesses[3] and proof are located, and where all of the key considerations and interests converge.   Florida lacks any persuasive basis for now overcoming that choice.   For the reasons specified below, the claimed grounds for transfer are altogether lacking.   Even short of that, however, it suffices to note that

---

[3]      Defendant has submitted a declaration from Mark S. Lander, Interim Deputy Secretary for the Florida Department of Health County Health Systems, whose listed address is in the Northern District.   *See* http://www.floridahealth.gov/about/ssg/leadership/deputy-secretary-for-county-health-systems.html.

this Court has ample, ready grounds to exercise its discretion to deny transfer and thereby maintain the operative expedited schedule, as already revised at Defendant's behest.

## I.     TRANSFER IS UNWARRANTED UNDER THE FIRST-TO-FILE RULE

For the first-filed rule to apply, "the suits must involve nearly identical parties and issues." *In re Chiquita Brands Int'l Alien Tort Statute & S'holder Derivative Litig.*, 2018 WL 11251120, at *5 (S.D. Fla. May 8, 2018) (quotation omitted); *see also Elliott v. Williams*, 2021 WL 1998411, at *4 (S.D. Fla. Mar. 18, 2021) ("[t]he crucial inquiry" is whether the parties and the issues "substantial[ly] overlap"); *All Ins. Restoration Servs. v. Nautilus Ins. Co.*, 2021 U.S. Dist. LEXIS 31314, at *4 (S.D. Fla. Feb. 18, 2021).    "This assessment is generally guided by three criteria: (1) chronology of events (i.e. which suit was filed first) (2) similarity of the parties involved, and (3) similarity of the issues or claims at stake."    *In re Chiquita Brands*, 2018 WL 11251120, at *5. "The first-to-file rule presumptively applies if *each* of these three factors is satisfied."    *Id.* (emphasis added).    No such presumption applies here given obvious, profound differences between the relevant parties and issues.

***The Parties.***    Substantial overlap between the parties is missing.    The parties in this case are Plaintiffs Norwegian Cruise Line Holdings Ltd., NCL (Bahamas) Ltd., Seven Seas Cruises S. de R.L., and Oceania Cruises S. de R.L., and Defendant Scott Rivkees in his official capacity as State Surgeon General.    The parties in the Middle District case, in contrast, are plaintiff States Florida and Texas suing various *federal* officials.    Simply comparing the two cases' captions establishes that the first-filed rule does not apply here.    While "precise identity of the parties is not required," Transfer Mot. at 7, the first-filed rule does require that the parties "are sufficiently similar[] or substantially overlap," *Vital Pharms., Inc. v. PhD Mktg.*, 2020 U.S. Dist. LEXIS 198931, at *3 (S.D. Fla. July 28, 2020); *see also Burns v. MLK Express Servs., LLC*, 2020 WL

1891175, at *3 (M.D. Fla. Apr. 16, 2020) ("*Minor* differences between parties are acceptable.") (emphasis added).

In a recent case addressing the first-filed rule, the Eleventh Circuit rejected its application in circumstances preclusive of Defendant's theory. *See Collegiate Licensing Co. v. Am. Cas. Co. of Reading* ("*CLC*"), 713 F.3d 71, 78–80 (11th Cir. 2013). There, CLC was a defendant in a California case and a plaintiff in a Georgia case and obtained an injunction from the Georgia district court preventing the defendants in Georgia from intervening in California. *See id.* at 75–77. The Eleventh Circuit affirmed, rejecting the Georgia defendants' argument that the "first-filed rule" applied to the case in California. *Id.* at 78–80. Despite recognizing similarity in issues between the two cases, the Eleventh Circuit stressed that "[a] first-filed analysis looks to the character of the suits *and the parties to the suits*, not simply to the similarity of issues without regard to the identity of the parties asserting them and their asserted rights as presented in the initial lawsuit." *Id.* at 79 (emphasis added); *see also id.* at 78 (rejecting the "issue-based analysis" urged by the Georgia defendants). Because there was "no relationship" between the Georgia defendants and the plaintiff in the California case, the first-filed rule could not be properly invoked in support of the California case. *Id.* at 79 ("[T]he only party in common in the Georgia Action and the California Action is CLC."). Thus, the Circuit held the first-filed rule inapplicable even where one party overlapped between the two lawsuits and there was some overlap in the issues. *Id.* *CLC* should be determinative here.

