## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| **NORWEGIAN CRUISE LINE** ) <br> **HOLDINGS, LTD.**, a Bermuda Company; ) <br> **NCL (BAHAMAS) LTD.**, d/b/a ) <br> NORWEGIAN CRUISE LINE, a Bermuda ) <br> Company; **SEVEN SEAS CRUISES**, a ) <br> Panama Limited Liability Company; ) <br> **OCEANIA CRUISES S. DE R.L.**, d/b/a ) <br> OCEANIA CRUISES, a Panama Limited ) <br> Liability Company, ) <br>   ) <br>         Plaintiffs, ) <br>   ) <br>   v.   ) <br>   ) <br> **SCOTT RIVKEES, M.D.**, State Surgeon ) <br> General and Head of the Florida Department ) <br> of Health, in his official capacity, ) <br>   ) <br>         Defendant. ) <br> _____ ) | Case No.: 1:21-cv-22492 |

## DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT FOR DECLARATORY RELIEF AND PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF

## <u>TABLE OF CONTENTS</u>

<u>**Page**</u>

TABLE OF AUTHORITIES ................................................................................ ii

Introduction................................................................................................1

Background .................................................................................................2

Argument ...................................................................................................5

    I.    The Statute is Not Preempted by Federal Law. ....................................5

        A.    Assuming the CSO Is Valid, Neither It, the Technical Instructions,
            Nor the Operations Manual Has a Preemptive Effect...........................6

        B.    The CSO Is Itself Invalid and Cannot Preempt the Statute. ..................8

            i.    The CSO Exceeds the CDC's Statutory Authority. .....................8

            ii.    The CSO Exceeds the CDC's Regulatory Authority. ..............10

            iii.    The CSO Is Arbitrary and Capricious........................................11

            iv.    The CSO Required Notice and Comment....................................12

        C.    In Any Event, The CSO Is Enjoined and Cannot Preempt the Statute.................13

    II.    The Statute Does Not Violate the First Amendment. ........................13

    III.    The Statute Does Not Violate the Dormant Commerce Clause........................16

    IV.    The Statute Does Not Violate Norwegian's Substantive Due Process Rights.................17

Conclusion .................................................................................................20

## TABLE OF AUTHORITIES

**Cases**                                                                                                    **Page**

*Ala. Ass'n of Realtors v. HHS*, No. 20-cv-3377, 2021 WL 1779282 (D.D.C. May 5, 2021)..........9

*Ala. Ass'n of Realtors v. HHS*, 141 S. Ct. 2320 (2021) ..................................................................10

*Am. Fed'n of Gov't Emps., AFL-CIO v. Block*, 655 F.2d 1153 (D.C. Cir. 1981).........................12

*Am. Fin. Servs. Ass'n v. FTC*, 767 F.2d 957 (D.C. Cir. 1985) ....................................................10

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009).........................................................................................5

*Auer v. Robbins*, 519 U.S. 452 (1997) ...........................................................................................8

*Azar v. Allina Health Servs.*, 139 S. Ct. 1804 (2019) ...............................................................6, 12

*Bank of Jackson Cnty. v. Cherry*, 980 F.2d 1362 (11th Cir. 1993)...............................................19

*Baynes v. ALLTEL Wireless of Ala., Inc.*, 322 F. Supp. 2d 1307 (M.D. Ala. 2004).......................4

*Bolger v. Youngs Drug Prods. Corp.*, 463 U.S. 60 (1983) ...........................................................15

*Brock v. Cathedral Bluffs Shale Oil Co.*, 796 F.2d 533 (D.C. Cir. 1986) ......................................7

*Brown v. Sec'y, U.S. Dep't of Health & Human Servs.*,
   No. 20-14210, 2021 WL 2944379 (11th Cir. July 14, 2021)....................................................9

*Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.*, 447 U.S. 557 (1980)..........15, 16

*Circuit City Stores, Inc. v. Adams*, 532 U.S. 105 (2001) ...............................................................9

*City of Arlington v. FCC*, 569 U.S. 290 (2013) ..............................................................................8

*City of Holyoke Gas & Elec. Dep't v. FERC*, 954 F.2d 740 (D.C. Cir. 1992) ...............................7

*Cnty. of Butler v. Wolf*, 486 F. Supp.3d 883 (W.D. Pa. 2020).......................................................19

*Corley v. United States*, 556 U.S. 303 (2009)...............................................................................10

*CSX Transp., Inc. v. Easterwood*, 507 U.S. 658 (1993) .................................................................5

*Dana's R.R. Supply v. Att'y Gen., Fla.*, 807 F.3d 1235 (11th Cir. 2015) .....................................14

*DeShaney v. Winnebago Cnty. Dept. of Soc. Servs.*, 489 U.S. 189 (1989)....................................17

*Doe v. Moore*, 410 F.3d 1337 (11th Cir. 2005) ............................................................................18

*FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307 (1993) ....................................................................14

*Fellner v. Tri-Union Seafoods, L.L.C.*, 539 F.3d 237 (3d Cir. 2008) .............................................7

*Florida v. Becerra*,
   No. 8:21-cv-839, 2021 WL 2514138 (M.D. Fla. June 18, 2021) ....................................*passim*

*Fresenius Med. Care Holdings, Inc. v. Tucker*, 704 F.3d 935 (11th Cir. 2013)............................18

*Ga. Elec. Life Safety & Sys. Ass'n, Inc. v. City of Sandy Springs*, Ga.
   965 F.3d 1270 (11th Cir. 2020) ..........................................................................................5, 19

*Geier v. Am. Honda Motor Co., Inc.*, 529 U.S. 861 (2000)............................................................8

*Glickman v. Wileman Bros. & Elliott, Inc.*, 521 U.S. 457 (1997) .................................................14

*Harris v. Ivax Corp.*, 182 F.3d 799 (11th Cir. 1999)....................................................................19

*Indus. Union Dep't, AFL-CIO v. Am. Petroleum Inst.*, 448 U.S. 607 (1980)................................10

*Island Silver & Spice, Inc. v. Islamorada*, 542 F.3d 844 (11th Cir. 2008) ...................................16

*Jones v. United States*, 529 U.S. 848 (2000) .................................................................................10

*Katz v. United States*, 389 U.S. 347 (1967) ............................................................................16, 17

*Kollett v. Harris*, 619 F.2d 134 (1st Cir. 1980)............................................................................12

*Locke v. Shore*, 634 F.3d 1185 (11th Cir. 2011) ..........................................................................14

*Mack Trucks, Inc. v. EPA*, 682 F.3d 87 (D.C. Cir. 2012) .............................................................12

*Medtronic, Inc. v. Lohr*, 518 U.S. 470 (1996) ...........................................................................5, 7

*Meyer v. Nebraska*, 262 U.S. 390 (1923) .....................................................................................19

*Mobil Oil Corp. v. DOE*, 610 F.2d 796 (Temp. Emer. Ct. App. 1979)........................................12

*Murphy v. Dulay*, 768 F.3d 1360 (11th Cir. 2014) ...................................................................5, 6

*Nat'l Advertising Co. v. City of Miami*, 402 F.3d 1335 (11th Cir. 2005) .....................................13

*Ohralik v. Ohio State Bar Ass'n*, 436 U.S. 447 (1978)................................................................14

*Oneok, Inc. v. Learjet, Inc.*, 575 U.S. 373 (2015)....................................................................5, 13

*P.R. Maritime Shipping Authority v. Federal Maritime Commission*,
678 F.2d 327 (D.C. Cir. 1982) ....................................................................................................7

*Rail Reorganization Act Cases*, 419 U.S. 102 (1974)..................................................................13

*Reed v. Town of Gilbert*, 576 U.S. 155 (2015) ............................................................................16

*Regeneron Pharm., Inc. v. HHS*,
No. 20-cv-10488, 2020 WL 7778037 (S.D.N.Y. Dec. 30, 2020) ............................................12

