UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| **NORWEGIAN CRUISE LINE HOLDINGS LTD.**, a Bermuda Company; **NCL (BAHAMAS) LTD.**, d/b/a NORWEGIAN CRUISE LINE, a Bermuda Company; **SEVEN SEAS CRUISES**, a Panama Limited Liability Company; **OCEANIA CRUISES S. DE R.L.**, d/b/a OCEANIA CRUISES, a Panama Limited Liability Company,<br><br>Plaintiffs,<br><br>v.<br><br>**SCOTT A. RIVKEES, M.D.**, State Surgeon General and Head of the Florida Department of Health, in his official capacity,<br>Defendant. | Case No.: 1:21-cv-22492 |

**DEFENDANT'S REPLY IN SUPPORT OF HIS EXPEDITED MOTION FOR TRANSFER**

Plaintiffs offer no substantive response to the central justification for a transfer to the Middle District of Florida. Plaintiffs' lead claim in this case is that the CDC's conditional sailing order ("CSO") and its implementing measures preempt Fla. Stat. § 381.00316. Of course, for these measures to have any preemptive effect, the CSO must be valid—and the issue of the CSO's validity is being actively litigated before the Middle District. The CDC is a party to that litigation and is the proper party to defend its actions. Indeed, in their reply brief in support of a preliminary injunction here, Plaintiffs do not muster their own arguments on behalf of the CSO, instead relying on *the CDC's briefing in the Middle District litigation*. *See, e.g.*, Pls.' Reply in Supp. of Expedited Mot. for Prelim. Inj. at 4, Doc. 35 (July 30, 2021) ("Pls.' PI Reply") ("Most of Defendant's remaining arguments are predicated on invalidating CDC's framework, which . . . should not be

1

taken as likely, for reasons CDC has submitted to the Middle District and the Eleventh Circuit and need not be belabored here.").

As Plaintiffs do not dispute, they could originally have filed this suit in the Middle District, where the related litigation had been progressing for months. A transfer would serve judicial economy, avoid potentially conflicting rulings, and prejudice no party. Transfer therefore is warranted under either the first-filed rule or 28 U.S.C. § 1404(a).

## ARGUMENT

Plaintiffs' primary contention in this suit—the first claim in their complaint and the lead argument in their preliminary-injunction briefing—is that Florida cannot prohibit them, pursuant to Fla. Stat. § 381.00316, from requiring documentation of COVID-19 vaccination because that prohibition purportedly conflicts with the CSO and related implementation measures. Defendant has argued in turn (and continues to argue in the Motion to Dismiss that he is also filing today) that the CSO cannot preempt § 381.00316 because it is invalid. *See* Def.'s Mem. of Law in Opp'n to Pls.' Expedited Mot. for Prelim. Inj. at 6–15, Doc. 32 (July 27, 2021) ("Def.'s PI Mem."). Thus, Plaintiffs' primary claim does not get out of the starting blocks unless the CSO is valid.

Whether under the first-filed rule or § 1404(a), this case should be transferred for that essential reason. Plaintiffs do not dispute that, to rule for them on their primary claim, the Court must find that the CDC had authority to issue the CSO and that it did so in a lawful manner. Plaintiffs also do not dispute that these exact questions have been raised and preliminarily ruled upon in Florida's suit against the CDC in the Middle District. And Plaintiffs do not dispute that the CDC's participation provides insight into its understanding of the preemptive effect of its CSO and related measures in Florida, which the CDC itself has disclaimed with respect to the vaccination alternative. In fact, Plaintiffs respond to this disclaimer not with arguments of their own, but with cites to *the CDC's own briefing in the Middle District litigation. See* Pls.' PI Reply at 6. Those cites come nowhere near to retracting the CDC's multiple, explicit statements cited in Defendant's preliminary-injunction briefing. But they further illustrate that this case should be before the Middle District.

### I. This Case Should Be Transferred to the Middle District of Florida Under the First-Filed Rule.

Although Plaintiffs emphasize the equitable nature of the first-filed rule, *see* Pls.' Resp. in Opp'n to Expedited Mot. for Transfer at 7, 14–15, Doc. 36 (July 30, 2021) ("Resp."), they treat

two of its factors as stringent requirements. The rule is grounded, however, in "considerations of comity and orderly administration of justice" and reflects the basic proposition that "two courts of equal authority should not hear the same case simultaneously and potentially generate dueling appeals." *Broward Bulldog, Inc. v. U.S. Dep't of Justice*, 939 F.3d 1164, 1196 (11th Cir. 2019) (internal quotation marks omitted). These equitable considerations guide application of the rule's factors. *See, e.g.*, *Elliott v. Williams*, No. 20-81280-CIV, 2021 WL 1998411, at *4 (S.D. Fla. May 19, 2021).[1] And the potential for disorder and dueling rulings has already manifested here: as explained further in Defendant's Motion to Dismiss, Plaintiffs' preemption claim is unripe given that the Middle District has preliminarily enjoined the CSO and the Eleventh Circuit has declined to stay the injunction pending appeal; yet Plaintiffs ask this Court to enjoin § 381.00316 on the authority of the CSO. The equitable underpinnings of the first-filed rule therefore favor a transfer to the Middle District.

