UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No. 21-22492-CIV-WILLIAMS

NORWEGIAN CRUISE LINE
HOLDINGS, LTD., *et al.*,

    Plaintiffs,

vs.

SCOTT RIVKEES, M.D.,

    Defendant.

_____/

## ORDER ON MOTION TO TRANSFER

**THIS MATTER** is before the Court on Defendant's Expedited Motion to Transfer (DE 28).[1] Plaintiffs filed a response to the Motion (DE 36), to which Defendant replied (DE 40). After a careful review of the Motion, the record, and the applicable law, the Motion is **DENIED**.

**I.    BACKGROUND**

On July 13, 2021, Plaintiffs—Norwegian Cruise Line Holdings Ltd.; NCL (Bahamas) Ltd., d/b/a Norwegian Cruise Line; Seven Seas Cruises S. De R.L., d/b/a Regent Seven Seas Cruises; and Oceania Cruises S. De R.L., d/b/a/ Oceania Cruises (collectively "***Plaintiffs***" or "***NCLH***")—filed their Complaint seeking declaratory relief and preliminary and permanent injunctive relief against Dr. Scott Rivkees, the Surgeon General of Florida and the head of the Florida Department of Health ("***Defendant***").

---

[1] Defendant requested an expedited ruling on the Motion. After a review of Defendant's request, the Court ordered expedited briefing. (DE 29.)

NCLH alleges that Defendant is preventing it from safely resuming passenger cruises out of Miami, Florida, "in the way that this cruise line has determined will be best for all concerned." (DE 1 at 1.) This is because Florida Statute § 381.00316 ("**Section 381.00316**"), which Defendant is tasked with enforcing as the head of the Department of Health, prohibits businesses from requiring customers to present documentary proof of having received a COVID-19 vaccine to gain access or services, *see* Fla. Stat. § 381.00316. (DE 1 at 1−2.) Prior to the current litigation in this Court, the State of Florida filed suit on April 8, 2021 in the United States District Court for the Middle District of Florida against the Centers for Disease Control and Prevention ("**CDC**"), the United States, and federal officials. *See Florida v. Becerra*, No. 8:21-CV-839-SDM-AAS (M.D. Fla., filed Apr. 8, 2021). There, the State alleges that the CDC violated the Administrative Procedure Act ("**APA**") and exceeded its authority by issuing the Conditional Sailing Order ("**CSO**"), which instituted certain temporary requirements for cruise operators to implement in order to resume sailing. *See id.*

## II.     LEGAL STANDARD

Defendant moves to transfer venue pursuant to the "first-filed rule," or alternatively, 28 U.S.C. § 1404(a). "The first-filed rule provides that when parties have instituted competing or parallel litigation in separate courts, the court initially seized of the controversy should hear the case." *Collegiate Licensing Co. v. Am. Cas. Co. of Reading, Pa.*, 713 F.3d 71, 78 (11th Cir. 2013). Alternatively, 28 U.S.C. § 1404(a) provides, in relevant part, that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a).

Transfer of venue under 28 U.S.C. § 1404(a) is discretionary, and once a trial judge decides whether transfer is justified, the ruling can be overturned only for clear abuse of discretion. *See Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 260 (11th Cir. 1996); *Brown v. Conn. Gen. Life Ins. Co.*, 934 F.2d 1193, 1197 (11th Cir. 1991). The party moving for transfer under Section 1404(a) bears the burden to establish that another district is a more convenient forum than the plaintiff's chosen forum. *Steifel Lab'ys, Inc. v. Galderma Lab'ys, Inc.*, 588 F. Supp. 2d 1336, 1338 (S.D. Fla. 2008) (citing *In re Ricoh Corp.*, 870 F.2d 570, 573 (11th Cir. 1989)); *Mason v. Smithkline Beecham Clinical Lab'ys*, 146 F. Supp. 2d 1355, 1359 (S.D. Fla. 2001) (citing *Garay v. BRK Elecs.*, 755 F. Supp. 1010 (M.D. Fla. 1991)). "The plaintiff's choice of forum should not be disturbed unless it is clearly outweighed by other considerations." *Howell v. Tanner*, 650 F.2d 610, 616 (5th Cir. July 13, 1981), *disagreement on other grounds recognized by Brumfield v. Jones*, 849 F.2d 152 (5th Cir.1988).[2]

### III. DISCUSSION

#### A. First-Filed Rule

Defendant argues the Court should apply the "first-filed rule" and transfer this case to the Middle District of Florida because *Florida v. Becerra*, No. 8:21-CV-839-SDM-AAS, was filed before this lawsuit, and "the Middle District has issued a thorough analysis of the Conditional Sailing Order's lawfulness and the irreparable injuries it does to the Florida economy." (DE 28 at 6.) Defendant proffers that he will argue, in this case, that the CSO cannot preempt Section 381.00316 if the CSO is unlawful.

