## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| **NORWEGIAN CRUISE LINE HOLDINGS LTD.,** a Bermuda Company; **NCL (BAHAMAS) LTD.,** d/b/a NORWEGIAN CRUISE LINE**,** a Bermuda Company; **SEVEN SEAS CRUISES S. DE R.L.,** d/b/a REGENT SEVEN SEAS CRUISES, a Panama Limited Liability Company; **OCEANIA CRUISES S. DE R.L.,** d/b/a OCEANIA CRUISES, a Panama Limited Liability Company; <br><br> Plaintiffs, <br><br> v. <br><br> **SCOTT A. RIVKEES, M.D.,** State Surgeon General and Head of the Florida Department of Health, in his official capacity; <br><br> Defendant. | Case No. 1:21-cv-22492-KMW |

## PLAINTIFFS' OPPOSITION TO DEFENDANT'S
## MOTION TO DISMISS

John F. O'Sullivan
Olga Vieira
Quinn Emanuel Urquhart & Sullivan, LLP
2601 South Bayshore Drive, 15th Floor
Miami, FL 33133
(305) 439-5008
johnosullivan@quinnemanuel.com
olgavieira@quinnemanuel.com

Derek L. Shaffer*
William A. Burck*
Jonathan G. Cooper*
Quinn Emanuel Urquhart & Sullivan, LLP
1300 I Street NW, 9th Floor
Washington, DC 20005
(202) 538-8000
derekshaffer@quinnemanuel.com
williamburck@quinnemanuel.com
jonathancooper@quinnemanuel.com

*Appearing *pro hac vice*

*Attorneys for Plaintiffs Norwegian Cruise Line Holdings Ltd., NCL (Bahamas) Ltd., Seven Seas Cruises S. de R.L., and Oceania Cruises S. de R.L.*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES................................................................................................ iii

INTRODUCTION ............................................................................................................1

BACKGROUND ..............................................................................................................1

     A.    The Conditional Sailing Order And Implementing Instructions.............................1

     B.    NCLH's Vaccination Requirement..........................................................................3

     C.    The Ban...................................................................................................................4

     D.    This Lawsuit............................................................................................................5

LEGAL STANDARD ......................................................................................................5

ARGUMENT ...................................................................................................................5

I.      THE BAN DOES NOT ADVANCE ANY LEGITIMATE STATE INTERESTS .............6

II.     NCLH HAS ADEQUATELY PLEADED A FIRST AMENDMENT CLAIM...................7

III.    NCLH HAS ADEQUATELY PLEADED A DORMANT COMMERCE CLAUSE CLAIM................................................................................................................................8

IV.    NCLH HAS ADEQUATELY PLEADED A PREEMPTION CLAIM ............................11

V.     NCLH HAS ADEQUATELY PLEADED A SUBSTANTIVE DUE PROCESS CLAIM................................................................................................................................15

CONCLUSION................................................................................................................20

## TABLE OF AUTHORITIES

### Cases

*Antilles Cement Corp. v. Fortuño*,
    670 F.3d 310 (1st Cir. 2012) ........................................................................ 10

*Baude v. Heath*,
    538 F.3d 608 (7th Cir. 2008) ........................................................................11

*Bibb v. Navajo Freight Lines, Inc.*,
    359 U.S. 520 (1959) ...................................................................................... 9

*Budlong v. Graham*,
    488 F. Supp. 2d 1245 (N.D. Ga. 2006) ......................................................... 5

*Burstyn v. Miami Beach*,
    663 F. Supp. 528 (S.D. Fla. 1987) ............................................................... 20

*C & A Carbone, Inc. v. Town of Clarkstown, New York*,
    511 U.S. 383 (1994) ...................................................................................... 9

*Cloverland-Green Spring Dairies, Inc. v. Pennsylvania Milk Marketing Board*,
    298 F.3d 201 (3d Cir. 2002) ........................................................................11

*Cole v. Zucker*,
    2019 U.S. Dist. LEXIS 31714 (N.D.N.Y. Feb. 28, 2019) .............................. 15

*Conn v. Gabbert*,
    526 U.S. 286 (1999) ...................................................................................... 18

*Container Corp. of America v. Franchise Tax Board*,
    463 U.S. 159 (1983) ...................................................................................... 10

*County of Butler v. Wolf*,
    486 F. Supp. 3d 883 (W.D. Pa. 2020) .......................................................... 18

*Craigmiles v. Giles*,
    312 F.3d 220 (6th Cir. 2002) ........................................................................ 18

*Elizabeth Blackwell Health Center for Women v. Knoll*,
    61 F.3d 170 (3d Cir. 1995) ............................................................................ 13

*F.C.C. v. Fox Television Stations, Inc.*,
    556 U.S. 502 (2009) ...................................................................................... 13

*Feikema v. Texaco, Inc.*,
  16 F.3d 1408 (4th Cir. 1994) ........................................................................... 13

*Florida Transportation Services, Inc. v. Miami-Dade County*,
  703 F.3d 1230 (11th Cir. 2012) ................................................................... 9, 10

*Florida v. Becerra*,
  2021 WL 2514138 (M.D. Fla. June 18, 2021) .................................................. 3

*Florida v. Becerra*,
  No. 21-12243 (11th Cir. 2021) ......................................................................... 3

*Geier v. American Honda Motor Co.*,
  529 U.S. 861 (2000) ................................................................................. 5, 6, 11

*General Motors Corp. v. Abrams*,
  897 F.2d 34 (2d Cir. 1990) ............................................................................. 13

*Guertin v. State*,
  912 F.3d 907 (6th Cir. 2019),
  *cert. denied sub nom. City of Flint, Michigan v. Guertin*, 140 S. Ct. 933 (2020) ............ 15

*Investment Company Institute v. Commodity Futures Trading Commission*,
  720 F.3d 370 (D.C. Cir. 2013) ........................................................................ 13

*Japan Line, Ltd. v. Los Angeles County*,
  441 U.S. 434 (1979) ........................................................................................ 10

*JB Weld Co. v. Gorilla Glue Co.*,
  978 F.3d 778 (11th Cir. 2020) ........................................................................ 14

*Katz v. United States*,
  389 U.S. 347 (1967) ........................................................................................ 19

*Knight v. Grossman*,
  942 F.3d 336 (7th Cir. 2019) .......................................................................... 15

*Leaphart v. Prison Health Services, Inc.*,
  2010 WL 5391315 (M.D. Pa. Nov. 22, 2010) ................................................. 15

*Leeds v. Board of Dental Examiners of Alabama*,
  382 F. Supp. 3d 1214 (N.D. Ala. 2019) .......................................................... 11