Courts across this Circuit routinely eschew application of the rule where there is no "substantial[] overlap" between "the parties and issues." *Williams v. Bluestem Brands, Inc.*, 2018 WL 2426644, at *1 (M.D. Fla. May 30, 2018); *see also Tempur-Pedic N. Am. v. Mattress Firm*, 2018 U.S. Dist. LEXIS 239632, at *5–6 (M.D. Fla. Sept. 20, 2018) (finding first-filed rule

inapplicable even where "some parties are the same" including some of the same plaintiffs and the same defendant "[a]nd both actions involve claims of trademark infringement" because the cases did "not substantially overlap"); *Rodriguez v. Molina Healthcare of Fla., Inc.*, 2017 WL 10841484, at *2 (N.D. Fla. May 24, 2017) (first-filed rule did not apply because there was "no overlap in parties at all"); *Savage v. Seterus, Inc.*, 2020 WL 2219194, at *2 (M.D. Fla. May 7, 2020) (first-filed rule should not be applied where parties were "substantially different"); *Mister Sparky Franchising, LLC v. On Time Electricians, Inc.*, 2015 WL 1811082, at *2–3 (M.D. Fla. Apr. 21, 2015) (similar); *Epler v. Air Methods Corp.*, 2021 WL 2806207, at *6 (M.D. Fla. June 4, 2021) (similar); *Nat'l Union Fire Ins. Co. v. Beta Constr. LLC*, 2010 WL 3789042, at *4 (M.D. Fla. Sept. 24, 2010) (similar).

Defendant appears to suggest—without saying directly—that he and the State of Florida are one and the same for purposes of the first-filed analysis. But nothing supports that assumption. And Florida has already gone to conspicuous lengths to dispel that assumption. When NCLH reached out, pre-suit, to counsel in the Florida Attorney General's office who were litigating Florida's lawsuit in the Middle District, counsel for the Attorney General responded "[u]nder state law, we don't represent the Surgeon General unless retained." E-mail from J. Percival to D. Shaffer (July 13, 2021, 10:24 AM), Dkt. 11-2, at 8. When pressed on this point, they then called out NCLH's counsel's "lack of understanding of Florida's government structure." *See* E-mail from J. Percival to D. Shaffer (July 13, 2021, 11:01 AM), Dkt. 11-1, at 4–5. When the Department of Health's General Counsel finally entered the scene via email, she "remind[ed] NCLH] that as the Department of Health's General Counsel, this is within the authority of my office." E-mail from L. St. Laurent to D. Shaffer (July 14, 2021, 9:14 AM), Dkt. 11-1, at 1. Now it is NCLH's turn to do some "reminding." The uniform position of Florida's own

attorneys, *supra* at 4–5, is irreconcilable with the position that its specially-retained outside attorneys now take in urging this Court to equate the State with its Surgeon General.

Even setting that aside and assuming Florida and Defendant could be considered one and the "same" party for purposes of the first-filed analysis, that would still not suffice because *other* parties differ.   Once again, *CLC* addressed similar facts:   One party was the same across both lawsuits, but others differed.   713 F.3d at 79.   The first-filed rule does not apply here any more than it did there.[4]   *See also Dean v. Dometic Corp.*, 2020 WL 3547746, at *7 (M.D. Fla. June 15, 2020) (rejecting application of the first-filed rule where "[t]he only overlap between the parties is the similar Defendant").   It should be altogether preclusive that NCLH—the party whose legal theories and circumstances define the contours of the instant constitutional challenge—is Plaintiff here yet is ***not*** a party in the Middle District of Florida.

Application of the first-filed rule would be all the more inappropriate because Defendant has already sought relief in this Court, Def.'s Expedited Mot. for Extension of Time, Dkt. 16, which the Court granted in part, Order, Dkt. 24.   To the extent Defendant was left dissatisfied with the Court's order, that is no basis for this Court to grant relief.   *Cf. Attix v. Carrington Mortg. Servs.*, 2020 WL 9849821, at *4 (S.D. Fla. Oct. 13, 2020) ("It appears to the Court that the Proposed Intervenors allowed this Court and the Parties to spend considerable resources litigating and adjudicating Carrington's motion to compel arbitration, only to seek to end this case after the Court denied the motion.").