*Roberts v. U.S. Jaycees*, 468 U.S. 609 (1984) ......................................................................16, 17

*Rumsfeld v. FAIR, Inc.*, 547 U.S. 47 (2006) ..........................................................................14, 15

*Silverstein v. Gwinnett Hosp. Auth.*, 861 F.2d 1560 (11th Cir. 1988) .........................................19

*Skyworks, Ltd. v. CDC*, No. 20-cv-2407, 2021 WL 911720 (N.D. Ohio Mar. 10, 2021) ..............9

*South Dakota v. Wayfair, Inc.*, 138 S. Ct. 2080 (2018) ...............................................................16

*Thomas v. New York*, 802 F.2d 1443 (D.C. Cir. 1986)...................................................................6

*Tiger Lily, LLC v. HUD*, 992 F.3d 518 (6th Cir. 2021) ..................................................................9

*Tiger Lily, LLC v. HUD*, No. 21-5256, 2021 WL 3121373 (6th Cir. July 23, 2021) ...............9, 10

*Truax v. Raich*, 239 U.S. 33 (1915) .............................................................................................19

*U.S. ex rel. Osheroff v. Humana Inc.*, 776 F.3d 805 (11th Cir. 2015)............................................8

*United States v. Carolene Prods. Co.*, 304 U.S. 144 (1938) ........................................................14

*Util. Air Regul. Grp. v. EPA*, 573 U.S. 302 (2014)..............................................................9

*Wabash Valley Power v. Rural Electrification Admin.*, 903 F.2d 445 (7th Cir. 1990) ..............6, 7

*Waddell v. Hendry Cnty. Sheriff's Office*, 329 F.3d 1300 (11th Cir. 2003) ..................................18

*Waldron v. Spicher*, 954 F.3d 1297 (11th Cir. 2020) ........................................................18

*Warshauer v. Solis*, 577 F.3d 1330 (11th Cir. 2009) ....................................................6, 12

*Washington v. Glucksberg*, 521 U.S. 702 (1997) ........................................................17, 18

*White v. Lemacks*, 183 F.3d 1253 (11th Cir. 1999) ..........................................................18

*Williamson v. Lee Optical of Okla., Inc.*, 348 U.S. 483 (1955) ............................................14

*Williamson v. Mazda Motor of Am., Inc.*, 562 U.S. 323 (2011) ..........................................7, 8

*Wollschlaeger v. Governor*, 848 F.3d 1293 (11th Cir. 2017)................................................15

*Wyeth v. Levine*, 555 U.S. 555 (2009) ................................................................................5

**<u>Constitutional and Legislative Materials</u>**

U.S. CONST. art. 1, § 8, cl. 3 ................................................................................16

5 U.S.C.

    § 551(4)..............................................................................................6, 12
    § 553(b)(B)............................................................................................12
    § 706(2)(A) ............................................................................................7
    § 804(2)................................................................................................9

42 U.S.C.

    § 264(a)..............................................................................................8, 9
    § 264(b)................................................................................................10
    § 264(e)..................................................................................................5
    § 265....................................................................................................10
    § 266....................................................................................................10

42 C.F.R.

    § 70.2..............................................................................................10, 11
    § 71.31(a)................................................................................................11
    § 71.31(b)..........................................................................................10, 11
    § 71.32(b)..........................................................................................10, 11
    § 71.41..................................................................................................11
    § 71.42..................................................................................................11

85 Fed. Reg.

    44,083..................................................................................................12
    70,153............................................................................................*passim*

Fla. Stat.

    § 381.00316......................................................................................1, 2, 14

§ 381.00316(4) ..................................................................................................................2

**<u>Other Authorities</u>**

Fed. R. Civ. P. 201(b)(2) ...................................................................................................4

*House Session*, at 2:26:25–2:27:00, FLA. HOUSE OF REP. (Apr. 28, 2021),
    https://bit.ly/3xSFNRq ..............................................................................................4

Order, *Florida v. Sec'y Dep't of Health & Human Servs.*,
    No. 21-12243 (11th Cir. July 17, 2021)...................................................................3

Order*, Florida v. Sec'y Dep't of Health & Human Servs.*,
    No. 21-12243 (11th Cir. July 23, 2021)...............................................................3, 13

*Senate Session*, at 6:18:20–6:19:18, FLA. SENATE (Apr. 29, 2021),
    https://bit.ly/3xSYLaH ..............................................................................................4

Defendant hereby respectfully moves to dismiss the Complaint under FED. R. CIV. P. 12(b)(1) and (b)(6) for the reasons set forth below.

**Introduction**

Over the last year and a half, as the country has coped with and responded to the COVID-19 pandemic, the State of Florida has acted to ensure that Floridians are protected from the virus as well as the intrusions into personal liberties that have followed it. Exercising its sovereign authority through its traditional police power of safeguarding public health, safety, and the economic well-being of its citizens, the Florida Governor and Legislature have determined that businesses in the State should be prohibited from denying service to customers who decline to provide documentation certifying COVID-19 vaccination—so-called "vaccination passports"—or post-COVID-19 recovery. In issuing an executive order promoting this policy, Governor DeSantis explained that he was adamantly opposed to creating "two classes of citizens based on vaccination" status and personal health decisions, but that he continued to support businesses' ability to "institut[e] COVID-19 screening protocols in accordance with state and federal law to protect public health." Fl. Exec. Order No. 21-81 (Apr. 2, 2021) ("Exec. Order"), Doc. 16-1 at 3–4. To further this purpose, the Florida legislature passed Fla. Stat. § 381.00316 ("the Statute"), which codifies the prohibition on discriminating based on vaccination status.

Plaintiffs Norwegian Cruise Line Holdings Ltd., NCL (Bahamas) Ltd., Seven Seas Cruises, and Oceania Cruises S. de R.L. (together, "Norwegian") have challenged the Statute on several grounds, seeking to invalidate it so that they may discriminate in exactly the way Florida prohibited. Norwegian first alleges that the Statute is invalid because it is preempted by the Centers for Disease Control and Prevention's ("CDC") Conditional Sailing Order[1] ("CSO") and subsequent technical and substantive specifications purporting to interpret or implement the CSO. The Statute is not preempted, however, for several reasons. For one, the CDC currently is enjoined from enforcing the CSO and documents issued to implement it in Florida. Furthermore, the CDC guidance that Norwegian alleges conflicts with the Statute are not the CSO itself, but rather interpretations or implementations of the CSO that have not been validly issued, lack the force of law, do not actually conflict with the Statute, and have been interpreted by the CDC itself not to have preemptive effect. And even if all that were not the case, those interpretations and

---

[1] Framework for Conditional Sailing and Initial Phase COVID-19 Testing Requirements for Protection of Crew, 85 Fed. Reg. 70,153 (Nov. 4, 2020).

1

implementations of the CSO are invalid because the CSO itself is invalid. It is a substantive rule that was issued beyond all bounds of the CDC's statutory or regulatory authority, it is arbitrary and capricious, and it was issued without notice and comment despite a lack of good cause to justify that failure. For any *one* of the many reasons laid out below, the CDC's regulations cannot and do not preempt the Statute.

Norwegian's other claims are no more effective. The Statute does not violate Norwegian's First Amendment rights—in fact, it does not restrict speech at all. Under the Statute, Norwegian may ask all its customers to provide proof of vaccination and its customers are equally free to provide it. The Statute simply forbids Norwegian from *refusing to serve* anyone who does not wish to share his or her medical records with it. Nor does the Statute violate the dormant Commerce Clause. It applies only to Norwegian's business operations in Florida, it does not reach beyond Florida's borders to regulate conduct in other jurisdictions, and it does not excessively burden the free flow of commerce between states and nations. As for the substantive due process rights that Norwegian alleges the Statute violates, they either do not exist or do not subject the Statute to anything more than rational basis review—which it easily satisfies.