So does the rule's first factor, which Plaintiffs' neglect: the chronology of the two actions. Plaintiffs meticulously detail email traffic related to this litigation, but they cannot deny that the Middle District litigation began months before. Nor does the chronology of this litigation favor them. Florida enacted § 381.00316 on May 3, months before Plaintiffs filed a complaint in this Court alleging a desire to comply with the CSO by requiring documentation of COVID-19 vaccination from 95% of passengers. *See* Compl. ¶ 120, Doc. 1 (July 13, 2021). Plaintiffs' delay has allowed the Middle District action to proceed considerably. On June 18, nearly a month before this suit was filed, that court granted the State's preliminary injunction motion, and the Eleventh Circuit has since denied the CDC's motion for a stay pending appeal. The Middle District's ruling extensively addresses the issues relating to the CSO's validity, *see State v. Becerra*, 2021 WL 2514138, at **11–47 (M.D. Fla. 2021), and Plaintiffs provide no sound basis for requiring duplicate judicial effort on this issue.

The two first-filed factors on which Plaintiffs rely—overlap of the parties and issues—also favor a transfer. Plaintiffs' suggestion that the parties here and in the Middle District do not overlap whatsoever, *see* Resp. at 8, is untrue. In accord with the *Ex Parte Young* doctrine, Plaintiffs seek

---

[1] Plaintiffs are therefore incorrect that the equities can only support *denying* a transfer in cases that satisfy the first-filed factors. *See* Resp. at 14. Nor do equitable considerations "threate[n] to transform" the rule "into a broad license" for "willy-nilly" transfers. *Id*. Plaintiffs' own citations show that courts routinely deny transfers that would not serve judicial efficiency.

an injunction against a State official rather than the State itself. But the Eleventh Circuit has "noted that the doctrine is a legal fiction because it 'creates an imaginary distinction between the state and its officers, deeming the officers to act without the state's authority, and, hence, without immunity protection, when they enforce state laws in derogation of the Constitution.' " *Hayes v. Sec'y, Fla. Dep't of Child. & Fams.*, 563 F. App'x 701, 703 (11th Cir. 2014) (quoting *Summit Med. Assocs., P.C. v. Pryor*, 180 F.3d 1326, 1336–37 (11th Cir. 1999)). There is thus no meaningful difference between Defendant and the State for purposes of these cases. Plaintiffs merely confuse issues by focusing on the different *lawyers* for Defendant and the State. The lawyers are, of course, not the parties. That Defendant and the State have different lawyers does not mean that their interests are not aligned. Both argue that the CSO is invalid.

The question is therefore whether Plaintiffs' absence from the Middle District caption defeats the first-filed presumption here, *i.e.*, whether this difference alone justifies sacrificing judicial efficiency and risking inconsistent rulings. Plaintiffs might have a better argument that it does if Defendant were seeking to dismiss or stay this case. But Defendant seeks only a transfer to a district that is already hearing a similar case, one that Plaintiffs themselves have recognized as germane to their interests and have sought to participate in as an *amicus*. Contrary to their characterization, Defendant does not argue that their request to file an *amicus* brief "is equivalent to [them] actually being a party before the Middle District." Resp. at 12 (emphasis omitted). That brief—where Plaintiffs again raise their preemption argument—is primarily relevant because it illustrates the cases' overlapping issues. But Plaintiffs' *amicus* participation, which the State does not generally oppose,[2] is also relevant because it illustrates that Plaintiffs can readily represent their interests in the Middle District, as they would have further opportunity to do after a transfer. Again, the Middle District has a party that, though not named here, is in the background of Plaintiffs' primary claim: the CDC. Under these circumstances, this factor also supports a transfer.