---

[2] *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc) (adopting as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981).

Applying the rule requires the Court to evaluate three factors: "(1) the chronology of the two actions; (2) the similarity of the parties; and (3) the similarity of the issues." *Clinton v. Sec. Benefit Life Ins. Co.*, 2020 WL 1185275, at *2 (S.D. Fla. Mar. 12, 2020) (internal citation omitted). "[T]he parties and issues should substantially overlap." *Lott v. Advantage Sales & Mktg. LLC,* 2011 WL 13229682, at *2 (N.D. Ala. Jan. 26, 2011). "If the court finds that the first-filed rule applies, the court must then determine whether the party objecting to jurisdiction in the first-filed forum has met its burden of demonstrating that 'compelling circumstances' support an exception to the rule," which include "bad faith negotiations, an anticipatory suit, and forum shopping." *Clinton*, 2020 WL 1185275, at *2; *see also Manuel v. Convergys Corp.*, 430 F.3d 1132, 1136 (11th Cir. 2005). "If the presumption holds, the district court can either stay, dismiss, or transfer the second-filed case to the forum in which the first-filed action is pending." *Clinton*, 2020 WL 1185275, at *2.

"The first to file rule is discretionary," *Lott*, 2011 WL 13229682, at *2, and is intended to "avoid the waste of duplication, to avoid rulings which may trench upon the authority of the sister courts, and to avoid piecemeal resolution of issues that call for a uniform result." *Id*. (citing *West Gulf Mar. Ass'n v. ILA Deep Sea Loc. 24*, 751 F.2d 721, 729 (5th Cir. 1985)); *see also In re Checking Acct. Overdraft Litig.*, 859 F. Supp. 2d 1313, 1324 (S.D. Fla. 2012) ("The 'first-to-file rule' developed as a doctrine of federal comity."). A "[d]istrict [c]ourt may in its discretion decline to follow the first-filed rule if following it would frustrate rather than further these purposes." *Lott*, 2011 WL 13229682, at *2 (citation omitted).

Turning to the three factors, while Defendant's recitation of the chronology of the cases is accurate—the State filed the Middle District case before this case was filed—the other two factors do not weigh in favor of transfer. Here, Plaintiffs are private cruise operators and Defendant is the State Surgeon General and head of the Florida Department of Health, in his official capacity. In the Middle District case, the plaintiff is the State of Florida, and the defendants are the United States, the CDC, and various federal officials, in their official capacities. Although the Defendant here and the plaintiff there share a provenance—Florida—the parties do not substantially overlap.[3] *See Collegiate Licensing*, 713 F.3d at 79 ("the only party in common in the Georgia Action and the California Action is CLC"); *see also Cardenas v. Toyota Motor Corp.*, 2019 WL 4705843, at *3 (S.D. Fla. Sept. 26, 2019) (declining to apply the first-filed rule where the proposed class of plaintiffs in the case did not overlap with the certified class in the first-filed case and where the defendant, Toyota Motor Corporation, was found to be "substantially dissimilar" to the only defendant in the first-filed cases, Toyota Motor Sales, U.S.A., Inc.). Moreover, Defendant admits that "the parties and issues in the two suits do not overlap entirely." (DE 28 at 6.) Thus, this factor does not weigh in favor of applying the rule.

In his reply, Defendant asserts that there is no "meaningful difference between Defendant and the State for purposes of these cases," and the only difference in the parties is the absence of NCLH in the Middle District case. But notably, the CDC and the federal government are not parties here, *see Tempur-Pedic N. Am., LLC v. Mattress Firm,*

---

[3] In communications with NCLH's counsel, an attorney for the State plaintiff in the Middle District case made clear that he did not represent and could not speak on behalf of the Defendant Surgeon General in this case. (*See* DE 36 at 10.) Implicit in these communications is—at the very least—an indication that the rights and positions of the State and the Surgeon General, in his official capacity, may not fully align to the extent that Defendants purport that they do in the present Motion.