*Lofton v. Secretary of Department of Children & Family Services*,
  358 F.3d 804 (11th Cir. 2004) ........................................................................ 16

*Mathews v. Lucas*,
  427 U.S. 495 (1976) ........................................................................................ 20

*Merrifield v. Lockyer*,
    547 F.3d 978 (9th Cir. 2008) ............................................................................ 18

*Mills v. Rogers*,
    2020 U.S. Dist. LEXIS 212247 (M.D. Pa. Nov. 13, 2020) .............................. 15

*National Foreign Trade Council v. Natsios*,
    181 F.3d 38 (1st Cir. 1999),
    *aff'd sub nom. Crosby v. National Foreign Trade Council*, 530 U.S. 363 (2000) ............ 10

*Odebrecht Construction, Inc. v. Prasad*,
    876 F. Supp. 2d 1305 (S.D. Fla. 2012) ............................................................ 10

*Otto v. City of Boca Raton, Florida*,
    981 F.3d 854 (11th Cir. 2020) ............................................................................ 8

*Pabon v. Wright*,
    459 F.3d 241 (2d Cir. 2006) ....................................................................... 15, 16

*Pike v. Bruce Church, Inc.*,
    397 U.S. 137 (1970) ............................................................................................ 8

*Railway Employees' Department v. Hanson*,
    351 U.S. 225 (1956) .......................................................................................... 18

*Raymond Motor Transportation, Inc. v. Rice*,
    434 U.S. 429 (1978) ............................................................................................ 9

*Renfroe v. Nationstar Mortgage, LLC*,
    822 F.3d 1241 (11th Cir. 2016) .......................................................................... 5

*Roberts v. U.S. Jaycees*,
    468 U.S. 609 (1984) .......................................................................................... 19

*Romer v. Evans*,
    517 U.S. 620 (1996) .......................................................................................... 18

*Smith v. Corizon Health Services*,
    2015 U.S. Dist. LEXIS 141998 (S.D.N.Y. July 31, 2015) .............................. 15

*Sorrell v. IMS Health Inc.*,
    564 U.S. 552 (2011) .......................................................................................... 15

*Southern Pacific Co. v. Arizona*,
    325 U.S. 761 (1945) ............................................................................................ 9

*Stormans Inc. v. Selecky*,
    844 F. Supp. 2d 1172 (W.D. Wash. 2012) ...................................................... 20

*Tyson v. Heckler*,
    727 F.2d 1029 (11th Cir. 1984) ........................................................................ 20

*United States Department of Agriculture v. Moreno*,
    413 U.S. 528 (1973) ........................................................................................ 19

*United States v. Locke*,
    529 U.S. 89 (2000) .......................................................................................... 12

*University of Texas v. Camenisch*,
    451 U.S. 390 (1981) ........................................................................................ 14

*Vance v. Bradley*,
    440 U.S. 93 (1979) .......................................................................................... 20

*Waldron v. Spicher*,
    954 F.3d 1297 (11th Cir. 2020) ........................................................................ 17

*Washington v. Glucksberg*,
    521 U.S. 702 (1997) .................................................................................... 15, 16

*West v. Warden, Commissioner, Alabama DOC*,
    869 F.3d 1289 (11th Cir. 2017) .......................................................................... 5

*White v. Lemacks*,
    183 F.3d 1253 (11th Cir. 1999) ........................................................................ 16

*White v. Napoleon*,
    897 F.2d 103 (3d Cir. 1990) ............................................................................ 15

*Williams v. McGee*,
    2020 U.S. Dist. LEXIS 74191 (M.D. Pa. Apr. 28, 2020) .................................... 15

*Williamson v. Mazda Motor of America, Inc.*,
    562 U.S. 323 (2011) ........................................................................................ 13

*Wollschlaeger v. Governor of Florida*,
    848 F.3d 1293 (11th Cir. 2017) .......................................................................... 8

**Federal Statutes**

42 U.S.C. § 264 ...................................................................................................... 12

**State Statutes**

Fla. Stat. § 381.00316 .................................................................................... 4, 6, 7, 8

**Regulations**

85 Fed. Reg. 16628-03 (Mar. 24, 2020) ........................................................................ 1

85 Fed. Reg. 44085-01 (July 21, 2020) ...................................................................... 13

85 Fed. Reg. 62732-01 (Oct. 5, 2020) .......................................................................... 1

85 Fed. Reg. 70153-01 (Nov. 4, 2020) ................................................................. 2, 12

**Other Authorities**

James M. McGoldrick, Jr., *The Dormant Commerce Clause: The Endgame-From Southern Pacific to Tennessee Wine & Spirits-1945 to 2019*,
40 Pace L. Rev. 44 (2020) .................................................................................... 10

**INTRODUCTION**

This Court has already effectively disposed of the arguments Defendant now makes in his motion to dismiss.   In granting Plaintiffs' motion for a preliminary injunction, Dkt. 43 ("Order"), this Court found that Plaintiffs (together, "NCLH") are likely to succeed on both their First Amendment and Dormant Commerce Clause Counts.   Order at 16–54.   The Court further found "compelling" NCLH's argument regarding conflict preemption, albeit while reserving further treatment for a later stage. *Id*. at 55.   It necessarily follows that Defendant's arguments for threshold dismissal fail; for the reasons already noted by the Court and briefly reiterated below, Defendant's motion to dismiss is due to be denied, at least in principal part.   The one count not yet addressed by the Court rests on Substantive Due Process.   For the reasons explained herein, that count too should withstand dismissal based on the extraordinary combination of circumstances identified in NCLH's complaint, which point to a business being forced to put its passengers and crew in gratuitous peril solely for the sake of serving governmental caprice.

**BACKGROUND**

**A.   The Conditional Sailing Order And Implementing Instructions**

On March 14, 2020, CDC issued a "No Sail Order and Suspension of Further Embarkation" ("No Sail Order"), the first of a series of cruise restrictions from CDC.   Complaint ("Compl."), Dkt. 1, ¶ 22; *see also* Order at 8 (citing 85 Fed. Reg. 16628-03, 16631 (Mar. 24, 2020)).   The No Sail Order was then extended three times before expiring on October 31, 2020.   Compl. ¶ 23; *see also* Order at 8; 85 Fed. Reg. 62732-01, 62739 (Oct. 5, 2020).

CDC issued a "Framework for Conditional Sailing and Initial Phase COVID-19 Testing Requirements for Protection of Crew" ("Conditional Sailing Order" or "CSO"), on October 30,

2020 to specify a framework for re-opening.   Compl. ¶ 24; *see also* Order at 8; 85 Fed. Reg.