Nodding at the differences between the cases, Defendant concedes that "the parties and issues in the two suits do not overlap entirely."   Transfer Mot. at 6–7.   That leaves Defendant relying upon one essential fig leaf:   Defendant suggests that NCLH's ***request*** (never granted, in

---

[4]      That Florida is a *plaintiff* in the Middle District but a *defendant* in this case (even crediting *arguendo* Defendant's account) further indicates that the issues differ.

the face of Florida's opposition and a determination of mootness) for leave as an ***amicus*** (not a party) before the Eleventh Circuit (not the Middle District) is equivalent to NCLH actually being a ***party before the Middle District***.   But that fig leaf is not remotely satisfying.   Defendant cites no case holding or hinting that participating as an ***amicus on appeal*** (had NCLH been granted leave, which it wasn't) would suffice to satisfy the "same parties" prong of the first-filed analysis, nor can NCLH find any such case.   Indeed, all known caselaw indicates the opposite.   *Evans*, 850 F.3d at 1257 ("[W]e do not consider an *amicus curiae* to be a party in the case where it appears.").   Lest there be any doubt, in granting the State's motion for a preliminary injunction, Judge Merryday expressly noted that "the cruise industry" was a "*third* party" to that litigation. PI Order at 20 (emphasis added); *see also id.* (referring to cruise industry as a "third party not before the court").   Likewise, the Eleventh Circuit expressly referenced NCLH as "*Not* Part[y]" in treating its motion for leave as "moot."   Order, *Florida v. Becerra*, No. 21-12243 (11th Cir. July 26, 2021) (emphasis added).   As such, Defendant's motion rests on a premise that both the Middle District and the Eleventh Circuit have expressly negated.

 ***The Issues.***   Although the lack of requisite overlap between the parties is preclusive in and of itself, material divergence in issues between the two cases is also independently fatal.   "For the first-filed rule to apply . . . 'the later-filed case must be "truly duplicative"' of the first-filed case.   Therefore, the case 'must be materially on all fours' with the first-filed case." *CertainTeed Corp. v. Nichiha USA, Inc.*, 2009 WL 3540796, at *3 (E.D. Pa. Oct. 29, 2009) (quoting *Grider v. Keystone Health Plan Cent., Inc.*, 500 F.3d 322, 333 n.6 (3d Cir. 2007)); *see Lott v. Advantage Sales & Mktg. LLC*, 2011 WL 13229682, at *2 (N.D. Ala. Jan. 26, 2011) ("Duplicative lawsuits are those in which the issues have such an identity that a determination in one action leaves little or nothing to be determined in the other.") (quotation omitted).

12

Defendant cannot satisfy this standard.   Although there is **partial** overlap on **one** issue—whether CDC regulations are valid for purposes of preempting § 381.00316—the remaining issues differ so as to take the first-filed rule well out of play.   The Middle District has had nothing to say about § 381.00316, let alone whether it conflicts with CDC regulations for purposes of preemption, or whether it violates the First Amendment, Dormant Commerce Clause, or substantive Due Process—all of which this Court must decide and decide *specifically as applied to NCLH*.

The Eleventh Circuit's decision in *CLC* is instructive on this point as well.   There, the Eleventh Circuit acknowledged that the claims in the Georgia lawsuit "shared certain common questions of law or fact" with the California lawsuit.   713 F.3d at 79.   But "that finding [was] not dispositive of whether the actions in which those disputes are raised are the same for purposes of the first-filed rule" because "the policies at issue in National Union's complaint are different policies than those at issue in the Georgia Action."   *Id.*   The same holds here *a fortiori* given the presence of wholly distinct lines of constitutional challenge.

No matter how the Middle District litigation turns out (and the Eleventh Circuit's stay orders suggest division about the correctness of the court's preliminary determinations), no one can think that it will leave little or nothing to be determined here.   Indeed, Defendant acknowledges that "Plaintiffs' separate constitutional claims . . . should also be resolved." Transfer Mot. at 6.[5]   And district courts in this Circuit routinely deny motions premised on the first-filed rule based on lack of substantial overlap.   *Williams*, 2021 WL 1998411, at *4–5;

---

[5]      At the same time, Defendant repeats the day-of-suit mantra from the Governor's press secretary that NCLH's claims are "meritless."   Transfer Mot. at 6.   Because the Court will be assessing the merits for itself, Defendant's say-so should be inconsequential.   There can be no denying, however, that this Court is uniquely equipped with substantial briefing on constitutional questions that the Middle District has yet to glimpse.   And we are here demonstrating (not just saying) that Defendant's claimed basis for transfer is without merit.

*Tempur-Pedic N. Am.*, 2018 U.S. Dist. LEXIS 239632, at *5–8.   The same reasoning and result obtain here.