This Court should dismiss Norwegian's Complaint with prejudice.

## Background

On April 2, 2021, Governor DeSantis issued an executive order prohibiting businesses in Florida from "requiring patrons or customers to provide any documentation certifying COVID-19 vaccination or post-transmission recovery to gain access to, entry upon, or service from the business" or else be ineligible for grants or contracts funded through state revenue. Exec. Order at 3; Complaint for Declaratory Relief and Preliminary and Permanent Injunctive Relief, Doc. 1 ("Compl.") ¶ 58. On May 3, 2021, Governor DeSantis signed the Statute which states: "A business entity, as defined in s. 768.38 to include any business operating in this state, may not require patrons or customers to provide any documentation certifying COVID-19 vaccination or post-infection recovery to gain access to, entry upon, or service from the business operations in this state." Fla. Stat. § 381.00316; Compl. ¶ 59. Violations of the Statute are punished by a fine "not to exceed $5,000 per violation." Fla. Stat. § 381.00316(4); Compl. ¶ 57.

Norwegian has sued to block enforcement of the Statute because it desires to operate cruises out of Florida that require every passenger to prove they have been vaccinated to participate. Compl. ¶ 74. Norwegian has made this decision in the context of significant regulatory

changes that have taken place in the cruise industry in the last year. Following the outbreak of the COVID-19 pandemic, Norwegian voluntarily suspended operations on March 13, 2020. Compl. ¶ 21. The very next day, the CDC issued a "No Sail Order and Suspension of Further Embarkation" ("No Sail Order"), which essentially shut down the industry. *Id.* ¶¶ 22–23. On October 30, 2020, the CDC issued the CSO. *Id.* ¶ 24. The CSO required cruise operators to complete four phases of preparation before a vessel could sail again: (1) establishment of laboratory testing of crew onboard cruise ships in U.S. waters; (2) simulated voyages designed to test a cruise ship operator's ability to mitigate COVID-19; (3) a certification process; and (4) a return to passenger voyages in a manner that mitigates the risk of COVID-19. CSO, 85 Fed. Reg. at 70,157; Compl. ¶¶ 25–34. Following complaints by members of the cruise industry, the CDC issued a series of guidance documents, letters, and technical instructions that purport to interpret and implement the CSO. Compl. ¶ 37. On April 28, 2021, the CDC issued a "Dear Colleague Letter" that, among other things, allowed cruise ships to avoid the requirement of a simulated voyage if a cruise ship operator would attest that 98% of the ship's crew and 95% of passengers would be verified to be fully vaccinated prior to sailing. Compl. ¶¶ 41–42. On May 14, 2021, the CDC Technical Instructions altering this framework to require only 95% of crew be vaccinated. *Id.* ¶ 43. And on May 26, 2021, the CDC issued the "Operations Manual" which added discretionary options for ships with vaccinated passengers, such as allowing fully vaccinated passengers not to wear masks during outdoor activities. Compl. ¶¶ 44–46.

In response to the CSO and its burdens on the cruise industry, Florida sued the CDC on April 8, 2021, in the U.S. District Court for the Middle District of Florida. *See Florida v. Becerra*, --- F. Supp. 3d ----, No. 8:21-cv-839, 2021 WL 2514138 (M.D. Fla. June 18, 2021); Compl. ¶ 49. Florida argued that the CDC exceeded its statutory and regulatory authority, acted arbitrarily and capriciously, denied the required opportunity for notice and comment without good cause, and exercised an unconstitutional delegation of legislative authority. *Id.* at *1; Compl. ¶ 49. Florida moved for a preliminary injunction, which the court granted, concluding that Florida was likely to prevail on the merits of its claims. *Id.* at *51; Compl. ¶¶ 50–51. On July 17, 2021, the day before the injunction was set to go into effect, a divided panel of the Eleventh Circuit initially stayed the injunction pending appeal, Order, *Florida v. Sec'y Dep't of Health & Human Servs.*, No. 21-12243 (11th Cir. July 17, 2021). On July 23, 2021, however, the panel *sua sponte* vacated its July 17 Order and denied the CDC's motion for a stay pending appeal. Order*, Florida v. Sec'y Dep't of*

*Health & Human Servs.*, No. 21-12243 (11th Cir. July 23, 2021). Consequently, the CDC currently is enjoined "from enforcing against a cruise ship arriving in, within, or departing from a port in Florida the conditional sailing order and the later measures (technical guidelines, manuals, and the like)." *Florida*, 2021 WL 2514138, at *51.

The enjoined CDC documents offer cruise lines two paths to embarkation—they may follow the four phases outlined in the CSO or they may meet the vaccination requirements described in the subsequent guidance documents, but they are not mandated to require vaccination from either crew or passengers to sail. Of course, neither of these paths' requirements currently stand as an obstacle to Norwegian's ability to operate in Florida, as the CSO and all subsequent agency guidance promulgated to restrict the cruise industries' operations in the United States are currently enjoined in Florida.

Standing against this backdrop, the Statute represents Florida's considered judgment that no companies should condition service on documentation of a customer's vaccination status. During debate on the measure, legislators expressed concern that businesses would use vaccination status to discriminate "based upon arbitrary classifications," *see House Session*, at 2:26:25–2:27:00, FLA. HOUSE OF REP. (Apr. 28, 2021), https://bit.ly/3xSFNRq (statement of Rep. Beltran); and sought to protect "the rights of a material portion of our minority population who remains vaccine hesitant," *id.* at 2:28:10–2:31:03 (statement of Rep. Leek). Others were concerned with preventing a situation "where you have to provide a piece of documentation . . . in order to go to the grocery store," *Senate Session*, at 6:18:20–6:19:18, FLA. SENATE (Apr. 29, 2021), https://bit.ly/3xSYLaH (statement of Sen. Burgess).[2]

On July 13, 2021, more than two months after the Statute was enacted and almost two weeks after it took effect on July 1, 2021, Norwegian filed this lawsuit, alleging that the Statute was unenforceable because it (1) is preempted, (2) violates the Norwegian's First Amendment rights, (3) violates the dormant Commerce Clause, or (4) violates Norwegian's substantive due

---

[2] The Court can consider this legislative history on Defendant's motion to dismiss. FED. R. CIV. P. 201(b)(2); *see also Baynes v. ALLTEL Wireless of Ala., Inc.*, 322 F. Supp. 2d 1307, 1310 n.4 (M.D. Ala. 2004) (relying on, among other things "published interpretations of the statutory provisions by the Federal Trade Commission and Board of Governors of the Federal Reserve System, treatises, and legislative history contained within the Congressional Record" in ruling on motion to dismiss).

process rights. Because none of these rationales obtain, Defendant now moves to dismiss the Complaint.

**Argument**

In reviewing a motion to dismiss, the Court must "accept[] the factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff." *Ga. Elec. Life Safety & Sys. Ass'n, Inc. v. City of Sandy Springs, Ga.*, 965 F.3d 1270, 1275 (11th Cir. 2020) (quotation omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

**I.    The Statute is Not Preempted by Federal Law.**

Norwegian first claims that the Statute is preempted by the CSO, Technical Instructions, and Operations Manual because, by preventing Norwegian from requiring its passengers to provide documentation certifying COVID-19 vaccination, the Statute conflicts with those portions of those materials that provide Norwegian the option of sailing if it can verify that 95% of its passengers are vaccinated. Compl. ¶¶ 123–25.