All Plaintiffs' cited cases arise from different circumstances. That any of these cases should "preclu[de]" a different application of an equitable standard to different facts, as Plaintiffs say, *see* Resp. at 9, is inherently unsound. In any event, in the case on which they most heavily rely,

---

[2] Plaintiffs make much of the fact that this brief was never actually filed. Resp. at 4, 12. As noted in Defendant's underlying motion, the State objected to that brief only because Plaintiffs sought to file it outside the established briefing schedule, and Plaintiffs' request to file it was denied only because it was moot after the Eleventh Circuit declined to grant a stay based on the papers timely filed.

*Collegiate Licensing Co. v. American Casualty Co. of Reading* ("*CLC*"), 713 F.3d 71 (11th Cir. 2013), the Eleventh Circuit affirmed the use of the first-filed rule to block parties from filing related intervention complaints in proceedings in another court. Even though those proceedings had begun before the action in this circuit, the "proper comparators" for the action in this circuit were the intervention complaints (which involved the same parties and insurance policies) and not the proceedings themselves (which involved different insurance policies and only one common party). *Id.* at 77, 79. In other words, the existence of a common party alone did not render the other action "first-filed." Here, by contrast, Plaintiffs argue that the *absence* of a party (*i.e.*, Plaintiffs) defeats characterizing the Middle District action as "first-filed" despite the existence of other common parties and claims based on the same document (*i.e.*, the CSO). The *CLC* decision does not dictate that result.

The same goes for Plaintiffs' other cited cases that, like *CLC*, concern actions with more differences than just the parties. *See Williams v. Bluestem Brands, Inc.*, No. 8:17-CV-1971-T-27AAS, 2018 WL 2426644, at *2 (M.D. Fla. May 30, 2018) (no substantial overlap of parties or issues where relevant factual allegations differed between two cases); *Tempur-Pedic N. Am., LLC v. Mattress Firm, Inc.*, No. 8:18-CV-2147-T-33SPF, 2018 WL 8369104, at *2 (M.D. Fla. Sept. 20, 2018) (similar); *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Beta Constr. LLC*, No. 8:10-CV-1541-T-26TBM, 2010 WL 3789042, at **4–5 (M.D. Fla. Sept. 24, 2010) (similar). In such cases, courts reasonably failed to find "*any* gains in judicial efficiency" warranting a transfer. *Epler v. Air Methods Corp.*, No. 6:21-CV-461-PGB-DCI, 2021 WL 2806207, at *6 (M.D. Fla. June 4, 2021) (emphasis added). The rest of Plaintiffs' cases are not relevant because the movants there sought either dismissal or a stay. *See Savage v. Seterus, Inc.*, No. 2:20-CV-32-FTM-38NPM, 2020 WL 2219194, at *1 (M.D. Fla. May 7, 2020); *Mister Sparky Franchising, LLC v. On Time Electricians, Inc.*, No. 8:15-CV-164-T-33TGW, 2015 WL 1811082, at *1 (M.D. Fla. Apr. 21, 2015). Whereas those remedies would obviously prejudice the other side, transfer would not prejudice Plaintiffs for the reasons already discussed and further elaborated below. *Compare Rodriguez v. Molina Healthcare of Fla., Inc.*, No. 4:16CV801-RH/CAS, 2017 WL 10841484, at *2 (N.D. Fla. May 24, 2017) ("If relief is to be obtained by Florida case managers, it must be obtained in this action or not at all.").

Plaintiffs spend less time on the last factor—overlap of the issues—perhaps because they cannot (and do not dispute) that their primary claim overlaps with the issues in the Middle District

5

litigation. They do suggest that the overlap is only partial because the Middle District suit does not specifically concern alleged preemption of § 381.00316. *See* Resp. at 13. But that is an aspect of the same question in the Middle District: whether the CSO preempts § 381.00316 as applied to Plaintiffs depends on whether the CSO is valid. *See Fidelity Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 154 (1982).

Plaintiffs' cited cases again do not weigh against a transfer. Indeed, in one case they cite for the proposition that "courts in this Circuit routinely deny motions premised on the first-filed rule based on lack of substantial overlap" in issues, *id.*, this Court applied the first-filed rule *sua sponte* and held that it "unambiguously justifies a transfer here." *Williams*, 2021 WL 1998411, at *4. "Notably," the Court said, "the first-to-file rule *doesn't* require that the parties and issues involved be identical; it requires only that they are sufficiently similar or substantially overlap." *Id.* (internal quotation marks omitted; emphasis in original).