*Inc.*, 2018 WL 8369104, at *3 (M.D. Fla. Sept. 20, 2018) ("Although Tempur-Pedic North America, Dan-Foam, and Mattress Firm are parties to both actions, Tempur-Pedic Management, Ther-a-Pedic Associates, Sinomax Group Limited, and Sinomax USA are not parties to the Texas action."), and Plaintiffs have raised constitutional claims that are not at issue in the Middle District. Because Defendant does not address the Parties' distinct roles and different claims, the argument that the parties and issues in both cases substantially overlap is facile and does not warrant application of the rule.

The rights asserted by the parties in these cases are wholly distinct. "A first-filed analysis looks to the character of the suits and the parties to the suits, not simply to the similarity of issues without regard to the identity of the parties asserting them and their asserted **rights as presented in the initial lawsuit**." *Collegiate Licensing*, 713 F.3d at 79 (emphasis added). In *Collegiate Licensing*, the Eleventh Circuit upheld the lower court's first-filed analysis, finding that although the case "shared certain common questions of law or fact" with another case, "that finding [was] not dispositive of whether the actions in which those disputes [were] raised [were] the same for purposes of the first-filed rule." *Id.* That rationale applies here. Neither the "rights as presented in the initial lawsuit" by the State, nor the interests the CDC defends, are the rights that NCLH asserts in this case. NCLH has advanced four constitutional bases for relief, including violation of the First Amendment and the dormant Commerce Clause—issues which were never raised nor anticipated to be addressed in the Middle District matter. Admittedly, a common theme between this case and the case in the Middle District is the CSO's relationship to the various claims. In the Middle District, the State argues that the CDC lacked the

authority to promulgate and enforce the CSO.[4] Here, Plaintiffs assert—as one argument—that the CSO preempts state law, a law that Plaintiffs argue is itself unconstitutional. Nonetheless, in seeking a transfer (as opposed to a dismissal or a stay), Defendant expressly recognizes that Plaintiffs in this case are pursuing "separate constitutional claims." (DE 28 at 6.)

The analysis in *Cardenas*, 2019 WL 4705843, provides a persuasive diagram of the party/issue relationship in a first-filed context. There, defendants Toyota Motor Corporation, Toyota Motor Sales, U.S.A., Inc., Toyota Motor Engineering & Manufacturing, Inc., and Southeast Toyota Distributors, LLC asserted that there were sufficient grounds to transfer the subject action to California pursuant to the rule. *Cardenas*, 2019 WL 4705843, at *1. To support their request, the defendants asked the Court to examine **three** ongoing class actions against Toyota Motor Sales, U.S.A., Inc. that were pending in the Central District of California: *Salas v. Toyota Motor Sales, U.S.A., Inc.*, No. 2:15-cv-08629-FMO-E (C.D. Cal., filed Nov. 4, 2015); *Stockinger v. Toyota Motor Sales, U.S.A., Inc.*, No. 2:17-cv-00035-VAP-KS (C.D. Cal., filed Jan. 3, 2017); and *Beil v. Toyota Motor Sales, U.S.A., Inc.*, No. 2:17-cv-07079-VAP-KS, (C.D. Cal., filed Sept. 25, 2017). *Cardenas*, 2019 WL 4705843, at *1. The common defendant in all of the cases—Toyota Motor Sales, U.S.A., Inc.—was headquartered in Texas and incorporated in California, while additional *Cardenas* defendants included "Toyota Motor Corporation (the

---

[4] It should be noted that while Defendant focuses his first-filed argument on preemption as the substantially similar claim in these cases, nowhere in the State's complaint or motion for preliminary injunction in *Florida v. Becerra*, No. 8:21-CV-839-SDM-AAS, is preemption discussed. Likewise, Judge Merryday did not engage in a preemption analysis in his order. *Florida v. Becerra*, 2021 WL 2514138 (M.D. Fla. June 18, 2021). In light of the unique posture of the claims before the Court—"Plaintiffs' separate constitutional claims" as well as their preemption claim—this matter should remain here. The first-filed rule does not apply where different parties are asserting different rights predicated on different legal arguments.