70153-01 (Nov. 4, 2020).   The CSO

> established a four-step framework for a "phased resumption of cruise ship
> passenger operations."   The steps include: (1) establishing "laboratory testing of
> crew onboard cruise ships in the U.S. waters"; (2) performing "simulated voyages
> designed to test a cruise ship operators' ability to mitigate COVID-19 on cruise
> ships"; (3) completing "a certification process"; and (4) resuming restricted
> passenger voyages in a manner that mitigates the spread of COVID-19.

Order at 8 (quoting 85 Fed. Reg. at 70157); *see* Compl. ¶¶ 26–34.   The CSO provided that "CDC

may enforce any of the provisions of this framework through additional orders published in the

Federal Register and issue additional technical instructions as needed."   85 Fed. Reg. at 70158.

On April 28, 2021, CDC issued a "Dear Colleague Letter" "commit[ting] to the phased

resumption of passenger operations around mid-summer and addressing scientific developments

since CDC issued the Conditional Sailing Order, including the availability of COVID-19

vaccines."   Compl. ¶ 41.   CDC previewed that operators could obviate simulated voyages by

attesting that a certain percentage of crew and passengers have been verified as fully vaccinated

prior to sailing.   *Id.* ¶ 42.   CDC confirmed the same in its "Technical Instructions for Simulated

Voyages by Cruise Ship Operators under CDC's Framework for Conditional Sailing Order"

("Technical Instructions") issued on May 14, 2021.   *Id.* ¶ 43.

On May 26, 2021, the CDC issued an operations manual ("Operations Manual"), "setting

forth mandatory COVID-19 protocols for simulated and restricted passenger voyages" but

"offer[ing] more lenient, alternative operational possibilities for ships with at least 95 percent

vaccinated crew members and 95 percent vaccinated passengers."   Order at 9 (citing Dkt. 3-2 at

19–32); *see* Compl. ¶ 44–47.   For instance, operators need not collect SARS-CoV-2 viral testing

for "fully vaccinated passengers," Compl. ¶ 45, and the Operations Manual's "requirements on

physical distancing and food services" are non-binding recommendations, *id.* ¶ 47; Order at 9.

To challenge the Conditional Sailing Order, Florida sued CDC on April 8, 2021. *Florida v. Becerra*, 2021 WL 2514138, at *4 (M.D. Fla. June 18, 2021). The U.S. District Court for the Middle District of Florida granted Florida's motion for a preliminary injunction on June 18, 2021. *Id.* at *51. CDC sought a stay pending appeal, which the Eleventh Circuit Court of Appeals initially granted. *See Florida v. Becerra*, No. 21-12243 (11th Cir. July 17, 2021). Several days later, however, the panel vacated its earlier order *sua sponte* and denied the request for a stay. *Becerra*, No. 21-12243 (11th Cir. July 23, 2021).

## B. NCLH's Vaccination Requirement

"After nearly a year and half without sailing, NCLH intends to resume sailing from Florida," as NCLH did on August 15, 2021 by launching the *Norwegian Gem*. Order at 11; *see* Compl. ¶ 94. "[T]he CDC approved the Norwegian Gem's application for a Conditional Sailing Certificate" on July 9, 2021. Order at 11; *see* Compl. ¶ 76.[1] NCLH attested that 95% of the Norwegian Gem's passengers would be vaccinated instead of undertaking a simulated voyage. Compl. ¶ 75; *see* Order at 11. "Starting August 15, 2021, the Norwegian Gem will offer several passenger voyages from Florida to the Bahamas, Honduras, Belize, Mexico, the Dominican Republic, the U.S. Virgin Islands, and the British Virgin Islands." Order at 11; *see* Compl. ¶ 73. Over 1,200 passengers "booked tickets for the Norwegian Gem's August 15 voyage." Order at 11; *see* Compl. ¶ 94.

For the safety of all concerned and to comply with its attestations to CDC—submitted under penalty of perjury—that 95% of the passengers on the Norwegian Gem would be vaccinated, NCLH "requir[es] all passengers to provide some documentation proving their COVID-19 vaccination status before boarding." Order at 12; *see* Compl. ¶¶ 120–21. "Obtaining vaccine

---

[1]    Internal citations, quotation marks, and alterations are omitted from citations in this memorandum unless otherwise noted.

documentation is the only adequate and reliable way of verifying a person's vaccination status." Compl. ¶ 119; *see also* Order at 12.

### C. The Ban

"On April 2, 2021, Florida Governor Ron DeSantis issued an executive order, prohibiting businesses in Florida from 'requiring patrons or customers to provide any documentation certifying COVID-19 vaccination or post-transmission recovery to gain access to, entry upon, or service from the business.'"   Order at 12–13 (quoting Fla. Exec. Order No. 21-81 (Apr. 2, 2021)); *see* Compl. ¶ 58.   The Florida Legislature thereafter passed, and Governor DeSantis signed into law, a statute prohibiting Florida businesses from "requir[ing] patrons or customers to provide any documentation certifying COVID-19 vaccination or post-infection recovery to gain access to, entry upon, or service from the business operations in this state," subject to the imposition of a fine not exceeding $5,000 per violation.   Fla. Stat. § 381.00316(1), (4) (the "Ban").

The Ban "does not prohibit businesses from requiring employees to provide COVID-19 vaccination documentation."   Order at 13; *see* Compl. ¶ 133.   Nor (as Defendant has conceded) does the Ban prohibit businesses from asking customers to "discuss" their vaccination status orally or even "request[ing] COVID-19 vaccination documentation."   Motion to Dismiss ("Mot."), Dkt. 39, at 14 (emphasis omitted).   The Ban also does not prohibit businesses from excluding customers who have not been vaccinated or decline to answer the question when asked.   And it does not prevent businesses from publicly broadcasting their customers' vaccination status or from requiring vaccination documentation for other diseases.

### D. **This Lawsuit**

NCLH filed its complaint and a motion for a preliminary injunction on July 13, 2021. Dkt. 1, 3.   After moving to transfer, Dkt. 28., Defendant opposed the motion for a preliminary injunction, Dkt. 32, and later moved to dismiss, Dkt. 39.

This Court granted a preliminary injunction, Dkt. 43, and denied the motion to transfer, Dkt. 44, on August 8, 2021.   The Court held that NCLH is likely to succeed on the merits of its First Amendment and Dormant Commerce Clause claims.   Order at 16–54.   The Court declined to "address [Plaintiffs'] Preemption claim at this stage" but observed that "Plaintiffs have raised compelling arguments as to why the Statute is conflict preempted by the CDC's guidelines."   *Id.* at 55 (citing *Geier v. Am. Honda Motor Co.*, 529 U.S. 861 (2000)).   The Court also concluded that NCLH showed that it would suffer irreparable harm absent an injunction, *id.* at 55–58, and that the equities and the public interest weighed in favor of an injunction, *id.* at 58–59.