     ***Equitable Factors.***   Seemingly recognizing that black-letter law is against him, Defendant invokes the principle that the "first-filed rule 'is a rule of equity.'"   Transfer Mot. at 7 (quoting *CLC*, 713 F.3d at 80).   But his account of its "equitable" operation is misconceived.   If and only if the three factors are satisfied does the first-filed rule create a "presumption," at which point the presumption "may be overcome if the court finds equitable considerations—such as inequitable conduct, bad faith, pursuit of anticipatory suits or forum shopping— . . . justify overriding the rule in a particular case."   *In re Chiquita Brands*, 2018 WL 11251120, at *5.   For that reason, courts invoke the first-filed rule as an equitable doctrine to ***deny*** motions to transfer based on the first-filed rule ***even when*** the three factors are satisfied.   *See, e.g.*, *id.* (concluding that although "the first-to-file rule presumptively applies" because the three factors were satisfied, "the equities" overcame the presumption).

     But NCLH has found no case—and again, Defendant cites none—establishing that courts have free-wheeling equitable authority to transfer cases pursuant to the first-filed rule even when the established factors are ***not*** satisfied.   Any such argument defies caselaw holding that the presumption in favor of transfer kicks in if and only if "*each* of these three factors is satisfied." *Id.* (emphasis added).   It also threatens to transform the first-filed rule from a narrow doctrine that applies in limited circumstances into a broad license for district courts to transfer cases willy-nilly simply because a particular judge sees "the equities" as favoring transfer.   In fact, no court has stretched the first-filed rule that far, and this Court should not become the first.

     In any event, the equities weigh decisively against transfer here.   As "one of the busiest ports in the nation," *Fla. Transp. Servs., Inc. v. Miami-Dade Cnty.*, 703 F.3d 1230, 1235 (11th Cir.

2012), Miami stands to suffer the most if Florida's Ban is not enjoined.    Likewise, disruptions to NCLH's operations will be felt most in the Southern District, as each of the Plaintiffs is headquartered in Miami, Compl., Dkt. 1, ¶¶ 11–14, NCLH's 28-ship fleet is based there, *id.* ¶ 61, and NCLH employs numerous contract workers at the PortMiami terminal, Del Rio Decl. ¶ 35. Contrary to Defendant's conclusory assertion, therefore, "the balance of convenience ti[ps] in favor" of litigating this case in the Southern District.    Transfer Mot. at 7 (quoting *Zampa v. JUUL Labs, Inc.*, 2019 WL 1777730, at *2 (S.D. Fla. Apr. 23, 2019)).    Further still, all of the reasons why this case deserves expedition, and the steps this Court has taken to ensure expedition, militate against transfer—especially given the obvious disruption and delay that would be associated with restarting this case in the Middle District.    Last, if one particular venue were to be deemed suspect, it would be the Middle District.    Whereas this Court is, for irrefutable and irreproachable reasons, a natural choice to resolve this case, Florida's decision to sue CDC in the Middle District is strongly suggestive (to say the least) of cynical forum shopping.    Any notion that equity now commends transfer from this Court to the Middle District is upside-down.

For the reasons stated above, it would be an abuse of discretion to transfer the case.    Short of that, however, it suffices to note that—even crediting *arguendo* the premise that the first-filed rule is arguably satisfied so as to bring this Court's discretion into play—the Court has ample, compelling grounds to retain the case.    *See, e.g.*, *Hernandez*, 2014 WL 5175715, at *2 ("[T]he application of the first-filed rule is not mandatory, but rather committed soundly to the district court's discretion.").

## II.    TRANSFER IS UNWARRANTED UNDER 28 U.S.C. § 1404

Defendant comes no closer to carrying his burden of making the case for a discretionary transfer pursuant to 28 U.S.C. § 1404.    Section 1404(a) provides that, "[f]or the convenience of

the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). When evaluating a transfer motion under 28 U.S.C. § 1404, courts employ a "two-pronged inquiry." *Mason v. Smithkline Beecham Clinical Labs.*, 146 F. Supp. 2d 1355, 1359 (S.D. Fla. 2001). First, courts determine whether the alternative venue is "one in which the action could originally have been brought by the plaintiff." *Id.* Second, courts "balance private and public factors to determine if transfer is justified." *Id.* Among these factors are the "plaintiff's initial choice of forum, convenience of the parties and witnesses, relative ease of access to sources of proof, availability of compulsory process for witnesses, location of relative documents, financial ability to bear the costs of change, and the public interest." *Steifel Labs., Inc. v. Galderma Labs., Inc.*, 588 F. Supp. 2d 1336, 1338 (S.D. Fla. 2008). "The standard for transfer leaves broad discretion to the court, which will be overturned only for abuse of discretion." *Id.*