The CDC bases its CSO on 42 U.S.C. § 264 and its implementing regulations. CSO, 85 Fed. Reg. at 70,158. But that statute expressly disclaims preemption of state law "except to the extent that such a provision conflicts with an exercise of Federal authority under this section." 42 U.S.C. § 264(e). As such, Norwegian's preemption claim must fail unless it shows that the Statute conflicts with the CDC's guidance. *See CSX Transp., Inc. v. Easterwood*, 507 U.S. 658, 664 (1993). "Conflict pre-emption exists where compliance with both state and federal law is impossible, or where the state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Oneok, Inc. v. Learjet, Inc.*, 575 U.S. 373, 377 (2015) (internal quotation marks omitted).[3] Furthermore, because of the "historic primacy of state regulations of matters of health and safety," the Court must apply a presumption against preemption. *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996). If the CDC's guidance "can be read sensibly not to preempt state law, the presumption controls." *Murphy v. Dulay*, 768 F.3d 1360,

---

[3] Several Justices have questioned the continued validity of "obstacle" preemption, *see, e.g.*, *Wyeth v. Levine*, 555 U.S. 555, 583 (2009) (Thomas, J., concurring), and we reserve the right to contest its validity before the Supreme Court.

5

1367–68 (11th Cir. 2014).  For the reasons discussed below, Norwegian has not alleged a valid preemption claim.

### A. Assuming the CSO Is Valid, Neither It, the Technical Instructions, Nor the Operations Manual Has a Preemptive Effect.

Even assuming that the CSO is lawful—which, as explained below, it is not—neither the Technical Instructions nor the Operations Manual preempt Florida law.

*First*, Norwegian's claim for preemption is predicated on it having a right under federal law to cruise provided it can show 95% of passengers and crew are vaccinated—but the CSO did not provide for that option. Only the Dear Colleague Letter and the Technical Instructions did. And the CDC did not have the authority under the CSO to substitute that option in place of a simulated voyage in those subsequent guidance documents. The CSO states that the CDC "may issue additional requirements through technical instructions or orders relating to a cruise ship operator's processes and procedures *for conducting and evaluating a simulated voyage* prior to applying for a COVID-19 Conditional Sailing Certificate." CSO, 85 Fed. Reg. at 70,160 (emphasis added). A vaccination option that displaces the simulated voyage option is not a process or procedure for conducting or evaluating a simulated voyage. The CDC was thus not acting pursuant to its own CSO when it authorized that option, and it is therefore unlawful.

*Second*, to the extent the Dear Colleague Letter and Technical Instructions "create[ ] new law, rights, or duties," *Warshauer v. Solis*, 577 F.3d 1330, 1337 (11th Cir. 2009)—as Norwegian insists that they do for cruise lines that verify 95% customer vaccination, *see* Compl. ¶¶ 42–43— they are substantive rules that required notice-and-comment rulemaking, *see* 5 U.S.C. § 551(4); *Azar v. Allina Health Servs.*, 139 S. Ct. 1804, 1812 (2019). Because the vaccination alternative in those documents purports to create a *new* way for cruise lines to clear vessels to embark, it constitutes unlawful agency action that would have to be set aside as invalid under the APA on account of the agency's failure to engage in notice and comment rulemaking.

*Third*, even if they were somehow validly issued under the APA, the lack of both notice and comment and of publication in the Federal Register would still mean that the Technical Instructions and the Operations Manual would lack the force of federal law and could not preempt state law. *See, e.g.*, *Thomas v. New York*, 802 F.2d 1443 (D.C. Cir. 1986) (Scalia, J.) (holding that a letter from the Administrator of the EPA did not have the force of law because it was not issued after notice and comment and was not published in the Federal Register); *Wabash Valley Power v. Rural Electrification Admin.*, 903 F.2d 445, 453-54 (7th Cir. 1990) (agency letter had no

6

preemptive effect where "[t]here was no notice, no opportunity for comment, no statement of basis, no administrative record, [and] no publication in the Federal Register); *Brock v. Cathedral Bluffs Shale Oil Co.*, 796 F.2d 533, 538 (D.C. Cir. 1986) (Scalia, J.) (rule not published in the Federal Register is not a regulation); *Fellner v. Tri-Union Seafoods, L.L.C.*, 539 F.3d 237, 245 (3d Cir. 2008).

*Fourth*, the CDC's setting of the percentage threshold of vaccinated crew and passengers necessary to bypass a simulated voyage and relax other requirements—and even the provision of that option at all—was arbitrary and capricious in violation of the APA. 5 U.S.C. § 706(2)(A). In the April 28, 2021 Dear Colleague Letter, the CDC set the thresholds at 98% of crew and 95% of passengers vaccinated. Compl. ¶ 42. But in the May 14, 2021 Technical Instructions, the threshold for crew had changed to 95%. *Id.* ¶ 43. In neither document did the CDC explain how it determined those thresholds, why it was allowing this specific option in lieu of conducting a simulated voyage, nor "why the vaccination rate is so much higher than the rate it deem[ed] sufficient [at that time] to obtain so-called 'herd immunity.'" *Florida*, 2021 WL 2514138, at *46 n.49. Nor did the CDC explain how, in the Operations Manual, it determined to relax certain on-board requirements for ships meeting the vaccine thresholds. *See City of Holyoke Gas & Elec. Dep't v. FERC*, 954 F.2d 740, 743 (D.C. Cir. 1992); *P.R. Maritime Shipping Authority v. Federal Maritime Commission*, 678 F.2d 327, 336 (D.C. Cir. 1982).

*Fifth*, Norwegian's claim for preemption focuses on a single part of the CSO—the vaccination scheme. *See* Compl. ¶ 123 (The Statute "makes it impossible or inordinately difficult for [Norwegian] to satisfy the option created by CDC of resuming sailing in U.S. waters if [Norwegian] can verify that 95% of its crew and 95% of its passengers are fully vaccinated prior to sailing."). But preemption analysis requires the Court to consider the regulatory framework of the CSO "as a whole." *See Medtronic*, 518 U.S. at 485–86. There is no indication that the CDC's full purposes can be met only if the 95% vaccination option detailed in the Technical Instructions and Operations Manual remains a live one for cruise lines, or that it is even important to the CDC that cruise lines have this option. "[T]he mere fact that an agency regulation allows [regulated entities] a choice between options is insufficient to justify implied pre-emption; courts should only find pre-emption where evidence exists that an agency has a regulatory objective . . . whose achievement depends on [regulated entities] having a choice between options." *Williamson v. Mazda Motor of Am., Inc.*, 562 U.S. 323, 337–38 (Sotomayor, J., concurring); *see also id.* at 332–

35 (maj. op.). As Norwegian alleges in the Complaint, the CDC did not include the 95% vaccination option in the CSO, and in fact only issued the subsequent guidance containing that option after "several uncertain and concerned cruise companies and public officials raised complaints" about the CSO. Compl. ¶ 37. That does not suggest the CDC was concerned about "maintain[ing] [cruise operator] choice in order to further significant regulatory objectives." *Williamson*, 562 U.S. at 336. As such, although the Statute "may restrict the [cruise operator's] choice, it does not 'stand as an obstacle to the accomplishment . . . of the full purpose and objectives' of federal law." *Id.* (quoting *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941)).

*Sixth*, the CDC itself, in proceedings before the Middle District of Florida, disclaimed that the vaccination option preempts Florida's law, *Florida*, No. 8:21-cv-839, Doc. 47, Transcript of Hearing re Plaintiff's Motion for Preliminary Injunction ("*Florida* Trans.") at 108:18–20, 109:6–7, 110:3–5 (May 12, 2021), a fact the Court should weigh in its analysis, *see Auer v. Robbins*, 519 U.S. 452, 461 (1997); *Geier v. Am. Honda Motor Co., Inc.*, 529 U.S. 861, 883 (2000). [4]

For any *one* of these reasons, the Court should dismiss with prejudice Norwegian's claim for a declaration that the statute is preempted by federal law.

**B.  The CSO Is Itself Invalid and Cannot Preempt the Statute.**

Norwegian's preemption argument should also be dismissed because the CSO *itself* is invalid, meaning that the regulatory actions the CDC has taken to *implement* that order—and on which Norwegian bases its claim for preemption—likewise are invalid. The Court need not reach this issue if it determines Norwegian's preemption claim fails for the reasons already given, but Norwegian's claim cannot survive if the CSO is invalid.