The rest of Plaintiffs' cases are readily distinguishable. The "policies at issue" are the same for Plaintiffs' preemption claim and the Middle District claims, unlike in *CLC*. *See* 713 F.3d at 79. And this is not a case, like *Tempur-Pedic*, with "differences in the alleged wrongful conduct" between private parties, where "[a]ny potential conflict between the injunctive relief granted" in one action could "be resolved through the hearing and ruling on the motion for preliminary injunction" in the other. 2018 WL 8369104, at *2. Here, the relevant "policy" is a public policy, the CSO. The potential for conflicting rulings on that policy is unavoidable and more problematic. If the CSO is deemed a valid regulation with preemptive effect here and an invalid regulation in the Middle District, or vice versa, the CSO will have different force in different districts—even though the party that promulgated the CSO, the CDC, is present to defend the CSO in only the Middle District. The first-filed rule prevents that strange result.[3]

Granted, as Plaintiffs note and Defendant fully acknowledges, other claims in this case are not "duplicative" of issues in the Middle District. Resp. at 12 (internal quotation marks omitted); *see also* Def.'s Expedited Mot. for Transfer at 6, Doc. 28 (July 16, 2021). But Plaintiffs cite no controlling authority requiring courts to look for complete duplication (as opposed to sufficient

---

[3] The Middle District has sought to avoid the possibility of its ruling "impair[ing]" the interests of parties not before it by allowing the State of Texas to intervene. Order at 4, *State v. Becerra*, No. 8:21-cv-839, Doc. 117 (July 29, 2021).

similarity) when applying the first-filed rule.[4] To the extent courts do so in other cases, that standard does not serve the goals of the first-filed rule in this one. There is no reason to risk conflicting determinations of the validity of the CSO when the Middle District already has the CDC as a party, is equally equipped to resolve Plaintiffs' secondary claims (which have only just been preliminarily briefed here), and indeed could do so with more dispatch given its longer familiarity with the issues underlying Plaintiffs' primary claim.

Plaintiffs also discuss what they call "equitable factors," which are really a preview of their § 1404(a) arguments. Resp. at 14–15. "A transfer of a case under the first-filed rule does not depend on the presence or absence of 28 U.S.C. § 1404(a) considerations." *Williams*, 2021 WL 1998411, at *4 (internal quotation marks omitted). To the extent Plaintiffs mean to suggest that these "factors" are "compelling circumstances" against transfer, Plaintiffs do not credibly assert any circumstances that courts have considered under the first-filed rule. *See id.* at *5. Nor are Plaintiffs' assertions compelling. The location of Plaintiffs' headquarters is irrelevant to the resolution of the legal questions here and in the Middle District and is particularly irrelevant to the resolution of the question whether a different entity (the CDC) acted unlawfully in promulgating the CSO. And though transfers entail some delay, Plaintiffs do not suggest that the Middle District could not resolve their claims efficiently or that this Court is better positioned to do so. Plaintiffs are certainly clear about their own desire for expedition, but that does not compel disregarding the goals of the first-filed rule—especially not when Plaintiffs face no impending harm and when Plaintiffs could have brought this case months ago. *See* Def.'s PI Mem. at 19–20.

Finally, Plaintiffs' accusations of forum shopping are baseless. Plaintiffs *do not dispute* that this suit could originally have been filed in the Middle District. Nor has Defendant sought to transfer the case there because he was "dissatisfied" with the resolution of his extension motion—which, as Plaintiffs note, the Court largely granted. Resp. at 11. And it is not relevant that he sought an extension before seeking a transfer. If this Court were the proper forum for this case, it deserves adequate briefing of the issues. But Defendant sought to transfer—mere days after the suit was

---

[4] Plaintiffs cite an out-of-Circuit case and a case from the Northern District of Alabama that itself relies on out-of-Circuit cases. *See* Resp. at 12. Meanwhile, as noted, this Court has recently confirmed that the standard is "sufficien[t] similar[ity] or substantia[l] overlap." *Williams*, 2021 WL 1998411, at *4.

filed, and the same day that retained counsel appeared on his behalf—because the Middle District is the proper forum.

## II. Alternatively, This Case Should Be Transferred to the Middle District of Florida Under § 1404(a).

Plaintiffs do not mention, much less dispute, the Supreme Court's observation that "[t]o permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that [§] 1404(a) was designed to prevent," *Cont'l Grain Co. v. The FBL-585*, 364 U.S. 19, 26 (1960), or this Court's observation that "[o]ther courts in this Circuit have transferred cases pursuant to § 1404(a) because of lawsuits involving substantially similar issues pending in other districts— even where the plaintiff was not a party to those other suits." *Chicken Kitchen USA, LLC v. Tyson Foods, Inc.*, No. 17-21503-CIV, 2017 WL 6760811, at *4 (S.D. Fla. Oct. 4, 2017). Under this logic and precedent alone, this case should be transferred to the Middle District. But the same result obtains under the specific factors that courts also consider when applying § 1404(a). *See Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 n.1 (11th Cir. 2005).