7

Japanese parent corporation), Toyota Motor Engineering & Manufacturing of North America, Inc. (a Kentucky corporation that is headquartered in Texas), and Southeast Toyota Distributors, LLC—which, notably, is headquartered in Florida." *Id.* at *3. In declining to transfer the case, the Court found that the proposed classes of plaintiffs did not overlap, and that the presence of additional defendants (even with one common defendant) and additional claims (even though all were based on the same HVAC system defect) gave "this lawsuit a significantly different tenor than the California Actions." *See id.*; *see also Carl v. Republic Sec. Bank*, 2002 WL 32167730, at *4 (S.D. Fla. Jan. 22, 2002) (finding the rule did not apply where "registration of judgment and garnishment proceedings [were pending] in the Middle District" on a related case brought by the same plaintiff, but this case involved different claims against a different defendant). As in *Cardenas*, the lawsuit before the Court is of a "significantly different tenor" than that before Judge Merryday, and the Court will recognize the unique positions of the parties and claims. *See Tempur-Pedic*, 2018 WL 8369104, at *3 ("Therefore, the Court declines to transfer this case to the Southern District of Texas under the first-filed rule. Any potential conflict between the injunctive relief granted in the Texas action and the injunctive relief requested in this action can be resolved through the hearing and ruling on the motion for preliminary injunction.").

### B. Section 1404(a)

To determine the propriety of transfer to a different district under section 1404(a), courts engage in a two-step analysis. *Abbate v. Wells Fargo Bank, Nat. Ass'n*, 2010 WL 3446878, at *4 (S.D. Fla. Aug. 31, 2010). "First, courts determine whether the action could have been brought in the venue in which transfer is sought. Second, courts assess

whether convenience and the interest of justice require transfer to the requested forum."

*Id.* In deciding the second step:

> [C]ourts focus on a number of potential factors including: (1) the convenience of the witnesses; (2) the location of documents and other sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the ability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) the forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances.

*Id.* at *5 (citing *Manuel*, 430 F.3d at 1135 n.1). "The Eleventh Circuit has recognized that district courts have broad discretion in determining whether to transfer a case to another district for the convenience of the parties and witnesses, and in the interests of justice." *Abbate*, 2010 WL 3446878, at *3 (citing *England v. ITT Thompson Industries, Inc.*, 856 F.2d 1518, 1520 (11th Cir. 1988)).

As to the first prong, the Parties do not dispute that this action could have been brought in the Middle District of Florida, and nothing in the record suggest otherwise.

As to the second prong, Defendant argues that two of the factors to be considered in assessing whether convenience and the interest of justice warrant transfer weigh in favor of transfer to the Middle District but concedes that the other factors are "neutral" in this case. (DE 28 at 9.) Defendant relies on "the forum's familiarity with the governing law" and "trial efficiency and the interests of justice, based on the totality of the circumstances" to support his contention. Plaintiff argues that neither of those factors warrant transfer, and that the other factors weigh in favor of denying transfer.

Defendant has not shown that convenience and the interest of justice support his requested transfer. First, in both the Motion and the reply, Defendant relies on the language in *Continental Grain Company v. The FBL-585*, 364 U.S. 19, 26 (1960), for the contention that "two cases involving precisely the same issues" should not be pending in

9

two district courts. (DE 28 at 8; DE 40 at 8.) But Defendant's reliance on *Continental Grain* is misplaced. There, the facts involved a barge, which sank after being partially loaded with the petitioner's products. *Cont'l Grain*, 364 U.S. at 20. The district court, and ultimately the Supreme Court, found that since the two cases at issue involved "precisely" the same fact-intensive issue—what caused the barge to sink—the cases presented a scenario where the same facts would be tried twice. That is not the situation here. The reasoning in *Continental Grain* militates against transfer where, as here, entirely different issues are raised in the different courts: one case considers the lawfulness of a federal regulatory scheme and the other considers the constitutionality of a state statute.