## LEGAL STANDARD

"When considering a motion to dismiss, [the court] accept[s] as true the facts as set forth in the complaint and draw[s] all reasonable inferences in the plaintiff's favor."   *West v. Warden, Comm'r, Alabama DOC*, 869 F.3d 1289, 1296 (11th Cir. 2017).   "To survive a motion to dismiss, a complaint need only present sufficient facts, accepted as true, to state a claim to relief that is plausible on its face."   *Renfroe v. Nationstar Mortg., LLC*, 822 F.3d 1241, 1243 (11th Cir. 2016).

## ARGUMENT

Because the Court has already determined that Plaintiffs are likely to succeed on the merits of their First Amendment and Dormant Commerce Clause claims, the motion should be denied as to those claims.   *See, e.g.*, *Budlong v. Graham*, 488 F. Supp. 2d 1245, 1247 (N.D. Ga. 2006) ("Because Defendant's motion to dismiss did not raise any arguments that had not already been

rejected, as a matter of law, in the course of the Court's preliminary injunction analysis, that motion was denied."). The Court likewise recognized that NCLH "raised compelling arguments as to why the Statute is conflict preempted by the CDC's guidelines." Order at 55 (citing *Geier*, 529 U.S. 861). Accordingly, neither should that claim be dismissed at this stage. Finally, NCLH has adequately pleaded a substantive due process claim based on its right to make informed medical decisions without undue government interference and its right to pursue its chosen occupation free from life-threatening impositions that do not even rationally relate to a legitimate state interest.

## I.     THE BAN DOES NOT ADVANCE ANY LEGITIMATE STATE INTERESTS

There is telling disconnect between the purported defense of the law and the express terms of the Ban itself. Contrary to Defendant's revisionist account, the Ban neither prohibits "discrimination" against the unvaccinated, nor protects their "privacy." Mot. at 16. To the contrary, the Ban permits NCLH and all other businesses to inquire, ascertain, and account for vaccination status in myriad ways at the expense of unvaccinated persons. As this Court observed, "Section 381.00316 does not actually advance the objectives of protecting 'medical privacy' and 'discrimination' against unvaccinated individuals in any meaningful way." Order at 44. All this law does is prohibit one particular means—albeit the most truthful means—of ascertaining customers' vaccination status when NCLH enforces its concededly legitimate policy requiring that customers be vaccinated prior to entry. Specifically, the law prohibits businesses from "requir[ing] patrons or customers to provide ***any documentation certifying*** COVID-19 vaccination or post-infection recovery to gain access to, entry upon, or service from the business operations in this state"—and only that. Fla. Stat. § 381.00316(1) (emphasis added).

Such a *sui generis* law reflects gerrymandering that poses obvious First Amendment and Dormant Commerce Clause offenses as applied to this particular cruise line, and does so to no

good end.   Especially considering that any benefits of the law are illusory, or, at best, negligible, NCLH's challenge readily survives Defendant's motion to dismiss.   By no means can Florida's motion succeed on the substantive theory now relied upon, which seems predicated upon revising the law into a prohibition against any and all inquiries into vaccination status and discrimination based on same.   To defeat the instant motion to dismiss, it suffices to note that the law now effectively posited by the Defendant differs fundamentally from the actual law that the Legislature has passed and that Plaintiffs have challenged before this Court.   As such, Defendant lacks any persuasive rejoinder to this Court's thoroughgoing explanation of why the Ban is ostensibly invalid on multiple grounds.

## II.   NCLH HAS ADEQUATELY PLEADED A FIRST AMENDMENT CLAIM

As this Court noted in its Order granting the preliminary injunction, Florida's Ban is "a content-based restriction because, on its face, it draws distinctions based on the message of speech," prohibiting businesses from requiring "'documentation certifying COVID-19 vaccination or post-infection recovery'" while permitting businesses to demand "documentation of a negative COVID-19 test or any other type of medical or informational documentation."   Order at 17 (quoting Fla. Stat. § 381.00316(1)).

Contrary to Defendant's argument, the Ban cannot "evade First Amendment review" as a regulation of conduct.   *Id.* at 25.   The Ban "restricts the free flow of information by rendering the exchange [of COVID-19 vaccination documentation] permissible in some circumstances but impermissible in others," *id.* at 22, and "singles out and disfavors only one type of speech," *id.* at 24.   Nor does the Ban prohibit "businesses from requiring patrons to verify their vaccination status"; instead, it forbids "businesses from requiring customers to verify their vaccination status with '*documentation certifying COVID-19 vaccination*'" while permitting them to "require customers to provide *oral verification*" of the same information.   *Id.* at 26 (quoting Fla. Stat.

§ 381.00316(1)).   Thus, "while there are multiple ways of communicating the same information (vaccination status), some expressions are favored (oral verification) while others are disfavored (COVID-19 vaccination documents)," thereby confirming that the Ban targets expression rather than conduct.   *Id.* at 27.

Lest there be any doubt, the Eleventh Circuit has cautioned that "'characterizing speech as conduct is a dubious constitutional enterprise,'" *id.* (quoting *Otto v. City of Boca Raton, Fla.*, 981 F.3d 854, 865 (11th Cir. 2020)), that can be "unprincipled" and "susceptible to manipulation," *id.* (quoting *Wollschlaeger v. Governor of Fla.*, 848 F.3d 1293, 1308 (11th Cir. 2017) (en banc)). That admonition is apt here:   If Defendant's framing were accepted, "laws that restrict bookstores from *selling* biographies or prohibit video rental shops from *renting* documentaries also could evade First Amendment scrutiny under the logic that they merely affect 'what businesses cannot do' and 'not what they may or may not say.'"   *Id.* (quoting Dkt. 32 at 16).

As a content-based restriction on speech, the Ban should be subject to strict scrutiny—but even assuming the Ban is subject only to intermediate scrutiny, it fails such scrutiny:   Defendant has not come close to meeting his burden to show that the Ban "is justified by" and advances a "substantial government interest," or that "it is appropriately tailored."   *Id.* at 30, 38.   Per the Court's prior conclusions, the motion to dismiss the First Amendment count should be denied.