"The burden is ultimately on the party moving for transfer to establish that another district is a more convenient forum than the plaintiff's chosen forum." *Osgood v. Disc. Auto Parts, LLC*, 981 F. Supp. 2d 1259, 1263 (S.D. Fla. 2013). "The plaintiff's choice of forum should not be disturbed unless it is clearly outweighed by other considerations." *Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 260 (11th Cir. 1996) (quotation omitted). Accordingly, even "neutral factors" weigh *against* transfer. *Sterling v. Provident Life & Accident Ins. Co.*, 519 F. Supp. 2d 1195, 1208 (M.D. Fla. 2006); *see also SME Racks, Inc. v. Sistemas Mecanicos Para Electronica, S.A.*, 382 F.3d 1097, 1103 (11th Cir. 2004) ("If any presumption exists in favor of the plaintiffs' choice . . . by definition the plaintiffs' choice must win if all other factors are equal."). When this burden is not met, "the [c]ourt defers to a plaintiff['s] initial forum choice." *TracFone Wireless, Inc. v. Clear Choice Connections, Inc.*, 2014 U.S. Dist. LEXIS 193047, at *16–17 (S.D. Fla. July 14,

2014).

By their terms, the public and private factors each weigh heavily against transfer.   Once NCLH's choice of forum is given due weight, however, Defendant's statutory transfer argument is not even colorable.

***Plaintiff's Choice Of Forum.***   NCLH's decision to file its suit in the Southern District of Florida "should not be disturbed."   *Robinson*, 74 F.3d at 260.   Here, Defendant has "not alleged, and there is no reason to believe, that [NCLH], in choosing this forum, sought to harass or oppress [Defendant] by imposing unnecessary legal expenses on [him]."   *Mason*, 146 F. Supp. 2d at 1360. Rather, NCLH chose the Southern District for irreproachable reasons:   It is headquartered in Miami, Compl., Dkt. 1, ¶¶ 11–14, its fleet is based here, *id.* ¶ 61, its upcoming voyages are slated to leave from here, Del Rio Decl. ¶¶ 23, 32, and Florida itself has noted Miami's unique importance to the entire cruise industry, *see supra* at 2–3.   Defendant's failure to show that Plaintiffs' choice is "clearly outweighed by other considerations," *Robinson*, 74 F.3d at 260 (quotation omitted), should itself be dispositive.

***Locus Of Operative Facts***.   The locus of operative facts also weighs against transfer. "To determine the locus of operative facts, courts look to where the events from which the claim arises occurred."   *Combs v. Fla. Dep't of Corr.*, 461 F. Supp. 3d 1203, 1211 (N.D. Fla. 2020) (quotation omitted).   Here, the harms from Florida's Ban are focused on Miami.   The Ban threatens to upend operations for all Plaintiffs, who are headquartered in Miami, Compl., Dkt. 1, ¶¶ 11–14, where NCLH's 28-ship fleet is based, *id.* ¶ 61, while threatening the employment of NCLH's numerous contract workers at PortMiami—who number well over 100 on each turn-around day, Del Rio Decl. ¶ 35.   Indeed, if Florida's Ban is not enjoined, its disruptive effects on

the cruise industry generally, and NCLH in particular, will be most severely felt in the Port of Miami, "one of the busiest ports in the nation." *Fla. Transp. Servs., Inc.*, 703 F.3d at 1235.

Defendant half-heartedly suggests that NCLH is "present" in the Middle District and points to its "cruises out of Tampa, Florida." Transfer Mot. at 9 & n.2. But while numerous NCLH cruise routes go through Miami, only a small handful go through Tampa, none of which is imminent. *Compare* NCL Miami Routes (54 different routes call in Miami in 2021–22), *with* NCL Tampa Routes (10 different routes call in Tampa in 2021–22); *see supra* n.1. Three NCLH voyages are scheduled to depart from Miami in August 2021, *see* NCL August & September Miami Cruises, *supra* n.1, whereas none will depart from Tampa until December, *see* NCL Tampa Routes.