**i.  The CSO Exceeds the CDC's Statutory Authority.**

As explained above, the CDC bases its CSO on 42 U.S.C. § 264 and its implementing regulations. CSO, 85 Fed. Reg. at 70,158. Because neither that statute nor the regulations give the CDC the power it claims, its actions violate the APA. *See City of Arlington v. FCC*, 569 U.S. 290, 298 (2013).

The CSO is not authorized by 42 U.S.C. § 264(a). The first sentence of Section 264(a)

---

[4] Online court dockets and their contents are appropriate subjects for judicial notice when considering a motion to dismiss. *See U.S. ex rel. Osheroff v. Humana Inc.*, 776 F.3d 805, n.4 (11th Cir. 2015) ("Courts may take judicial notice of publicly filed documents, such as those in state court litigation, at the Rule 12(b)(6) stage.").

authorizes the CDC to "make and enforce such regulations" as "necessary to prevent the introduction, transmission, or spread of communicable diseases." 42 U.S.C. § 264(a). The second sentence provides examples of the measures that the statute authorizes, clarifying that the statute authorizes measures like "inspection, fumigation, [and] disinfection." *Id.* This second sentence reflects that the CDC's authority is limited to measures that resemble or remain akin to the ones expressly listed in the statute. *See Brown v. Sec'y, U.S. Dep't of Health & Human Servs.*, No. 20-14210, 2021 WL 2944379, at *2 (11th Cir. July 14, 2021); *Tiger Lily, LLC v. HUD*, No. 21-5256, 2021 WL 3121373, *2–3 (6th Cir. July 23, 2021) ("*Tiger Lily II*"); *Tiger Lily, LLC v. HUD*, 992 F.3d 518, 522–24 (6th Cir. 2021); *Florida*, 2021 WL 2514138, at *19–21; *Ala. Ass'n of Realtors v. HHS*, No. 20-cv-3377, 2021 WL 1779282, at *5 (D.D.C. May 5, 2021); *Skyworks, Ltd. v. CDC*, No. 20-cv-2407, 2021 WL 911720, at *9–10 (N.D. Ohio Mar. 10, 2021). Thus, the "second sentence . . . lists illustrative examples of the types of actions the CDC may take" and against whom or what the CDC may take those actions. *Skyworks*, 2021 WL 911720, at *9. And those examples limit the scope of the CDC's authority. *Id.*

The scope of the "other measures," 42 U.S.C. § 264(a), identified by the second sentence is "controlled and defined by reference to the enumerated categories . . . before it," *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 115 (2001), because "where general words follow specific words in a statutory enumeration, the general words are construed to embrace only objects similar in nature to those objects enumerated by the preceding specific words," *id.* at 114–15. These "other measures" thus are limited to measures like "inspection, fumigation, disinfection, sanitation, [and] pest extermination," applied to "animals or articles" that are "so infected" that they are "sources of dangerous infections to human beings." § 264(a). The CDC is thus authorized to take only "other measures" that are "similar in nature" to inspecting and disinfecting animals and articles. This reading is reinforced by at least five additional considerations.

*First*, the unbridled power claimed by the CDC would require clear authorization from Congress, and the agency has identified none. *See Util. Air Regul. Grp. v. EPA*, 573 U.S. 302, 324 (2014); *Tiger Lily II*, 2021 WL 3121373, at *3. The CDC acknowledges that if the CSO is a rule—which it is—it is a major rule under the Congressional Review Act, CSO, 85 Fed. Reg. at 70,158, because it is likely to affect the economy by more than $100 million, 5 U.S.C. § 804(2).

*Second*, reading the statute otherwise (to give the agency power to do anything it deems "necessary" for disease prevention) renders the second sentence (which refers to narrower,

specified powers) superfluous. *See Corley v. United States*, 556 U.S. 303, 314 (2009); *Tiger Lily II*, 2021 WL 3121373, at *3. The many other provisions that grant the agency specific powers likewise would be surplusage. *See, e.g.*, 42 U.S.C. §§ 264(b), 265, 266.

*Third*, such a reading would raise serious federalism and non-delegation concerns and should therefore be rejected. *See Indus. Union Dep't, AFL-CIO v. Am. Petroleum Inst.*, 448 U.S. 607, 646 (1980) (plurality op.); *Tiger Lily II*, 2021 WL 3121373, at *4–5. The only limits that the CDC identified in the *Florida v. Becerra* litigation were the requirement to determine something is "necessary" and the prospect of APA review. *Florida* Trans. at 83:9–85:5, 86:15–87:15. Courts must avoid interpretations that raise significant "constitutional questions." *Jones v. United States*, 529 U.S. 848, 857 (2000).

*Fourth*, the federal government's traditional authority to combat disease historically included measures like "inspection, sanitation, and isolation" that were "distinctly limited in time, scope, and subject matter." *See Florida*, 2021 WL 2514138, at *15. Defendant's interpretation of the statute aligns with that tradition.

*Finally*, in *Alabama Association of Realtors v. HHS*, 141 S. Ct. 2320 (2021), four justices voted to vacate a stay premised on the same interpretation of § 264(a) that the CDC has asserted justifies the CSO. A fifth Justice, Justice Kavanaugh, "agree[d]" that "the [CDC] exceeded its existing statutory authority by issuing a nationwide eviction moratorium," but found it unnecessary to vacate the stay because the measure was set to expire "in only a few weeks." *Id.* at 2320–21. Here, timing cuts the other way because the CSO will not expire until at least November 2021.

Under this proper interpretation of § 264(a), the CDC exceeded its statutory authority by issuing the CSO, and thus, the Order and its subsequent elaborations do not preempt Florida's law.

### ii.    The CSO Exceeds the CDC's Regulatory Authority.

Beyond § 264, the Order relies on 42 C.F.R. §§ 70.2, 71.31(b), and 71.32(b). CSO, 85 Fed. Reg. at 70,158. But if the CDC lacks the statutory authority under § 264 for the Order—which it does—regulations implementing § 264 cannot grant the CDC more authority. *See, e.g.*, *Am. Fin. Servs. Ass'n v. FTC*, 767 F.2d 957, 965 (D.C. Cir. 1985). Further, these regulations fail to move the needle, and § 70.2 provides an independent basis to find the CSO unlawful.

Section 70.2 allows the CDC to exercise its § 264 authority only if it first "determines that the measures taken by" a state "are insufficient to prevent the spread" of a communicable disease "from such State . . . to any other State." 42 C.F.R. § 70.2. The CDC, however, simply claimed

§ 70.2 is per se satisfied because "[c]ruise ships by their very nature travel interstate and internationally." CSO, 85 Fed. Reg. at 70,157. That argument is insufficient. The CDC's regulations required it to consider the adequacy of State measures and it did not do so.

Nor do any of the other regulations the CDC cites authorize the CSO. The CSO is not a "controlled free pratique" under 42 C.F.R. § 71.31(b). The CDC's free pratique power authorizes it only to condition the admission of specific ships that may "arriv[e] at a U.S. port" on completion of "measures outlined in this part"—meaning Part 71. *See* § 71.31(a), (b). It does not authorize the CDC to micromanage the entire cruising industry. As the Middle District recognized, Part 71 authorizes only the types of measures that § 264(a) itself authorizes, like disinfecting cargo, § 71.42, or "disinfestation" of vermin, § 71.41. *Florida*, 2021 WL 2514138, at *25.

Section 71.32(b) similarly allows the CDC to "require detention, disinfection, disinfestation, fumigation, or other related measures" when the CDC "has reason to believe that any arriving carrier or article or thing on board the carrier is or may be infected or contaminated with a communicable disease." As with § 71.31(b), the "detention" must be limited to the time needed to disinfect the ship and complete "other related measures."