<u>Locus of operative facts and convenience of the parties and witnesses</u>. Plaintiffs argue that these factors support this forum because Plaintiffs are headquartered in Miami and do more business in this district than in the Middle District. That has nothing to do with this case, which involves mainly legal issues and should not require extensive fact discovery (indeed, Defendant believes it should be dismissed). Regardless, Plaintiffs are large corporate entities that participate in cases throughout the country. *See, e.g.*, *Thompson v. NCL (Bahamas) Ltd*, No. 4:16-CV-40132-TSH, 2017 WL 275595 (D. Mass. Jan. 20, 2017). They cannot assert that traveling one district over, if that would even be necessary, would be a significant burden.

<u>Familiarity with the governing law, trial efficiency, and the interests of justice</u>. It is true that the parties are also capable of litigating in this district. But "the overarching consideration under § 1404(a) is whether a transfer would promote the interest of justice," which, given the existing Middle District litigation, would be best served there. *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 63 (2013) (internal quotation marks omitted). Plaintiffs have no response other than repeating arguments and accusations that fail for the reasons above. Whatever pains the Court takes to resolve Plaintiffs' claims in the expedited manner they request,

it cannot make up for the litigation that the Middle District has overseen and will continue overseeing with the CDC as a party.

Plaintiffs' choice of forum. That leaves Plaintiffs relying on the general presumption in favor of a plaintiff's choice of forum, which they again assert was based on their headquarters and business. This presumption does not always carry weight, especially not where, as here, "there is no real connection" between the litigation and the plaintiff's presence the forum. *Fed. Hous. Fin. Agency v. First Tennessee Bank Nat'l Ass'n*, 856 F. Supp. 2d 186, 192 (D.D.C. 2012). Especially given the related litigation already proceeding in a forum where this case could have been brought, this factor deserves little or no weight in this case. *See id*. at 195–96.

Plaintiffs' assertion that "even neutral factors weigh *against* transfer," Resp. at 16 (internal quotation marks omitted), is unsupported by their own cited cases, which afforded weight to the plaintiff's choice of forum when *all* other factors were either equal, neutral, or tipped collectively toward that forum. *See SME Racks, Inc. v. Sistemas Mecanicos Para Electronica, S.A.*, 382 F.3d 1097, 1103 (11th Cir. 2004); *Sterling v. Provident Life & Accident Ins. Co*., 519 F. Supp. 2d 1195, 1208 (M.D. Fla. 2006). Here, the only factors that point in any direction—"familiarity with the governing law" and "trial efficiency and the interests of justice"—point to the Middle District. These factors overcome the presumption and justify a transfer under § 1404(a) as well.

## CONCLUSION

This case should be transferred to the Middle District of Florida.

Dated: August 4, 2021

Respectfully submitted,

/s/Joseph O. Masterman

| | |
|---|---|
| Raymond Frederick Treadwell | Joseph O. Masterman |
| Florida Bar No. 93834 | Florida Bar No. 1004179 |
| EXECUTIVE OFFICE OF THE GOVERNOR | COOPER & KIRK, PLLC |
| Office of the General Counsel | 1523 New Hampshire Avenue, N.W. |
| 400 South Monroe Street | Washington, DC 20036 |
| The Capitol | (202) 220-9600 |
| Suite 209 | (202) 220-9601 (fax) |
| Tallahassee, FL 32399 | jmasterman@cooperkirk.com |
| (850) 488-9810 | |
| ray.treadwell@eog.myflorida.com | Charles J. Cooper* |
| | Peter A. Patterson* |
| | Nicholas A. Varone* |
| | William V. Bergstrom* |

9

COOPER & KIRK, PLLC
1523 New Hampshire Avenue, NW
Washington, DC 20036
(202) 220-9600
(202) 220-9601 (fax)
ccooper@cooperkirk.com
ppatterson@cooperkirk.com
nvarone@cooperkirk.com
wbergstrom@cooperkirk.com

*Appearing *pro hac vice*

*Attorneys for Defendant Scott A. Rivkees, M.D.*

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing Reply was served to all counsel of record through the Court's CM/ECF system on this 4th of August, 2021.

/s/Joseph O. Masterman
Joseph O. Masterman
Florida Bar No. 1004179

*Attorney for Def. Scott A. Rivkees, M.D.*