Moreover, Plaintiffs' choice of forum is afforded considerable deference given that the forum has a connection to the litigation and Plaintiffs are at home here. *See Robinson*, 74 F.3d at 260 (quoting *Howell*, 650 F.2d at 616); *see also Cellularvision Technology & Telecommunications, L.P.*, 2006 WL 2871858 *3 (S.D. Fla. Sept. 12, 2006) (according little weight to plaintiff's choice of forum "where . . . forum [was] not [plaintiff's] home forum and ha[d] little or no connection to the litigation"). NCLH has its principal, executive office in Miami, Florida. (DE 1 at ¶¶ 11−14.) And the August 2021 cruises that would set sail if the preliminary injunction is granted would set sail from Miami (as a substantial number of cruises do each year).

Turning to the factors relied on by Defendant, as one court has observed, the forum's familiarity with the governing law "is one of the least important factors in determining a motion to transfer, especially where no complex questions of foreign law are involved." *Posven, C.A. v. Liberty Mut. Ins. Co.*, 303 F. Supp. 2d 391, 405 (S.D.N.Y. 2004). Neither the Middle District nor this District is better suited than the other to

determine the legal questions at issue in this case.[5] *See, e.g.*, *United States Commodities Futures Trading Comm'n v. Hunterwise Commodities, LLC*, 2013 WL 12082737, at *3 (S.D. Fla. Feb. 12, 2013) ("[T]his [Familiarity with Governing Law] argument is unpersuasive . . . this Court and the Court in the Northern District of Illinois are equally familiar with the governing law of this matter."); *Raykovitz v. Elec. Builders, Inc.*, 2020 WL 4927479, at *7 (S.D. Ga. Aug. 21, 2020) (denying transfer finding that "a district court in Minnesota is no better suited to address Plaintiff's federal [Fair Labor Standards Act] claim than this Court.").

Finally, Defendant offers no reason in his Motion or his Reply why the last factor—trial efficiency and the interests of justice, based on the totality of the circumstances—weighs in his favor. In his Motion, prior to citing "convenience" as a basis for transfer to the Middle District, Defendant states "Defendant Rivkees is head of the Florida Department of Health, which has offices and performs substantial duties in the Middle District of Florida." (DE 28 at 8.) This representation is incomplete. The Florida Department of Health is a state department located in Florida's capital, Tallahassee, which is located in the Northern District of Florida. And just as the Florida Department of Health has subordinate offices in the Middle District, it has subordinate offices throughout Florida.[6] Having offered no reasons why the Middle District would be more convenient

---

[5] As Defendant states in his Motion, "this case is a purely legal challenge to a law passed in Tallahassee." (DE 28 at 9.)

[6] As the Department's website states:

> FDOH is comprised of a state health office (central office) in Tallahassee, with statewide responsibilities; Florida's 67 County Health Departments (CHDs); 22 Children's Medical Services (CMS) area offices; 12 Medical Quality Assurance (MQA) regional offices; nine Disability Determinations regional offices; and three public health laboratories. Facilities for the 67 CHDs are provided through partnerships with local county governments. These 67 CHDs have a total of 255

than the Southern District, given that Plaintiffs are all at home here, and Defendant's office is housed in the Northern District with subsidiary offices around the state, Defendant has not overcome the deference afforded Plaintiff's choice of forum. In fact, the transfer sought by Defendant would appear to *create* an inconvenience for more Parties and witnesses than it would resolve. *See Robinson*, 74 F.3d at 260 ("The district court found that transferring the case to Michigan would merely shift inconvenience from the defendants to the plaintiff, implying that the plaintiff's choice of forum was not outweighed by other factors. We see no abuse of discretion in that decision.").[7] As such, Defendant's Motion is DENIED on these grounds.

## IV.   CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** that Defendant's Expedited Motion to Transfer (DE 28) is **DENIED**.

**DONE AND ORDERED** in Chambers in Miami, Florida, this <u>8th</u> day of August 2021.

KATHLEEN M. WILLIAMS
UNITED STATES DISTRICT JUDGE

---

sites throughout the state, providing a variety of services, and ranging from small to large in location size.

About Us, Fla. Dept. of Health, http://www.floridahealth.gov/about/index.html (last visited Aug. 6, 2021).

[7] Defendant rightly notes that travel may not "even be necessary" in this case. (DE 40 at 8.) Because of the pandemic, different operational measures have been adopted by courts to protect the health and safety of participants. Courts are using technology to conduct virtual proceedings, such as this Court's August 6, 2021 virtual hearing on the motion for preliminary injunction. The ability to use videoconferencing for parties and witnesses undermines the argument regarding transferring the case for convenience.