## III.   NCLH HAS ADEQUATELY PLEADED A DORMANT COMMERCE CLAUSE CLAIM

Even setting aside the First Amendment, the Court separately well explained why the Ban cannot withstand requisite balancing under *Pike v. Bruce Church, Inc.*, 397 U.S. 137 (1970). "Defendant fail[ed] to articulate *why* [medical privacy and preventing 'discrimination' against the unvaccinated] are legitimate local purposes or *how* they weigh against any burdens that the Statute imposes on interstate commerce."   Order at 43.   And "Defendant's mere assertion" of these

interests "*without more*, fails to satisfy the dictates of *Pike* and its progeny." *Id.*; *see also Fla. Transp. Servs., Inc. v. Miami-Dade Cty.*, 703 F.3d 1230, 1261 (11th Cir. 2012). Nor does the Ban "actually advance" these objectives "in any meaningful way." Order at 44; *see also Raymond Motor Transp., Inc. v. Rice*, 434 U.S. 429, 445–48 (1978) (striking down Wisconsin highway trailer-length regulation where Wisconsin "failed to make even a colorable showing that its regulations contribute to highway safety").

On the other side of the scale, Plaintiffs showed that the Ban "will directly affect their abilities to operate the *Norwegian Gem* and other vessels." Order at 45. Indeed, "nearly every country and port that Plaintiffs intend to set sail to during the remainder of the year have varying, often complicated requirements." *Id.* at 46. "If Plaintiffs abandon their plan to require all passengers to present documentary proof of vaccination, and passengers must instead be subjected to an array of diverse quarantining and testing requirements, it will impede the ability of Plaintiffs to manage the business of vessels at foreign and interstate ports and lead to incalculable and unpredictable delays in travel." *Id.* at 52; *see also C & A Carbone, Inc. v. Town of Clarkstown, N.Y.*, 511 U.S. 383, 407 (1994) (O'Connor, J., concurring in the judgment) (citing *S. Pac. Co. v. Arizona*, 325 U.S. 761, 772 (1945); *Bibb v. Navajo Freight Lines, Inc.*, 359 U.S. 520, 528 (1959)) (conflicts between the laws of different jurisdictions offend the Dormant Commerce Clause).

Notably, there are multiple reasons why scrutiny of the State's purported rationales should be especially searching in this case. ***First***, an on-point federal statute "can be a factor in the [*Pike*] balancing test" even when the law is not preemptive, "as further evidence that Congress believed that a subject was either one of national importance needing uniformity or a local matter needing diversity of regulation." James M. McGoldrick, Jr., *The Dormant Commerce Clause: The Endgame-From Southern Pacific to Tennessee Wine & Spirits-1945 to 2019*, 40 Pace L. Rev. 44,

79 (2020) (citing *S. Pac. Co.*, 325 U.S. at 769); *see also Odebrecht Constr., Inc. v. Prasad*, 876 F. Supp. 2d 1305, 1318 (S.D. Fla. 2012) ("A state law 'at variance with federal policy'" violates the Dormant Commerce Clause if it "'violates a clear federal directive.'  As the Supreme Court observed," this is "'essentially a species of preemption analysis.'" (quoting *Container Corp. of Am. v. Franchise Tax Bd.*, 463 U.S. 159, 194 (1983)); *Nat'l For. Trade Council v. Natsios*, 181 F.3d 38, 67–68 (1st Cir. 1999), *aff'd sub nom. Crosby v. Nat'l For. Trade Council*, 530 U.S. 363 (2000).   Section 264 shows that Congress intended that ships that risk introducing communicable diseases into the United States should be subject to federal regulation.   That makes sense: Communicable diseases like COVID-19 do not abide by state boundaries, and COVID-19 outbreaks in one State can spread to others with devastating alacrity.

*Second*, "the dormant Foreign Commerce Clause places stricter constraints on states than its interstate counterpart."   *Antilles Cement Corp. v. Fortuño*, 670 F.3d 310, 328 (1st Cir. 2012). "The need for national uniformity in foreign affairs is important, and therefore state laws that burden foreign trade necessarily deserve closer scrutiny than those that burden only interstate commerce."   *Id.* at 327–28; *see Japan Line, Ltd. v. Los Angeles Cty.*, 441 U.S. 434, 448 (1979). The Eleventh Circuit has previously recognized that "[t]he Port of Miami is one of the busiest ports in the nation, fully engaged in interstate commerce, ***predominantly foreign*** commerce."   *Fla. Transp. Servs.*, 703 F.3d at 1235 (emphasis added).   Cruises thus bring concerns about international relations to their zenith:   Most of NCLH's cruises travel in international waters and many hail in foreign ports.   Florida's Ban should therefore be subject to the exacting scrutiny that specially attaches to burdens on foreign commerce.

Even if the Court had not already decided that NCLH is likely to succeed on its Dormant Commerce Clause claim, that claim would not be amenable to dismissal at this stage.   This Court

correctly recognized that "[t]he *Pike* balancing test is a fact-sensitive inquiry."   Order at 42 (collecting cases).   For that reason, courts often deny motions to dismiss *Pike* claims as premature.   *See, e.g.*, *Leeds v. Bd. of Dental Examiners of Ala.*, 382 F. Supp. 3d 1214, 1243–44 (N.D. Ala. 2019), *vacated in unrelated part*, 2019 WL 1696845 (N.D. Ala. Apr. 17, 2019); *see also Cloverland-Green Spring Dairies, Inc. v. Pa. Milk Mktg. Bd.*, 298 F.3d 201, 216 (3d Cir. 2002) ("[T]he defendants cannot simply rely on the Milk Law's stated purpose.   They must provide evidence that the wholesale price floors have the benefits contemplated by the General Assembly."); *Baude v. Heath*, 538 F.3d 608, 612 (7th Cir. 2008) ("Any balancing approach, of which *Pike* is an example, requires evidence.").   In sum, dismissal of the Dormant Commerce Clause count should be altogether beyond Defendant's reach.

## IV.   NCLH HAS ADEQUATELY PLEADED A PREEMPTION CLAIM

Dismissal of NCLH's preemption claims is likewise unwarranted.   This Court has already recognized that NCLH "raised compelling arguments as to why the Statute is conflict preempted by the CDC's guidelines."   Order at 55 (citing *Geier*, 529 U.S. 861).   That observation alone suffices to foreclose threshold dismissal.   Most of Defendant's arguments are predicated on invalidating CDC's framework—arguments that CDC has well answered in defending in the Eleventh Circuit and need not be belabored here.   *See, e.g.*, Defs.' Mot. for a Stay Pending Appeal, *Florida v. Becerra*, No. 21-12243 (11th Cir. July 7, 2021) ("CDC Stay Motion").   There certainly is no reason to dismiss NCLH's claim based on Judge Merryday's preliminary conclusions *now*, before the Eleventh Circuit has weighed in with its own guidance.