***Convenience Of The Parties And Witnesses.*** The convenience of the parties and any potential witnesses both weigh against transfer. "Some courts consider the convenience of the parties the single most important factor in the analysis of whether a transfer should be granted." *Steifel Labs.*, 588 F. Supp. 2d at 1339. Here, the Southern District is obviously more convenient for Plaintiffs, who are headquartered in Miami. Compl., Dkt. 1, ¶¶ 11–14. To the extent any evidence or testimony may be deemed appropriate, NCLH's executive team—including its CEO, Frank J. Del Rio, who submitted a declaration in support of its Expedited Motion for a Preliminary Injunction, *see* Dkt. 3-1—would be better positioned to testify to critical facts in Miami. *See Steifel Labs.*, 588 F. Supp. 2d at 1339 ("Here, Plaintiffs have submitted declarations from two executives who reside and work within the Southern District of Florida and who are both expected to be called as witnesses to the case."). To the extent that other witnesses are based outside the Southern District, they are also based outside the Middle District as well, making it at least as convenient to travel to the Southern District as compared to the Middle District. *See id.* at 1340

("[T]o the extent that the employees will be required to travel, it is no less convenient to travel from their respective mid-Atlantic locations to Miami, Florida than to Fort Worth, Texas.").

Tellingly, Defendant does not even claim that litigating in the Middle District would be more convenient for anyone.   Although Defendant notes that the Department of Health (which he heads) "has offices and performs substantial duties in the Middle District of Florida," Transfer Mot. at 8, the Surgeon General himself is headquartered in **Tallahassee**, which is in the **Northern** District of Florida.

**Familiarity With Governing Law, Trial Efficiency, And The Interests Of Justice.** Notwithstanding Defendant's contrary assertion, neither of the two factors he identifies—"a forum's familiarity with the governing law" and "trial efficiency and the interests of justice, based on the totality of the circumstances"—weighs in favor of transfer.   *Id.* at 9.   In Defendant's view, these factors favor the Middle District because it has "already begun analyzing those issues [relating to CDC's Conditional Sailing Order] in detail."   *Id.*   But that covers **only** a **portion** of **one** of NCLH's **four** claims raised in this case.   Even as to that one portion, the Middle District case has not yet reached the merits.   Meanwhile, this Court has had the benefit of briefing and supporting declarations so that it is already advised on the premises as to the specific issues posed here, and it has also arrived at an expedited briefing schedule that will enable timely resolution. Although Defendant may prefer a different forum for the sake of serving his own interests, it rings false for him to invoke judicial economy, familiarity with this case, or the interests of justice as though they are on his side as he now seeks transfer.   To the contrary, these considerations likewise commend keeping the case on track and on schedule here, in front of a Court that has had unique opportunity to study the specific briefing, materials, and issues on which this case turns.

\*       \*       \*

19

Viewed fairly, the relevant factors all weigh powerfully against transfer.   By no stretch of facts, law, or imagination can they be twisted so as to overcome NCLH's natural and valid selection of this forum.   NCLH therefore respectfully urges this Court to continue proceeding as it is and not to permit the disruptions and delays that would be associated with any transfer.

**CONCLUSION**

For the foregoing reasons, the requested transfer should be denied.

DATED:   July 30, 2021                     Respectfully submitted,

                          QUINN EMANUEL URQUHART & SULLIVAN LLP


                          By   */s/ John F. O'Sullivan*
                          John F. O'Sullivan (Fla. Bar No. 143154)
                          Olga Vieira (Fla. Bar No. 29783)
                          2601 South Bayshore Drive, 15th Floor
                          Miami, FL 33133
                          (305) 439-5008
                          johnosullivan@quinnemanuel.com
                          olgavieira@quinnemanuel.com

                          Derek L. Shaffer*
                          William A. Burck*
                          Jonathan G. Cooper*
                          1300 I Street NW, 9th Floor
                          Washington, DC 20005
                          (202) 538-8000
                          derekshaffer@quinnemanuel.com
                          williamburck@quinnemanuel.com
                          jonathancooper@quinnemanuel.com

                          *Appearing *pro hac vice*

                          *Attorneys for Plaintiffs Norwegian Cruise Line Holdings
                          Ltd., NCL (Bahamas) Ltd., Seven Seas Cruises S. de R.L.,
                          and Oceania Cruises S. de R.L.*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 30th day of July, 2021, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.   I also certify that the foregoing is being served this day on all counsel of record in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel who are not authorized to receive Notice of Electronic Filing.

By: *<u>/s/ John F. O'Sullivan</u>*
John F. O'Sullivan
Fla. Bar No. 143154
johnosullivan@quinnemanuel.com