### iii.   The CSO Is Arbitrary and Capricious.

The CSO also is arbitrary and capricious. *First*, as explained above, under 42 C.F.R. § 70.2, before trying actions like the ones here, the CDC must first determine that the measures taken by States and their "political subdivisions" (like ports) are insufficient. Even if the CDC *could have* made the determination there, it did not engage in the type of reasoned decision making required by the APA. The CSO made only a blanket determination that every State and political subdivision lacked sufficient measures to prevent the spread of COVID-19, but "says absolutely nothing evaluative about any 'measure taken by health authorities of any State.'" *Florida*, 2021 WL 2514138, at *42. This determination thus "falls far short of conducting a reasoned finding that the measures 'taken by health authorities of any State' are insufficient to prevent contagion." *Id.*

*Second*, the Order imposes vague, shifting guidance carrying criminal penalties. *See* CSO, 85 Fed. Reg. at 70,158. And the CDC may "enforce any of the provisions of th[e] framework through additional orders . . . and issue additional technical instructions as needed." *Id.*; *see also id.* at 70,159, 70,162. By "[i]mposing on the cruise industry exhaustive, indeterminate, inconsistent, and unclear requirements (each of which threatens substantial penalty), the conditional sailing order likely is by definition capricious." *Florida*, 2021 WL 2514138, at *41.

11

### iv.    The CSO Required Notice and Comment.

The CSO is invalid for the additional reason that the CDC unlawfully dispensed with notice-and-comment rulemaking. Substantive rules need to go through notice and comment. *See Azar*, 139 S. Ct. at 1812. The CDC's Order qualifies as a substantive rule—it is an "agency statement of general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy." 5 U.S.C. § 551(4). The CDC cannot "avoid notice and comment simply by mislabeling [its] substantive pronouncements." *Azar*, 139 S. Ct. at 1812. The Order "creates new law, rights, or duties," *Warshauer*, 577 F.3d at 1337.

The CDC, however, failed to conduct proper notice and comment rulemaking. It instead invoked the "good cause" exception to the notice requirement, *see* 5 U.S.C. § 553(b)(B), and the months-old "emergency" of COVID-19, arguing that it would be "impracticable" and "contrary to the public's health, and by extension the public's interest," to go through proper rulemaking procedures, CSO, 85 Fed. Reg. at 70,158. "[A] mere recital of good cause," though, "does not create good cause." *Mobil Oil Corp. v. DOE*, 610 F.2d 796, 803 (Temp. Emer. Ct. App. 1979). Further, the good-cause exception "is to be narrowly construed and only reluctantly countenanced." *Mack Trucks, Inc. v. EPA*, 682 F.3d 87, 93 (D.C. Cir. 2012).

Good cause based on the impracticalities of notice and comment does not exist when the agency has sufficient time to provide notice and comment. *See Kollett v. Harris*, 619 F.2d 134, 145 (1st Cir. 1980); *Regeneron Pharm., Inc. v. HHS*, No. 20-cv-10488, 2020 WL 7778037, at *11–12 (S.D.N.Y. Dec. 30, 2020). The CDC's call for and collection of comments in July of 2020, 85 Fed. Reg. 44,083, before finally issuing the CSO at the end of October (although without directly responding to or attempting to address in any meaningful way the responses it had collected, *see* 85 Fed. Reg. at 70,156), undermines any argument for good cause because it demonstrates that the "CDC had ample time to effect notice and comment." *Florida*, 2021 WL2514138, at *45.

Moreover, the good cause exception to notice and comment is supposed to be temporary— meaning the agency should conduct notice and comment after promulgating the rule, which the CDC has not done in the many months since issuing the CSO. *See Am. Fed'n of Gov't Emps., AFL-CIO v. Block*, 655 F.2d 1153, 1158 (D.C. Cir. 1981).

Finally, the change contemplated by the CSO—going from *no sailing* to *sailing under specified circumstances*—belies any exigent public health reason for foregoing notice and comment. *Florida*, 2021 WL2514138, at *45. It also heightened the need for public comment

given the many competing considerations and tradeoffs implicated. *Id*.

For all these reasons, the CSO is invalid and cannot preempt the Statute, so the Court should dismiss Norwegian's claim for preemption with prejudice.

### C.   In Any Event, The CSO Is Enjoined and Cannot Preempt the Statute.

As explained above, "conflict pre-emption exists where compliance with both state and federal law is impossible, or where the state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Oneok*, 575 U.S. at 377 (internal quotation marks omitted). The Statute cannot make compliance with the CSO impossible and stands as no obstacle to it, because the CSO is enjoined and has no legal effect in Florida. *Florida*, 2021 WL 2514138, at *51; *see* Order, *Florida*, No. 21-12243 (11th Cir. July 23, 2021). Even if the Court rejects *all* the above arguments as to why the CSO and subsequent guidance should not be given preemptive effect, in view of the enjoined status of the CSO, the issue is not ripe for review because the Statute does not present an "immediate danger" of conflict with the CSO. *See Nat'l Advertising Co. v. City of Miami*, 402 F.3d 1335, 1339 (11th Cir. 2005) (Assessing ripeness requires a "determination of (1) the fitness of the issues for judicial decision and (2) the hardship to the parties of withholding court consideration."). Although a preliminary injunction only reflects a "likelihood" of success, it does mean that there is nothing "inevitab[le]" about the operation of the CSO to (allegedly) conflict with the Statute. *Rail Reorganization Act Cases*, 419 U.S. 102, 143 (1974).  As such, Norwegian will suffer no hardship from any alleged conflict between federal and state law if the Court withholds consideration of the claim, and the Court should at least dismiss Norwegian's claim without prejudice to refiling if it becomes ripe at some future date. *Nat'l Advertising*, 402 F.3d at 1341. And if the injunction is made permanent, the dismissal should be with prejudice.

## II.   The Statute Does Not Violate the First Amendment.

Norwegian next alleges that the Statute, as applied, violates its First Amendment rights by "restrict[ing] the transmission of information based on its content, as it expressly prohibits transmission only of documentation 'certifying COVID-19 vaccination or post-infection recovery,' " and distinguishing based on the identity of a speaker or listener because "it prohibits only a 'business entity' from requiring 'patrons or customers' to provide vaccine documentation." Compl. ¶¶ 132–33 (quoting Fla. Stat. § 381.00316(1)). It alleges that these restrictions should be reviewed under strict scrutiny and claims Florida lacks an important interest to justify its

legislation. Compl. ¶¶ 134–35. This claim should be dismissed because Florida's law is an economic regulation that does not impact Norwegian's (or anyone else's) First Amendment rights and is subject only to rational basis review, which it easily satisfies.

Where a law regulates conduct, not speech, it is "subject only to rational-basis review as a mine-run economic regulation." *Dana's R.R. Supply v. Att'y Gen., Fla.*, 807 F.3d 1235, 1241 (11th Cir. 2015). Legislatures are given wide latitude to "balance the advantages and disadvantages" when choosing whether and how to regulate commercial behavior. *Id.* at 1242. Indeed, the Supreme Court has applied a lenient standard to ordinary commercial or regulatory legislation, recognizing the need to defer significantly to legislative judgment. *See, e.g.*, *Glickman v. Wileman Bros. & Elliott, Inc.*, 521 U.S. 457, 475–76 (1997). In such cases, "[i]t is enough that there is an evil at hand for correction, and that it might be thought that the particular legislative measure was a rational way to correct it." *Williamson v. Lee Optical of Okla., Inc.*, 348 U.S. 483, 488 (1955); *United States v. Carolene Prods. Co.*, 304 U.S. 144, 152 (1938). Courts applying rational-basis review have no license to second-guess "the wisdom, fairness, or logic of legislative choices." *FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313 (1993).