Defendant errs in arguing that "the Court must apply a presumption against preemption." Mot. at 5.   The "'assumption' of nonpre-emption is not triggered when the State regulates in an area where there has been a history of significant federal presence."   *United States v. Locke*, 529

U.S. 89, 108 (2000).   Thus, when "state laws . . . bear upon *national and international maritime commerce*, . . . there is no beginning assumption that concurrent regulation by the State is a valid exercise of its police powers."   *Id.* (emphasis added).   "Rather, [the court] must ask whether the local laws in question are consistent with the federal statutory structure, which has as one of its objectives a uniformity of regulation for maritime commerce."   *Id.*   As applied to NCLH, it is clear that Florida's law bears upon national and international maritime commerce.   And 42 U.S.C. § 264 has uniformity as one of its objects because contagious diseases like COVID-19 can spread quickly and fluidly from one State to another, as the current pandemic has demonstrated all too vividly.   As such, no "presumption" against preemption applies in this case.

To the extent that CDC's larger framework is valid, Defendant's preemption arguments crumble.   Although Defendant claims that neither the CSO, the Technical Instructions, nor the Operations Manual preempt Florida law, Mot. at 6–8, he whistles past the statutory and regulatory provisions that preempt conflicting state law.   *See* 42 U.S.C. § 264(e); 85 Fed. Reg. at 70158.   Nor does Defendant's other nit-picking disable CDC's on-point, operative guidance.   Defendant argues otherwise, but CDC has authority under the CSO to permit highly vaccinated voyages in lieu of simulated voyages:   The CSO authorizes CDC to "issue additional requirements . . . *relating to* a cruise ship operator's processes and procedures for conducting and evaluating a simulated voyage," and affording operators an option for achieving the objectives of simulated voyages without resorting to same plainly "relat[es]" thereto.   85 Fed. Reg. at 70160 (emphasis added).   Nor is the absence of notice-and-comment rulemaking, publication in the Federal Register, or mathematical precision problematic here.   Exigencies and developments surrounding COVID-19 (including the advent of vaccines) have been fast-evolving; only by reacting quickly could CDC keep pace while taking due account, consistent with its wide, expert discretion.

*F.C.C. v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009); *Inv. Co. Inst. v. Commodity Futures Trading Comm'n*, 720 F.3d 370, 381 (D.C. Cir. 2013).    Moreover, "in appropriate circumstances, federal agency action taken pursuant to statutorily granted authority short of formal, notice and comment rulemaking may also have preemptive effect over state law."   *Holk v. Snapple Bev. Corp.*, 575 F.3d 329, 340 (3d Cir. 2009); *see, e.g.*, *Elizabeth Blackwell Health Ctr. for Women v. Knoll*, 61 F.3d 170, 181–82 (3d Cir. 1995) (HHS interpretive rule); *Feikema v. Texaco, Inc.*, 16 F.3d 1408, 1418 (4th Cir. 1994) (EPA consent order); *Gen. Motors Corp. v. Abrams*, 897 F.2d 34, 39 (2d Cir. 1990) (FTC consent order).

Most fundamentally, Defendant cannot gainsay the conflict between the Ban and CDC regulations specifically as applied to NCLH.    He claims there is "no indication" that highly-vaccinated voyages are crucial to CDC's "full purposes" or "that it is even important to the CDC that cruise lines have this option."    Mot. at 7.    To the contrary, however, the only other option, simulated voyages, is one that Florida describes as "a prohibition in practice" that "set[s] the business up for certain failure."    Fla.'s Resp., *Florida v. Becerra*, No. 21-12243, at 9 (11th Cir. July 12, 2021).    Moreover, CDC was expressly preoccupied with the lack of a vaccine in extending the No Sail Order as well as in the CSO itself.    85 Fed. Reg. 44085-01, 44085–86 (July 21, 2020); 85 Fed. Reg. at 62732; 85 Fed. Reg. at 70154.    When vaccines arrived, CDC relaxed numerous restrictions for highly-vaccinated voyages and passengers, confirming that these other measures were in the nature of interim stopgaps.    *See* Compl. ¶¶ 42–47.    Unlike in *Williamson v. Mazda Motor of Am., Inc.*, 562 U.S. 323, 332–36 (2011), therefore, CDC has indicated that the vaccination option is important, and, if anything, preferred.    Certainly there is no dispute that CDC afforded the highly-vaccinated option that NCLH has elected, nor is there dispute that vaccine documentation is the only reliable mode of pursuing that option, and the mode on which

NCLH has predicated its federal certification.   Compl. ¶¶ 117–19.   That suffices to trigger preemption under settled law—even as Defendant "reserve[s] the right to contest its validity before the Supreme Court."   Mot. at 5 n.3.

Far from "disclaim[ing]" preemption on NCLH's facts, *id*. at 8, CDC in the wake of this suit agreed that Florida "has undermined the cruise industry's ability to take advantage of the flexibility that the CDC provides for vaccinated passengers and highly vaccinated cruises." Reply, *Florida v. Becerra*, No. 21-12243, at 5 (11th Cir. July 13, 2021); *see also* CDC Stay Motion at 14 ("Florida has actively impeded the cruise industry's ability to conduct safe operations . . . .").

Finally, the Middle District's preliminary injunction neither defeats NCLH's preemption claim nor indicates lack of ripeness.   Mot. at 13.   Defendant does not deny that the preliminary injunction reflects only a "preliminary assessment of likelihood of success [that] is not precedent" and does not "take[] Congress's statute or CDC's regulations off the books."   Dkt. 3 at 10 (citing *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981); *JB Weld Co. v. Gorilla Glue Co.*, 978 F.3d 778, 794 (11th Cir. 2020)).   Moreover, NCLH vessels are "scheduled to travel to U.S. territories, such as Puerto Rico and the U.S. Virgin Islands," where they would be subject to the Conditional Sailing Order and beyond the scope of Judge Merryday's injunction, which is confined to Florida. Order at 48; Compl. ¶ 63.   Last, NCLH has certified to CDC under penalty of perjury that it will be verifying its passengers' vaccination status, as NCLH plans to do specifically by reviewing their vaccination documentation.   Compl. ¶¶ 75, 120–21.   Because Judge Merryday's preliminary injunction does not go so far as deleting or rewriting those certifications, NCLH still has every reason to continue abiding by its federal submissions and commitments.   Therefore, even if the preliminary injunction were to be finally upheld (which it hasn't been), NCLH still faces the same conflict between Florida's Ban and legal compliance in jurisdictions where federal

law remains operative.   Because that conflict exists now, NCLH's preemption claim is ripe and deserves ultimately to be adjudicated on its merits.