Moreover, "it has never been deemed an abridgment of freedom of speech or press to make a course of conduct illegal merely because the conduct was in part initiated, evidenced, or carried out by means of language, either spoken, written, or printed." *Rumsfeld v. FAIR, Inc.*, 547 U.S. 47, 63 (2006); *see also Ohralik v. Ohio State Bar Ass'n*, 436 U.S. 447, 456 (1978); *Locke v. Shore*, 634 F.3d 1185, 1191 (11th Cir. 2011). A legislature, for example, can prohibit racial discrimination in hiring without violating the First Amendment, even though such a prohibition would require an employer to take down a sign reading "White Applicants Only." *FAIR*, 547 U.S. at 63.

There are several reasons why this Court should review Florida's law "under the standard appropriate for the review of economic regulation," not "under a heightened standard appropriate for the review of First Amendment issues." *Glickman*, 521 U.S. at 469. For one, Florida's statute neither forbids nor requires anyone to say anything, to engage in any form of speech, or to endorse any particular point of view, whether ideological or related to the sale of a product. *Cf. id.* at 469–70. The law simply prohibits businesses from *conditioning service* on customers providing "documentation certifying COVID-19 vaccination." Fla. Stat. § 381.00316. Norwegian can still *request* COVID-19 vaccination documentation from its customers, its customers can *voluntarily* provide that documentation, and both parties are free to discuss the topics.

14

The contrast between *Wollschlaeger v. Governor*, 848 F.3d 1293 (11th Cir. 2017) (en banc), and this case is stark. There, the Eleventh Circuit invalidated provisions of Florida law restricting doctors' ability to ask patients about firearm ownership, document firearm ownership in patient medical records, and harass patients about firearm ownership. *Id.* at 1302–02. Here, by contrast, the Statute leaves Norwegian wholly unencumbered in its ability to ask customers whether they are vaccinated, record the answer, and encourage the unvaccinated to be vaccinated. What is more, *Wollschlaeger*'s treatment of the provisions of Florida law more akin to the Statute cuts sharply *against* Norwegian. The Eleventh Circuit made clear that its "ruling does not affect . . . [a] provision allowing patients to decline to answer questions or provide information about firearm ownership"—essentially what the Statute grants Florida consumers with respect to vaccine documentation—and affirmatively held that a provision barring discrimination against gun owners did not even implicate the First Amendment. *See id.* at 1317–18. The Statute is akin to the anti-discrimination provision in *Wollschlaeger*; it merely prohibits Norwegian from discriminating by refusing service to customers who choose not to share medical records with it.  Again, Norwegian can ask, its passengers can answer. All that Norwegian may not do is forbid access to its cruises to passengers who choose not to respond. Florida's law thus "regulates conduct, not speech." *FAIR*, 547 U.S. at 60. The Statute affects what businesses cannot *do*—condition service on vaccination documentation—"not what they may or may not *say*." *Id.*

Even if this Court determines that Florida's law does implicate the First Amendment, it is a regulation on commercial speech subject only to intermediate scrutiny. Commercial speech is "expression related solely to the economic interests of the speaker and its audience." *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.*, 447 U.S. 557, 561 (1980). The "core notion" of commercial speech is "speech which does no more than propose a commercial transaction." *Bolger v. Youngs Drug Prods. Corp.*, 463 U.S. 60, 66 (1983) (internal quotation marks omitted). Here, Norwegian's requiring its passengers to submit COVID-19 vaccination documentation to sail on its cruises is core commercial speech because it is made pursuant to and in furtherance of a commercial transaction, namely, customers purchasing a cruise ticket. Even if Norwegian's "speech" falls outside this core notion, it is nevertheless commercial speech because it is made with "reference to a specific product" and Norwegian "has an economic motivation" for the speech. *Bolger*, 463 U.S. at 66. Norwegian alleges that requiring vaccination documentation would help it to attract customers who desire to cruise with other fully vaccinated customers Compl.

15

¶¶ 70-71; 144. Florida's law should thus be subject, at most, to intermediate scrutiny as a regulation on commercial speech. *See Cent. Hudson*, 447 U.S. at 566.

Florida's law passes any potential level of scrutiny, even strict, which requires the State to prove that the restriction "furthers a compelling interest and is narrowly tailored to achieve that interest." *Reed v. Town of Gilbert*, 576 U.S. 155, 171 (2015) (internal quotation marks omitted). Florida has compelling interests in protecting the medical privacy of its citizens, *see Katz v. United States*, 389 U.S. 347, 350–51 (1967), and in avoiding discrimination through balkanization of the marketplace, *cf. Roberts v. U.S. Jaycees*, 468 U.S. 609, 625–26 (1984). Section 381.00316 is narrowly tailored to achieving those interests because it prohibits the minimum amount of speech possible (in fact, no speech at all)—conditioning service on vaccine documentation—while allowing discussion of the topic and customers' voluntary disclosure of that information.

## III.   The Statute Does Not Violate the Dormant Commerce Clause.

Norwegian's third claim for relief alleges that the Statute violates the dormant Commerce Clause. The Commerce Clause of the Constitution states that "Congress shall have Power . . . To regulate Commerce with foreign Nations, and among the several States." U.S. CONST. art. 1, § 8, cl. 3. This provision has been interpreted to imply two restrictions on a state's authority to legislate. "First, state regulations may not discriminate against interstate commerce; and second, States may not impose undue burdens on interstate commerce." *South Dakota v. Wayfair, Inc.*, 138 S. Ct. 2080, 2091 (2018).[5]

Norwegian alleges that the Statute burdens interstate and international commerce because it has "the practical effect of shutting down or impairing [Norwegian's] cruise line operations into and out of Florida . . . thereby excessively burdening the free flow of people and services between states." Compl. ¶ 146. Because Norwegian does not allege (nor could it) that the Statute directly regulates or discriminates against interstate or international commerce, it is valid so long as "the State's interest is legitimate" and the burden on commerce does not "clearly exceed[] the local benefits" *Island Silver & Spice, Inc. v. Islamorada*, 542 F.3d 844, (11th Cir. 2008) (quoting *Brown-Forman Distillers Corp. v. N.Y. State Liquor Auth.*, 476 U.S. 573, 579 (1986)). Here, the local benefits to Florida are significant. As noted above, in enacting the Statute, Florida legislators were

---

[5] Several Justices have questioned dormant Commerce Clause doctrine, *see, e.g.*, *South Dakota*, 138 S. Ct. at 2100 (Thomas, J., concurring); and we reserve the right to challenge the doctrine in the Supreme Court.

concerned with discrimination in the marketplace and maintaining the medical privacy of its citizens, both well-recognized compelling interests. *See Katz*, 389 U.S. at 350–51; *Roberts*, 468 U.S. at 625–26. On the other hand, the Statute does not substantially burden interstate or international commerce. It does not block Norwegian from operating, as it sometimes suggests. *See* Compl. ¶ 143 (The Statute "threatens to disrupt and even shut down the interstate and foreign cruise operations of [Norwegian]."). That Norwegian could not "maintain its protocols and operations as currently planned," Compl. ¶ 146, does not equate to "practical[ly] . . . shutting down or impair[ing] [Norwegian's] cruise line operations into and out of Florida," Compl. ¶ 147. Norwegian may sail by following the process outlined by the CDC in the CSO and no interruption to its operations or interstate commerce would result. Now that the CSO is enjoined, it does not even have to do that. All the Statute does is prevent Norwegian from refusing to serve passengers who choose not to share with it documentation about their vaccination status. Because the Statute serves legitimate state interests and does not substantially burden interstate or international commerce, Norwegian's dormant Commerce Clause claim should be dismissed.