## V.     NCLH HAS ADEQUATELY PLEADED A SUBSTANTIVE DUE PROCESS CLAIM

Last, substantive due process is implicated under the extraordinary (and, indeed, unprecedented) circumstances presented by this case, and NCLH's fourth count should proceed to ultimate adjudication on the merits alongside the others.

The Fourteenth Amendment guarantees a "constitutional right to medical information." *Pabon v. Wright*, 459 F.3d 241, 250 (2d Cir. 2006); *see id.* at 246 (recognizing a substantive due process "right to medical information" that includes a "right to such information" as is "necessary to make an informed decision regarding medical treatment"); *accord*, *e.g.*, *Knight v. Grossman*, 942 F.3d 336, 342 (7th Cir. 2019); *White v. Napoleon*, 897 F.2d 103, 113 (3d Cir. 1990); *Mills v. Rogers*, 2020 U.S. Dist. LEXIS 212247, at *13–14 (M.D. Pa. Nov. 13, 2020); *Williams v. McGee*, 2020 U.S. Dist. LEXIS 74191, at *15 (M.D. Pa. Apr. 28, 2020); *Cole v. Zucker*, 2019 U.S. Dist. LEXIS 31714, at *19 (N.D.N.Y. Feb. 28, 2019); *Smith v. Corizon Health Servs.*, 2015 U.S. Dist. LEXIS 141998, at *7 (S.D.N.Y. July 31, 2015); *Leaphart v. Prison Health Servs., Inc.*, 2010 WL 5391315, at *7 (M.D. Pa. Nov. 22, 2010); *see also Guertin v. State*, 912 F.3d 907, 919 (6th Cir. 2019), *cert. denied sub nom. City of Flint, Michigan v. Guertin*, 140 S. Ct. 933 (2020); *Washington v. Glucksberg*, 521 U.S. 702, 720 (1997).

This right to access vital medical information without undue government interference applies outside the prison context.   After all, the principle that "in medicine, information is power" is not limited to prisons.   *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 578 (2011).   And just as refusing to provide medical information to prisoners amounts to "state action" for medical decisions that "occur in the prison setting," Florida's restriction of NCLH's access to important medical information by forbidding it from requiring COVID-19 vaccine documentation from

passengers is "state action." *Pabon*, 459 F.3d at 249.   This right to information without undue interference by the state has already been recognized by courts, so Defendant's argument that it is a "new" fundamental right is misplaced.   As other courts have implicitly recognized, the right to sufficient information to make medically informed decisions is "deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty." *Glucksberg*, 521 U.S. at 721.

The Ban violates NCLH's fundamental right to adequate information from which to make medically informed decisions because it actively interferes with NCLH's ability to receive critical information from its passengers.   By restricting access to vaccine documentation on voluntary terms, the State has substantially burdened NCLH's ability to make properly informed decisions about multiple important safety issues.   As alleged in the complaint, such documentation affords the only means by which NCLH can verify how many of its passengers are vaccinated.   Compl. ¶¶ 82–83, 87, 96, 159.   As such, the Ban is subject to strict scrutiny, *see Glucksberg*, 521 U.S. at 720; *Lofton v. Sec'y of Dep't of Child. & Fam. Servs.*, 358 F.3d 804, 815 (11th Cir. 2004), which it cannot come close to satisfying.

Florida's Ban also violates NCLH's substantive due process rights because it causes harm—increasing risk of COVID-19 exposure—in a way that is arbitrary and shocks the conscience.   As Defendant acknowledges, "state and local government officials violate the substantive due process rights of individuals not in custody only when those officials cause harm by engaging in conduct that is 'arbitrary, or conscience shocking, in a constitutional sense.'" *White v. Lemacks*, 183 F.3d 1253, 1259 (11th Cir. 1999).   Although "that standard is to be narrowly interpreted and applied," it is met here.   *Id.*   By alleging Florida has deprived NCLH of the information necessary to protect itself and others from gratuitous COVID-19 exposure

against the backdrop of a deadly pandemic—and for no legitimate reason—NCLH has adequately pleaded that the State acted arbitrarily and in a way that shocks the conscience.

Contrary to Defendant's instant argument, NCLH adequately pleaded that Florida has acted with deliberate indifference.   Deliberate indifference has three elements:  "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; and (3) by conduct that is more than negligence."   *Waldron v. Spicher*, 954 F.3d 1297, 1308 n.3 (11th Cir. 2020).   NCLH has pleaded facts to support a plausible inference as to each of these elements.   Given the severity and pervasiveness of the pandemic, it is reasonable to infer that the relevant actors subjectively knew of, and chose to disregard, the risk of serious harm if the Ban applied to cruise ships.   And Florida's decision to enact the Ban was *intentional*, not merely the result of "negligence."

Defendant's reliance on the Healthy Sail Panel does not alter the outcome.   *See* Mot. at 18–19.   Although the Panel concluded that protocols such as testing, physical distancing, masking, and supervised off-board excursions would help "protect passengers and crew against the risk of transmission," Dkt. 3-4 at 98–99, that predated both the ready availability of vaccines and the advent of new and deadly variants, *see* Compl. ¶¶ 41, 78; *see also* Dkt. 35-2 ¶¶ 2–5.   By no means does that earlier recommendation change the facts—properly alleged in the complaint and readily proved—that verifying vaccination is best for "maximizing onboard safety" and that "[r]isk of exposure to COVID-19 will invariably tick up if NCLH is denied the ability to verify through documentation that all passengers have been fully vaccinated."   *See* Compl. ¶¶ 82–83. So even if *relatively* "safe cruising could resume before vaccines even were available," Mot. at 19, it "shock[s] the conscience," *White*, 183 F.3d at 1258, for Florida to gratuitously strip away the best way for NCLH to protect against COVID-19 today—especially when Florida's Ban does nothing to further any purportedly substantial state interests.   The constitutional problem posed

by Florida's Ban is the same one that would be posed if, say, Florida on its whim commanded NCLH to discard life vests or to puncture lifeboats so as to place passengers' lives and safety at gratuitous risk.