## IV.   The Statute Does Not Violate Norwegian's Substantive Due Process Rights.

The Due Process Clause of the Fourteenth Amendment provides: "No State shall . . . deprive any person of life, liberty, or property, without due process of law." "The Clause is phrased as a limitation on the State's power to act, not as a guarantee of certain minimal levels of safety and security." *DeShaney v. Winnebago Cnty. Dept. of Soc. Servs.*, 489 U.S. 189, 195 (1989). As such, "its language cannot fairly be extended to impose an affirmative obligation on the state [to protect life, liberty or property from] harm through other means." *Id.*

Norwegian makes two arguments in support of its claim for a violation of its substantive due process rights. Norwegian alleges that the Statute, as applied, "violates the fundamental due process rights of NCLH, its crew, and its passengers to make well-informed medical decisions affecting oneself and to exercise autonomy over one's body." Compl. ¶ 156 (citing *Washington v. Glucksberg*, 521 U.S. 702, 720 (1997)). It further alleges that the Statute prevents it and its employees from supporting themselves via their chosen occupation in violation of substantive due process principles. Compl. ¶ 157 (citing *Cnty. of Butler v. Wolf*, 486 F. Supp.3d 883, 920 (W.D. Pa. 2020)).

Norwegian appears to suggest it has a due process right to "make well-informed medical decisions affecting oneself and to exercise autonomy over one's body," Compl. ¶ 156, but that

17

right is not found in *Glucksberg*, which noted the Court had long assumed that the Constitution protected the "traditional right to refuse unwanted lifesaving medical treatment" but rejected the asserted " 'right' to assistance in committing suicide [as] not a fundamental liberty interest protected by the Due Process Clause." 521 U.S. at 720, 728. *Glucksberg* cautioned that courts must "exercise utmost care whenever we are asked to [define new fundamental rights]," *id.* at 728, and as such courts require a "careful description of [an] asserted right," *Doe v. Moore*, 410 F.3d 1337, 1343 (11th Cir. 2005) (quoting *Reno v. Flores*, 507 U.S. 292, 302 (1993)). The description offered by Norwegian is anything but. It is extremely broad. In fact, the right "to exercise autonomy over one's body" was squarely rejected by the Court in *Glucksberg*, which explained, "[t]hat many of the rights and liberties protected by the Due Process Clause sound in personal autonomy does not warrant the sweeping conclusion that any and all important, intimate, and personal decisions are so protected." 521 U.S. at 727. Because this claim does not implicate a "fundamental right" it is analyzed under the rational basis standard, discussed below. *See Fresenius Med. Care Holdings, Inc. v. Tucker*, 704 F.3d 935, 945 (11th Cir. 2013).

To the extent Norwegian has alleged that the Statute, by denying Norwegian the right to make "medical decisions" and "exercise autonomy" has violated its due process rights by exposing it to danger, "[g]overnment officials violate the substantive due process rights of a person not in custody only by conduct that can be properly characterized as arbitrary, or conscience shocking, in a constitutional sense." *White v. Lemacks*, 183 F.3d 1253, 1258 (11th Cir. 1999) (quotations omitted). Norwegian has not alleged facts supporting either finding, nor could it. "[A] substantive due process violation would, *at the very least*, require a showing of deliberate indifference to an extremely great risk of serious injury to someone in [Norwegian's] position." *Waddell v. Hendry Cnty. Sheriff's Office*, 329 F.3d 1300, 1306 (11th Cir. 2003) (emphasis added). Indeed, the standard may well be *"actually far higher." Id.* at 1306 n.5. "No case in the Supreme Court, or in [the Eleventh] Circuit, . . . has held that . . . deliberate indifference is a *sufficient* level of culpability to state a claim of violation of substantive due process rights in a non-custodial context." *Waldron v. Spicher*, 954 F.3d 1297, 1310 (11th Cir. 2020). Even assuming that the standard is just deliberate indifference, the Complaint does not allege anything like deliberate indifference here. *See id.* at 1311 (requiring proof that defendant *intended* to cause victim's death or serious brain injury to show violation of clearly established substantive due process rights). In fact, Norwegian's own Healthy Sail Panel concluded that, even in the absence of a vaccine, cruise lines could safely

reopen and "protect passengers and crew against the risk of transmission" by following protocols such as rigorous testing, physical distancing and masking, and supervising off-board excursions. Doc. 3-4 at 98–99.[6] The Panel's "paramount goal and guiding principle" was to define a set of "protocols and procedures" that would "reduce the risk of transmission below the level people would experience *in other normal activities*," so presumably cruise passengers would be *safer* on a cruise ship implementing the Healthy Sail Panel's plan than in their everyday lives even without being vaccinated. *Id.* at 38. It can hardly "shock the conscience" for Florida to require Norwegian to forego vaccine passports when Norwegian's own risk assessment insisted that safe cruising could resume before vaccines even were available.

Regarding Norwegian's claim that the Statute prevents it and its employees from supporting themselves through their chosen occupation, the Supreme Court has recognized "the right to work for a living in the common occupations of the community is of the very essence of the personal freedom and opportunity that it was the purpose of the [Fourteenth] Amendment to secure." *Truax v. Raich*, 239 U.S. 33, 41 (1915); *Meyer v. Nebraska*, 262 U.S. 390, 399 (1923); *see also Bank of Jackson Cnty. v. Cherry*, 980 F.2d 1362, 1367 (11th Cir. 1993); *Silverstein v. Gwinnett Hosp. Auth.*, 861 F.2d 1560, 1566 (11th Cir. 1988). "As a matter of general consensus, courts generally treat government action purportedly violating the right to pursue an occupation in the same light as economic legislation and use the general standard of review applied to substantive due process claims." *Cnty. of Butler*, 486 F. Supp.3d at 921. Substantive due process challenges to economic legislation are reviewed under the rational basis test. *Ga. Elec. Life Safety*, 965 F.3d at 1275. "The rational basis test is highly deferential to government action, and the regulation can only be invalidated if it is so unrelated to the achievement of any combination of legitimate purposes that we can only conclude that the legislature's actions were irrational." *Id.* (quotations omitted). "Any challenge to [an economic regulation]] must negate every conceivable basis that might support it, even if that basis has no foundation in the record." *Id.* at 1276 (quotations omitted). As discussed above, Florida has a compelling interest in preventing discrimination in the marketplace and in promoting the medical privacy of its citizens, which is more than enough to defeat Norwegian's claim here.

---

[6] Norwegian refers to this document in the Complaint. *See* Compl. ¶ 69.  Documents "central to" and referenced in the Complaint may be considered on a motion to dismiss "provided that its contents are not in dispute." *Harris v. Ivax Corp.*, 182 F.3d 799, 802 n.2 (11th Cir. 1999).

**Conclusion**

The Court should dismiss Norwegian's Complaint for failure to state a claim.

Dated: August 4, 2021                                        Respectfully submitted,

                                                            /s/ Joseph O. Masterman
Raymond Frederick Treadwell                                 Joseph O. Masterman
Florida Bar No. 93834                                       Florida Bar No. 1004179
EXECUTIVE OFFICE OF THE GOVERNOR                            COOPER & KIRK, PLLC
Office of the General Counsel                               1523 New Hampshire Avenue, N.W.
400 South Monroe Street                                     Washington, DC 20036
The Capitol                                                 (202) 220-9600
Suite 209                                                   (202) 220-9601 (fax)
Tallahassee, FL 32399                                       jmasterman@cooperkirk.com
(850) 488-9810
ray.treadwell@eog.myflorida.com                             Charles J. Cooper*
                                                            Peter A. Patterson*
                                                            Nicholas A. Varone*
                                                            William V. Bergstrom*
                                                            COOPER & KIRK, PLLC
                                                            1523 New Hampshire Avenue, NW
                                                            Washington, DC 20036
                                                            (202) 220-9600
                                                            (202) 220-9601 (fax)
                                                            ccooper@cooperkirk.com
                                                            ppatterson@cooperkirk.com
                                                            nvarone@cooperkirk.com

                                                            *Appearing *pro hac vice*

                            *Attorneys for Defendant Scott Rivkees, M.D.*

20

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing Motion was served to all

counsel of record through the Court's CM/ECF system on this 4th of August, 2021.

<u>/s/Joseph O. Masterman</u>
Joseph O. Masterman
Florida Bar No. 1004179

*Attorney for Defendant Scott Rivkees, M.D.*