Relatedly, the Ban denies NCLH's right to support itself through its chosen occupation by offering passengers the cruise experience they desire.   Compl. ¶ 157; *see Cty. of Butler v. Wolf*, 486 F. Supp. 3d 883, 920 (W.D. Pa. 2020); *see also Railway Emps.' Dep't v. Hanson*, 351 U.S. 225, 234 (1956) ("It is said that the right to work, which the Court has frequently included in the concept of 'liberty' within the meaning of the Due Process Clauses may not be denied by the Congress."); *Conn v. Gabbert*, 526 U.S. 286, 291–92 (1999) ("[T]his Court has indicated that the liberty component of the Fourteenth Amendment's Due Process Clause includes some generalized due process right to choose one's field of private employment . . . .").   Courts have struck down restrictions on practicing a chosen occupation even under rational-basis review when the restriction "is not animated by a legitimate governmental purpose."   *Craigmiles v. Giles*, 312 F.3d 220, 229 (6th Cir. 2002); *cf. Merrifield v. Lockyer*, 547 F.3d 978, 991 (9th Cir. 2008) (invalidating occupational licensing scheme under rational-basis review where the scheme's rationale was "so weak that it undercut[] the principle of non-contradiction").

Even assuming the Ban is subject only to rational-basis review, it cannot withstand scrutiny under even that deferential standard.   Under rational-basis review, a law may be struck down if it is "so discontinuous with the reasons offered for it" that "it lacks a rational relationship to legitimate state interests."   *Romer v. Evans*, 517 U.S. 620, 632 (1996).   Here, the Ban does not further any legitimate state interest—or even rationally relate to one.   To begin, the Ban serves no state interest that is legitimate.   Defendant asserts that the Ban serves the State's interest in "preventing discrimination in the marketplace" as well as "medical privacy."   Mot. at 19.   But,

as this Court noted in its preliminary injunction order, "Defendant cites to no relevant authority to support his claim that these objectives constitute legitimate state interests."   Order at 44.

Defendant argues that *Katz v. U.S.*, 389 U.S. 347 (1967) and *Roberts v. U.S. Jaycees*, 468 U.S. 609 (1984), establish that "medical privacy" and "avoiding discrimination" against the unvaccinated are legitimate interests.   Mot. at 16; *see id.* at 19.   But "[t]hese cases provide no support for Defendant's position."   Order at 31–32 n.36.   *Katz*, which held that "electronically listening and recording a private conversation in a telephone booth constituted a search and seizure under the Fourth Amendment," never considered the privacy interest asserted here.   *Id.*   And *Roberts* held simply that "a state law that protected women from gender discrimination in places of public accommodation served a compelling state interest," without considering any claimed interest in prohibiting the exclusion of "unvaccinated individuals" or "individuals who do not want to provide documentary proof of vaccination" from cruise ships during a raging pandemic.   *Id.*

Even if these interests were legitimate, the Ban "does not operate so as rationally to further" them "in practical effect."   *U.S. Dep't of Agric. v. Moreno*, 413 U.S. 528, 537 (1973).   As noted before, Florida's law neither prohibits "discrimination" against the unvaccinated, nor protects their "privacy."   Mot. at 16.   As this Court rightly observed, the Ban "does not actually protect against the 'discrimination' of unvaccinated individuals," and other "cruise lines have adopted measures and practices that differentiate between vaccinated and unvaccinated passengers" consistent with the Ban's requirements.   Order at 44.   "Similarly, Section 381.00316 does not effectively protect the medical privacy of residents," as it permits businesses to require "COVID-19 vaccination documentation from employees" as well as "other medical or health-related documentation" from customers and employees alike, including "COVID-19 test results, hospital records, other vaccination records," and "information regarding exposure to third parties with

COVID-19." *Id.* at 36.   Notably, Florida's law "does not prohibit businesses from retaining, disclosing, or publishing a person's COVID-19 vaccination status," and "[c]ruise lines have subjected unvaccinated passengers to different policies that easily disclose their unvaccinated status," such as by providing "a 'hole punched in their SeaPass'" and "segregat[ing] these passengers to one deck of the main dining room." *Id.*   To be sure, under rational-basis review, "perfection" in the law's fit between means and ends is not "required." *Vance v. Bradley*, 440 U.S. 93, 108 (1979).   But even under rational basis, there are limits; "the rational basis standard is 'not a toothless one.'" *Tyson v. Heckler*, 727 F.2d 1029, 1030 (11th Cir. 1984) (quoting *Mathews v. Lucas*, 427 U.S. 495, 510 (1976)).   The Ban exceeds those limits. *See Burstyn v. Miami Beach*, 663 F. Supp. 528, 535 (S.D. Fla. 1987) (ruling statute lacked rational basis because "[s]uch an underinclusive statute cannot reasonably be expected to further the city's stated goals"); *Stormans Inc. v. Selecky*, 844 F. Supp. 2d 1172, 1200 (W.D. Wash. 2012) (similar).

Most importantly, the Ban "does not prohibit businesses and employees from requiring individuals to provide their COVID-19 vaccination status *orally*." Order at 36 (emphasis added). In other words, the Ban only prohibits one particular means—albeit the most truthful means—of ascertaining passengers' vaccination status.   Rather than protect privacy in any rational way, Florida's law will only protect the passenger who is asked about vaccination status and hopes to lie about it—that passenger, and only that passenger, will benefit from this Ban against requiring the documentation that shines unique, truthful light on the life-or-death question of vaccination status.   To state the obvious, there is no legitimate interest in providing statutory license for those who oppose vaccination to shield lies about their vaccination status.

## **CONCLUSION**

For the foregoing reasons, the motion to dismiss should be denied in its entirety.

DATED:   August 18, 2021          Respectfully submitted,

QUINN EMANUEL URQUHART & SULLIVAN LLP

By  */s/ John F. O'Sullivan*
John F. O'Sullivan
Olga Vieira
2601 South Bayshore Drive, 15th Floor
Miami, FL 33133
(305) 439-5008
johnosullivan@quinnemanuel.com
olgavieira@quinnemanuel.com

Derek L. Shaffer*
William A. Burck*
Jonathan G. Cooper*
1300 I Street NW, 9th Floor
Washington, DC 20005
(202) 538-8000
derekshaffer@quinnemanuel.com
williamburck@quinnemanuel.com
jonathancooper@quinnemanuel.com

*Appearing *pro hac vice*

*Attorneys for Plaintiffs Norwegian Cruise Line Holdings Ltd., NCL (Bahamas) Ltd., Seven Seas Cruises S. de R.L., and Oceania Cruises S. de R.L.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 18th day of August 2021, the foregoing document was electronically filed with the Clerk of Court using CM/ECF.   I also certify that the foregoing document is being served this day on the party identified below, either via transmission of Notice of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronic Notices of Electronic Filing.

By: */s/ John F. O'Sullivan*
John F. O'Sullivan
Fla. Bar No. 143154
johnosullivan@quinnemanuel.com